IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF METAVATION, LLC TO EMPLOY AND RETAIN HURON CONSULTING SERVICES LLC TO PROVIDE A CHIEF RESTRUCTURING OFFICER, OTHER OFFICERS, AND ADDITIONAL PERSONNEL FOR THE DEBTOR PURSUANT TO 11 U.S.C. § 363(B), *NUNC PRO TUNC* TO THE PETITION DATE**

Metavation, LLC, a debtor and debtor in possession herein ("Metavation" or the "Debtor"), hereby moves the Court for entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") authorizing Metavation to retain Huron Consulting Services LLC (including its agents and independent contractors, "Huron"), pursuant to the terms and conditions of that certain letter agreement between Huron and Revstone Industries, LLC, dated January 17, 2013, as modified by the Retention Order (the "Engagement Letter"),[2] to (i) provide John C. DiDonato ("Mr. DiDonato") as Chief

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] A copy of the Engagement Letter is attached as Exhibit A to the *Motion Of The Debtors To Employ And Retain Huron Consulting Services LLC To: (I) Provide A Chief Restructuring Officer And Additional Personnel For The Debtors Pursuant To 11 U.S.C. § 363(B), Nunc Pro Tunc To January 17, 2013; And (II) Provide Financial Advisory Services To The Debtors Pursuant To 11 U.S.C. § 327(A), Nunc Pro Tunc To The Period Between December 17, 2013 And January 16, 2013* [Case No. 12-13262; Docket No. 198] dated February 13, 2013 (the "Revstone Huron Retention Application"), as modified and approved by the *Order Authorizing the Debtors to Employ and Retain Huron Consulting Services LLC To Provide A Chief Restructuring Officer and Additional Personnel For the*

DOCS_DE:187524.6 73864/002

Restructuring Officer ("CRO") of Metavation, (ii) provide other officers as detailed in paragraph 10 (the "Officers"), and (iii) provide additional personnel (the "Additional Personnel")[3] to provide restructuring support to Metavation, in each instance nunc pro tunc as of the Metavation Petition Date (defined below). In support of this Motion, Metavation relies upon the declaration of Mr. DiDonato, a Managing Director of Huron (the "DiDonato Declaration") attached hereto as Exhibit A and incorporated herein by reference, and respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

2. The statutory predicates for the relief requested herein are §§ 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

3. On December 3, 2012, Debtors Revstone Industries, LLC and Spara, LLC commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 7, 2013, Debtors Greenwood Forgings, LLC and US Tool and Engineering, LLC commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

*Debtors Nunc Pro Tunc To January 17, 2013* [Case No. 12-13262; Docket No. 428] dated March 21, 2013 (the "Retention Order").

[3] Huron reserves the right to modify its staffing throughout the course of this chapter 11 case, subject to the terms of the Engagement Letter and any order approving this Motion.

4.  Pursuant to the Order Authorizing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only (Docket No. 173) (the "Existing Joint Administration Order"), the chapter 11 cases of Revstone Industries, LLC, Spara, LLC, Greenwood Forgings, LLC and US Tool and Engineering, LLC (the "Original Debtors") are jointly administered and are consolidated for procedural purposes.

5.  On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the case of Revstone Industries, LLC. No committee has been appointed in the cases of Spara, LLC Greenwood Forgings, LLC and US Tool and Engineering, LLC. No trustee or examiner has been appointed in any of the Original Debtors' chapter 11 cases.

6.  On the date hereof (the "Metavation Petition Date"), Metavation filed a voluntary petition in the Court for relief under chapter 11 of the Bankruptcy Code. Metavation continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Metavation's chapter 11 case. As of the date hereof, no creditors' committee has been appointed in the Metavation chapter 11 case.

7.  The factual background relating to the commencement of the chapter 11 case of Revstone Industries, LLC is set forth in detail in the Declaration of Jay N. Brown in Support of First Day Pleadings (the "Brown Declaration") filed on December 3, 2012, and incorporated herein by reference. The factual background relating to the commencement of the chapter 11 case of Metavation, LLC is set forth in detail in the Declaration of John C. DiDonato in Support of Metavation, LLC Petition and First Day Motions (the "DiDonato Declaration") filed concurrently herewith and incorporated herein by reference.

8. Metavation, LLC (the "Company") is a Michigan-based manufacturer of precision machined components and assemblies, including dampers, engine components, knuckles, and driveline products for the automotive industry. Metavation specializes in designing and manufacturing dampers that are included on original equipment manufacturers' ("OEMs") engine platforms. The Company also has rapid development capabilities to produce "solution" dampers to correct driveline and powertrain noise vibration and harshness ("NVH") issues. The Company serves many of the largest automotive customers, suppliers, and platforms. The Company's major OEM customers include General Motors and Chrysler. Metavation's Tier I supplier customers include American Axle, Dana Automotive, and J.G. Kern. These long-standing relationships have led the Company to a dominant market position in the U.S. crankshaft damper market. Metavation operates from four, modernized facilities located in central Michigan. The Company begins its manufacturing process by developing the rubber component at the Hillsdale, MI facility, and then sends the rubber component to the Mt. Pleasant, MI or Vassar, MI facility for machining and/or assembly.

### Huron's Engagement and Qualifications

9. Huron was originally retained after the filing of the Revstone and Spara cases to provide restructuring services in support of the Original Debtors' obligations as chapter 11 debtors-in-possession. Huron's retention as CRO to the Original Debtors was approved pursuant to the *Order Authorizing the Debtors to Employ and Retain Huron Consulting Services LLC to Provide a Chief Restructuring Officer and Additional Personnel for the Debtors Nunc Pro Tunc to January 17, 2013* [Case No. 12-13262, Docket No. 428]. Under the continuing dynamic circumstances of these cases, Metavation has determined that obtaining the ongoing services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in this case

and (b) preserve and maximize the value of its assets pending any sale. As such, Metavation has chosen to utilize Huron personnel as appropriate and in addition to Mr. DiDonato, has appointed the following individuals to officer positions (collectively, the "Officers") of Metavation.

| | |
|---|---|
| John C. DiDonato | Chief Restructuring Officer |
| James M. Lukenda | Deputy CRO |
| Laura Marcero | Deputy CRO |
| Brian Linscott | Interim CFO |
| Geoff Frankel | Vice President |
| John Owens | Interim Treasurer |
| John Hemingway | Interim Assistant Treasurer |

10. Huron has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, Huron has provided restructuring and turnaround advisory services to clients including the Original Debtors as noted above, NUMMI; Kazi Foods of Michigan, New York, New Jersey, Maryland and Florida; Forum Health; Lacks; and Lifecare.

11. Further, as a result of prepetition and post-petition work performed on behalf of the Original Debtors and Metavation, Huron has acquired significant knowledge of Metavation and its business and is now familiar with the Metavation's financial affairs, debt structure, operations and related matters. Accordingly, Huron has developed relevant experience regarding Metavation that will assist it in providing effective and efficient services to Metavation in this case.

12. As such, Metavation believes that Huron is well qualified and able to advise it in a cost-effective, efficient and timely manner. Metavation has been advised by Huron

that it will endeavor to continue to coordinate with the other professionals retained in this bankruptcy case, as well as the bankruptcy cases of the Original Debtors, to eliminate unnecessary duplication or overlap of work. Therefore, Metavation submits that the retention and employment of Huron is in the best interests of the estate, creditors and other stakeholders in this case.

### Services to Be Provided by Huron

13.     Consistent with the terms of the Engagement Letter, Mr. DiDonato as CRO, the Officers listed above, and the Additional Personnel are charged with assisting Metavation and performing various operational, administrative and financial responsibilities and activities arising in connection with this chapter 11 case. More specifically, but without limitation, the anticipated services include the following:

- Compiling data and documents necessary to support the Debtor in its bankruptcy proceeding.

- Negotiating and documenting the terms of a debtor-in-possession and other financing arrangements.

- Compiling data and analyses information necessary to meet the reporting requirements that will be mandated by the bankruptcy process; and assisting with other aspects of managing the interactions with major constituents, including covenant compliance, communications, preparation for meetings and follow up on requests.

- Compiling data and analyses necessary to meet the requirements and requests of various parties related to the Debtor's restructuring and reorganization.

- Compiling and formatting data and analyses necessary to meet the financial reporting requirements mandated by the bankruptcy code and the US Trustee's office.

- Developing plans to address creditor requirements and interfacing with creditors and their financial advisors.

- Assisting management with the on-going forecasting of the Debtor's cash flows and its operations and monitoring and analyzing operational and financial condition.

- Advising the Restructuring Committee of the Board of Members, or comparable

independent governing body established by an amended Operating Agreement (the "Board"), on restructuring, reorganization, and bankruptcy matters.

- Advising on communication plans for various stakeholders including customers, suppliers, employees, and the community.

- Addressing operational challenges that arise due to the bankruptcy filing and the bankruptcy process.

- Preparing for court hearings, for the argument of motions and other matters, and providing expert testimony as required.

- Developing a plan of reorganization or liquidation, and supporting documents.

- Supervising and advising the Debtor on the sale of operating and non-operating assets as directed by the Debtor's fiduciaries.

- Performing any other restructuring management duties relating to role as CRO, DCRO and EVP as directed by the Debtor's fiduciaries.

14. Metavation is a wholly owned subsidiary of Revstone Transportation, LLC ("Transportation") which, in turn, is a wholly owned subsidiary of Debtor Revstone Industries, LLC. On January 17, 2013, Debtor Revstone and non-Debtor Revstone Transportation, LLC formally effectuated governance changes. Two independent managers (Richard E. Newsted and James B. Shein) were appointed to the three member boards of Revstone and Transportation, among other affiliates, and Mr. DiDonato was appointed as CRO of the same companies. The independent managers together constitute a majority of the managers on the boards of Revstone and Transportation. The independent managers also were appointed to a restructuring committee of the boards (the "Restructuring Committee"), which was specifically charged with the task of overseeing the CRO and all bankruptcy-related actions of the Original Debtors and their non-Debtor subsidiaries, including Metavation.

15. Section 4.1 of the Metavation LLC Agreement provides that, subject to certain exceptions not at issue here, "all decisions regarding the management and administration of the Company shall be made by, and the business and affairs of the Company shall be managed

under the direction of, the Members." The sole member of Metavation is Transportation. Hence, by virtue of the CRO's management of the sole member under the oversight of its Restructuring Committee, Metavation also is managed by the CRO of Transportation under the oversight of Transportation's Restructuring Committee. In addition, by amendment of the Metavation LLC Agreement on July 14, 2013, Mr. DiDonato was appointed as the Chief Restructuring Officer of Metavation. Upon the Court's approval of the proposed retention, Mr. DiDonato as CRO will continue to report to, and to act under the direction, control and guidance of, Transportation's Restructuring Committee, subject to removal and/or termination thereby.

### Huron's Fees

16. As set forth in the Engagement Letter, fees in connection with this Engagement will be based upon the time incurred by Mr. DiDonato, and the other Officers, multiplied by Huron's standard hourly rates for these individuals (which may be adjusted from time to time) illustrated below:

| *Individual* | *Hourly Rate* |
|---|---|
| John C. DiDonato (CRO) | $750 |
| James M. Lukenda (Deputy CRO) | $725 |
| Laura Marcero (Deputy CRO) | $700 |
| Brian Linscott (Interim CFO) | $700 |
| Geoff Frankel (Vice President) | $725 |
| John Owens (Interim Treasurer) | $565 |
| John Hemingway (Interim Assistant Treasurer) | $550 |

17. Huron will bill the Additional Personnel on an hourly basis based on the actual hours worked, multiplied by Huron's standard hourly billing rates (which may be subject to adjustment from time to time):

| *Title* | *Hourly Rate* |
|---|---|
| Managing Director | $675 - $750 |
| Senior Director and Director | $535 - $620 |
| Manager | $420 - $450 |

| | |
|---|---|
| Associate | $350 |
| Analyst | $250 |

18.     Travel time during which no work is performed shall be itemized separately and billed at fifty percent (50%) of regular hourly rates.

19.     Huron does not provide any assurance regarding the outcome of its work and its fees will not be contingent on the results of such work.

20.     Payment of all fees is due and payable monthly by wire transfer.

21.     In addition to the fees outlined above, Huron will bill Metavation monthly for reimbursement of reasonable direct expenses incurred on Metavation's behalf during the engagement. Direct expenses include reasonable and customary out-of-pocket expenses arising directly from the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

22.     Notwithstanding anything to the contrary in the Engagement Letter, Huron is not seeking any "success," deferred, "back end" or similar fees from Metavation for this engagement.

### Retainer – Cash on Account

23.     Prior to Huron's retention, Metavation provided Huron with a retainer of $250,000.00 (the "Retainer"). The Retainer shall be credited against any amounts due from Metavation at the termination of the Engagement Letter and returned to Metavation upon the satisfaction of all obligations owed to Huron thereunder.

### Reporting Requirements

24.     Because Huron is not being employed for its interim management services as a professional under section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. To maintain

transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "J. Alix Protocol") (the "Protocol"), Huron intends to file with the Court and serve on the Debtor, the U.S. Trustee and any Official Committee of Unsecured Creditors appointed in this case (the "Committee" and, together with the Debtor and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all Huron personnel assigned to this engagement. The Staffing Report (and Huron's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

25. In addition, Huron will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis. The Compensation Reports would summarize the service provided, identify the compensation earned, itemize expenses incurred and provide for an objection period. All such compensation would be subject to review by this Court if an objection is filed.

### Indemnification and Liability Limitation Provisions

26. Pursuant to the Retention Order, Huron agreed to the following modifications to the terms in Huron's Engagement Letter:

(a) Paragraph 2 of the General Business Terms of the Engagement Letter is modified as follows: the heading "Independent Contractor" is hereby replaced with the heading "No Agency" and the phrase "an independent contractor and" is hereby deleted from the first sentence of that paragraph.

(b) In the event that Huron seeks reimbursement for attorneys' fees from the Debtor pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Huron's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

(c) Paragraph 9 of the Engagement Letter's General Business Terms shall apply solely to claims of Huron and the Debtor or any Committee against each other,

and shall not apply if the Debtor or a representative of the estate asserts a claim for, and a court determines by final order that such claim arose out of, Huron's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct. Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

(d)  Paragraph 12(d) of the Engagement Letter's General Business Terms, relating to arbitration in the event a dispute arises between the Debtors or Committee and Huron, is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court, or the United States District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

### Huron's Disinterestedness

27. To the best of Metavation's knowledge, information, and belief, and based upon the DiDonato Declaration, Huron is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

28. As described in detail in the DiDonato Declaration, Huron has, among other things, searched its client databases to determine whether it represents, or has represented, certain of Metavation's creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. Huron may have represented certain of Metavation's creditors or other parties in interest in matters wholly unrelated to this Chapter 11 case. Except as may be described in the DiDonato Declaration and/or the Revstone Declaration, Huron does not, to its knowledge, represent any party with an interest materially adverse to Metavation or this estate.

### Legal Basis for Relief Requested

*Metavation Has Exercised Its Sound and Prudent Business Judgment*

29. Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this

section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

30. The retention of corporate officers, including in conjunction with the retention of associated turnaround and advisory firms to provide related services, is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel); *In re Archbrook Laguna Holdings LLC*, No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Calpine Corp.*, No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and chief financial officer pursuant to section 363 of the Bankruptcy Code).

31. Retaining Huron to provide Mr. DiDonato as CRO, the other Officers, and the Additional Personnel, upon the terms set forth in the Engagement Letter, as modified by the Retention Order, this Motion and any order approving this Motion, would enable Metavation to most efficiently administer this case, address operational issues arising in chapter 11 and preserve and maximize the value of the estate. Metavation requires the assistance of qualified and experienced personnel to assist in these matters. Thus, Metavation believes that it would be

in its best interests and in the best interests of the estate, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective as of the Metavation Petition Date.

32. Metavation believes that Huron's fee structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to Huron for comparable engagements. In addition, given the numerous issues Huron may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), Huron's commitment to the variable level of time and effort necessary to address all such related issues as they arise and the market prices for Huron's services for engagements of this nature in an out-of-court context, Metavation believes that the Huron fee arrangement is fair and reasonable.

***The Proposed Retention Comports with the Bankruptcy Code and the Protocol***

33. Huron will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because Metavation is seeking to retain Huron, a CRO and the other Officers pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, Huron is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, Metavation requests that fees and expenses of Huron incurred in the performance of the interim management services be treated as an administrative expense of Metavation's chapter 11 estate and be paid by Metavation in the ordinary course of business, without the need for Huron to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

34. In addition, because Metavation is not seeking to retain Huron as a professional under section 327 of the Bankruptcy Code for interim management services, there is

no requirement that Huron, Mr. DiDonato, the other Officers, or any of the Additional Personnel be disinterested to be retained to provide interim management services. Nevertheless, to the best of Metavation's knowledge, information and belief based on the DiDonato Declaration, Huron does not have or represent any interest adverse to Metavation's estate or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason. Additional information about Huron's connections to parties in interest in these cases is described in the DiDonato Declaration.

***The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code***

35.   Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Communications Corp. v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

## No Prior Request

36.   No prior request for the relief sought in this Motion has been made to this or any other Court in connection with this chapter 11 case.

## Notice

37. Notice of this Motion has been given to the following or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition and postpetition secured lenders; (iii) the Pension Benefit Guaranty Corporation; (iv) the Debtor's major OEM customers: General Motors and Chrysler; (v) Dayco Products, LLC and Dayco Products S.A. de C.V., the stalking horse purchaser for the Debtor's assets; and (vi) the Official Committee of Unsecured Creditors in the case of Revstone Industries, LLC. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, (a) granting the relief sought herein and (b) granting to the Debtor such other and further relief as the Court may deem proper.

Dated: July 22, 2013                              METAVATION, LLC

                                                  /s/ Daniel V. Smith, Esq.
                                                  Daniel V. Smith, Esq.
                                                  Secretary and General Counsel