IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related to Docket No. 793** |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | (Joint Administration Requested) |
| Debtor. | ) | |
| | ) | **Related to Docket No. 21** |

### ORDER (A) AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364(c); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTOR TO ENTER INTO AGREEMENTS WITH WELLS FARGO CAPITAL FINANCE, LLC, AS AGENT; AND (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "***Motion***"), dated July 22, 2013, of Metavation, LLC ("***Debtor***"), as

Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case (the "***Case***"), pursuant

to Sections 105, 361, 362, 364(c)(1), 364(c)(2) and 364(c)(3) of Title 11 of the United States

Code, 11 U.S.C. §§ 101, et seq. (the "***Bankruptcy Code***") and Rules 2002, 4001(c), and 9014 of

the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking, among other

things:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each original Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450).  The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

3117974.2 06758/1654

(1)    authorization for Debtor to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Wells Fargo Capital Finance, LLC (*"WFCF"*), in its capacity as agent (in such capacity, *"Agent"*) for itself and the other financial institutions from time to time party to the Existing Credit Agreement (as defined below) as lenders (collectively with Agent, the *"Lenders"*) in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the Existing Credit Agreement, as amended and ratified by the Ratification Agreement (as defined below), and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(2)    authorization for Debtor to enter into the Ratification and Amendment Agreement, dated of even date herewith, by and among Agent, WFCF, Debtor, Contech Castings, LLC, a Delaware limited liability company (*"Contech"*), MW Texas Die Casting, Inc., (*"MW Texas Die"*, and together with Contech, each individually, a *"Non-Chapter 11 Borrower"* and collectively, *"Non-Chapter 11 Borrowers"*), Revstone Transportation, LLC (*"Parent"*), Contech Castings Real Estate Holdings, LLC (*"Contech RE"*), Cerion MPI Grand Avenue, LLC (*"MPI GA"*), Cerion MPI Knox, LLC (*"MPI Knox"*), Cerion MPI Golf Road, LLC (*"MPI Golf"*), Cerion MPI Mexico LLC (*"MPI Mexico"*), Metavation Mexico, LLC, (*"Metavation Mexico"*), Metavation Mexico II, LLC (*"Metavation Mexico II"*), Metavation Traverse City, LLC (*"Metavation TC"*), Metavation Traverse City Building Three, LLC, (*"Metavation 3"*), MPI International Mexico, S. DE R.L. DE C.V. (*"MPI International Mexico"*), EPTEC, S.A. DE C.V. (*"EPTEC"*), MIDS, LLC (*"MIDS"*), Metavation Vassar, LLC (*"Metavation V"*), and MPI, LLC (*"MPI"*, and together with Transportation, Contech RE, MPI GA, MPI Knox, MPI Golf, MPI Mexico, Metavation Mexico, Metavation Mexico II, Metavation TC, Metavation 3, MPI International Mexico, EPTEC, MIDS and Metavation V, each individually, a *"Guarantor"* and collectively, *"Guarantors"*, and together with Non-Chapter 11 Borrowers, each a *"Non-Chapter 11 Loan Party"* and collectively, *"Non-Chapter 11 Loan*

*Parties*" as defined herein), (the "*Ratification Agreement*", a copy of which is annexed hereto as Exhibit A and is incorporated herein), which ratifies, extends, adopts and amends the Existing Credit Agreement and the other Existing Loan Documents (as defined below);

(3)     modification of the automatic stay to the extent hereinafter set forth;

(4)     the grant to Agent, for the benefit of itself and the Bank Product Providers (as defined in the Existing Credit Agreement, and constitute, as of the Petition Date (as defined below) the Lenders and their Affiliates), of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Ratification Agreement); and

(5)     the setting of a final hearing on the Motion.

The initial hearing on the Motion having been held by this Court on July 24, 2013 (the "*Interim Hearing*").

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "*Notice*") having been served by the Debtor in accordance with Rule 4001(c) on (i) Agent, (ii) the United States Trustee for the District of Delaware (the "*U.S. Trustee*"), (vi) the holders of the twenty (20) largest unsecured claims against the Debtor's estate (the "*20 Largest Unsecured Creditors*"), (iii) McDonald Hopkins PLC, co-counsel for the Debtor, (iv) the Internal Revenue Service, (v) the Pension Benefit Guaranty Corporation, (v) all appropriate state taxing authorities, (vi) all landlords, owners, and/or operators of premises at which any of the Debtor's inventory and/or equipment is located, (vii) Chrysler Group, LLC ("Chrysler"), (viii) General Motors LLC ("GM", and together with Chrysler, collectively, the "*DIP Junior Participants*") and (ix) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets (collectively, the "*Noticed Parties*").

3117974.2 06758/1654

Upon the record made by the Debtor at the Interim Hearing, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition. On July 22, 2013 (the "**Petition Date**"), the Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.      Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b) (2) (A), (D) and (M). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice. Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.      Debtor's Acknowledgments and Agreements. The Debtor admits, stipulates, acknowledges and agrees that, subject to the rights of other parties to the extent set forth in section 4.1 below:

(i)      *Existing Loan Documents.* Prior to the commencement of the Case, Agent, Lenders and Bank Product Providers made loans, advances and provided other financial accommodations to the Debtor pursuant to the terms and conditions set forth in: (1) the Credit Agreement, dated as of July 23, 2010, by and among Debtor, Non-Chapter 11 Borrowers, Guarantors, Agent and Lenders, as amended by Amendment No. 2 to Credit Agreement and Waiver, dated as of February 3, 2012, Amendment No. 3 to Credit Agreement and Consent, dated as of November 16, 2012, Amendment No. 4 to Credit Agreement, Consent and Waiver, dated as of January 11, 2013, Amendment No. 5 to Credit Agreement and Consent, dated as of April 12, 2013, Amendment No. 6 to Credit Agreement and Consent, dated as of April 30, 2013,

3117974.2 06758/1654

Amendment No. 7 to Credit Agreement, dated as of June 27, 2013, and otherwise as in effect

immediately prior to the Petition Date, the "***Existing Credit Agreement***," a copy of which is

included with the Exhibit Supplement defined below) and (2) all other agreements, documents

and instruments executed and/or delivered with, to, or in favor of Agent, any Lender or any Bank

Product Provider, including, without limitation, all security agreements, notes, guarantees,

mortgages, Uniform Commercial Code financing statements and all other related agreements,

documents and instruments executed and/or delivered in connection therewith or related thereto

(all of the foregoing, together with the Existing Credit Agreement, as all of the same have

heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced

at any time prior to the Petition Date, collectively, the "***Existing Loan Documents***").  Copies of

the operative Existing Loan Documents are contained in the Exhibit Supplement to the Motion

(the "***Exhibit Supplement***").

    (ii) *Pre-Petition Obligations Amount*.  As of the close of business on

July 18, 2013, the aggregate amount of all Advances,[2] Supplemental Advances, Letters of Credit

Usage, Bank Products and other Pre-Petition Obligations owing by Debtor to Agent, Lenders and

Bank Product Providers under and in connection with the Existing Loan Documents was not less

than $17,040,973.45, plus interest accrued and accruing thereon, together with all costs, fees,

expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or

chargeable with respect thereto (collectively, and as such term is more fully defined in the

Ratification Agreement, the "***Pre-Petition Obligations***").  The Pre-Petition Obligations

constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of Debtor,

and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or

subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not

---

[2]  Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Existing Credit Agreement, as amended and ratified by the Ratification Agreement.

possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.

(iii)    *Pre-Petition Collateral.*  As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Existing Loan Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by Debtor to Agent, for the benefit of itself, the other Lenders and the Bank Product Providers, upon all of the Pre-Petition Collateral, subject only to the liens specifically permitted under Section 4.4(b) of the Existing Credit Agreement to the extent that such security interests, liens or encumbrances are (a) valid, perfected and non-avoidable security interests, liens or encumbrances  existing as of the Petition Date, and (b) senior to and have not been or are subject to being subordinated to Agent's, Lenders' and Bank Product Providers' liens on and security interests in the Pre-Petition Collateral or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "***Permitted Encumbrances***").  The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Agent's, Lenders' and Bank Product Providers' liens, claims or security interests in the Pre-Petition Collateral.

(iv)    *Proof of Claim.*  The acknowledgment by Debtor of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of Agent, Lenders and Bank Product Providers as set forth herein and in the Existing Loan Documents shall be deemed a timely filed proof of claim on behalf of Agent, Lenders and Bank Product Providers in this Case.

E.    Findings Regarding the Postpetition Financing.

(i)    *Postpetition Financing.*  The Debtor has requested from Agent, Lenders and Bank Product Providers, and Agent, Lenders and Bank Product Providers are

3117974.2 06758/1654

willing to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth, in this Order and the Loan Documents (as defined below).

    (ii)  *Need for Post-Petition Financing*.  The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its business in the ordinary course of its business without the financing requested under the Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with Agent, Lenders and Bank Product Providers as set forth in this Order and the Loan Documents is vital to the preservation and maintenance of the going concern values of the Debtor.  Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its business, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "*Estate*") in order to maximize the recovery to all creditors of the Estate.

    (iii)  *No Credit Available on More Favorable Terms*.  The Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b) (1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on assets.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by Agent, Lenders and Bank Product Providers pursuant to the Loan Documents.

    (iv)  *Budget*.  The Debtor has prepared and delivered to Agent, Lenders and Bank Product Providers an initial Budget (as defined in the Ratification Agreement).  Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among

3117974.2 06758/1654

other things, the projected information for the periods covered thereby. The Debtor represents that the Budget is achievable in accordance with the terms of the Loan Documents and this Order and will allow the Debtor to operate at all times during this Case without the accrual of unpaid administrative expenses. Agent, Lenders and Bank Product Providers are relying upon the Debtor's compliance with the Budget in accordance with Section 5.3 of the Ratification Agreement, the other Loan Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

       (v)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms of the Loan Documents and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration. The terms and conditions of the Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and Agent, Lenders and Bank Product Providers, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by Agent, Lenders and Bank Product Providers as that term is used in Section 364(e) of the Bankruptcy Code.

       (vi)    *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (a) minimize disruption to the Debtor's business and on-going operations, (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

       (vii)    *Immediate Entry*. Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). No party appearing in the Case has filed or

-8-

made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "***Interim Order***."

1.2    <u>Authorization to Borrow and Use Loan Proceeds</u>.  Debtor is hereby authorized and empowered to immediately borrow and obtain Advances, DIP Supplemental Advances, Bank Products and to incur indebtedness and obligations owing to Agent, Lenders and Bank Product Providers pursuant to the terms and conditions of this Interim Order, the Existing Credit Agreement, as ratified and amended by the Ratification Agreement (the "***Credit Agreement***," as such term is more fully defined in the Ratification Agreement), and the other Existing Loan Documents as ratified and amended by the Ratification Agreement (the "***Loan Documents***", as such term is more fully defined in the Ratification Agreement), during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 6 of this Interim Order (the "***Interim Financing Period***"), in such amounts as may be made available to Debtor by Agent and Lenders in accordance with the Budget.  Subject to the terms and conditions contained in this Interim Order and the Loan Documents, Debtor shall use the proceeds of the Advances, DIP Supplemental Advances and any other credit accommodations provided to Debtor pursuant to this Interim Order, the Credit Agreement or the other Loan Documents for the payment of the expense items specified in the Budget.

1.3    <u>Loan Documents</u>

3117974.2 06758/1654

1.3.1    <u>Authorization</u>.  Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Credit Agreement, the other Loan Documents and all other agreements, documents and instruments executed or delivered in connection with or related to the Credit Agreement, the other Loan Documents or this Interim Order, including, without limitation, the Ratification Agreement, pursuant to which, <u>inter alia</u>, each Debtor ratifies, reaffirms, extends, assumes, adopts, amends, and restates the Existing Credit Agreement and the other Existing Loan Documents to which it is a party.

1.3.2    <u>Approval</u>.  The Loan Documents (including, without limitation, the Credit Agreement) are approved to the extent necessary to implement the terms and provisions of this Interim Order.  All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing and bank product arrangements by and among Debtor, Agent, Lenders and Bank Product Providers, and of Debtor's assumption and adoption of all of the terms, conditions, and covenants of the Credit Agreement and the other Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, debtor-in-possession financing facility fee, early termination fees, and other fees and expenses, including, without limitation, all of Agent's and Lenders' reasonable consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Loan Documents.

1.3.3    <u>Amendment.</u>  Subject to the terms and conditions of the Credit Agreement and the other Loan Documents, Debtor, Agent and Lenders may amend, modify, supplement or waive any provision of the Loan Documents (an "***Amendment***") without further approval or order of the Court so long as (i) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean, any Amendment that operates to increase the interest rate other than as currently provided in the Loan Documents, increase the Maximum Credit (as defined in the Credit Agreement), add specific new events of default or enlarge the

-10-

nature and extent of default remedies available to the Agent and Lenders following an event of default, or otherwise modify any terms and conditions in any Loan Document in a manner materially less favorable to Debtor) and is undertaken in good faith by Agent, Lenders and Debtor; (ii) the Debtor provide prior written notice of the Amendment (the "*Amendment Notice*") to (x) the U.S. Trustee, (y) the DIP Junior Participants and (z) counsel to any official committee appointed in the Case under Section 1102 of the Bankruptcy Code (collectively, the "*Committee(s)*"), or in the event no such Committee is appointed at the time of such Amendment, the 20 Largest Unsecured Creditors; (iii) the Debtor file the Amendment Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two (2) business days from the later of the date the Amendment Notice is served or the date the Amendment Notice is filed with the Court in accordance with this Section. Any material Amendment to the Loan Documents must be approved by the Court to be effective.

      1.4   <u>Payment of Prepetition Debt</u>. The Debtor is authorized to pay Agent, Lenders and Bank Product Providers in respect of all Pre-Petition Obligations in accordance with the Loan Documents and Sections 1.5 and 1.6 of this Interim Order.

      1.5   <u>Payments and Application of Payments</u>. The Debtor is authorized and directed to make all payments and transfers of Estate property to Agent, Lenders and Bank Product Providers as provided, permitted and/or required under the Credit Agreement and the other Loan Documents. All proceeds of the Collateral received by Agent, Lenders or Bank Product Providers, and any other amounts or payments received by Agent, Lenders or Bank Product Providers in respect of the Obligations, shall be applied or deemed to be applied by Agent, Lenders and Bank Product Providers in accordance with the Credit Agreement, the other Loan Documents and this Interim Order first to the Pre-Petition Obligations, until such Pre-Petition Obligations are indefeasibly paid in full and completely satisfied, and then to the Post-Petition Obligations (as defined in the Ratification Agreement). Without limiting the generality of the foregoing, the Debtor is authorized, without further order of this Court, to pay or reimburse Agent, Lenders and Bank Product Providers for all present and future costs and

expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by Agent, Lenders and Bank Product Providers in connection with the financing transactions as provided in this Interim Order and the Loan Documents (the "**Lender Group Professional Fees**"), all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral; provided, that, Debtor shall provide copies of any invoices it receives in respect of Lender Group Professional Fees to the Office of the United States Trustee and counsel for the official committee of unsecured creditors (if appointed) in this Case, and the such parties shall have ten (10) days to review such invoices for reasonableness.

      1.6    Continuation of Prepetition Procedures.  All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to Agent, Lenders and Bank Product Providers and the funding pursuant to the Loan Documents, including any blocked, lockbox or depository account arrangements of Debtor, are hereby approved and shall continue without interruption after the commencement of the Case.

Section 2.    Postpetition Lien; Superpriority Administrative Claim Status.

      2.1    Post-Petition Lien.

      2.1.1    Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Obligations of Debtor to Agent, Lenders and Bank Product Providers of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself, the other Lenders and the Bank Product Providers, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have (but subject to certain claims entitled to priority, including the Permitted Liens and Claims defined below as and to the extent expressly provided in Section 2.1.2 below), in and upon all of the Pre-Petition Collateral and the Post-Petition Collateral (as defined in the Ratification Agreement).  The liens of Agent, Lenders and Bank Product Providers

3117974.2 06758/1654

in the Post-Petition Collateral to secure the Pre-Petition Obligations are granted to the extent of any diminution in the value of the Pre-Petition Collateral. The Pre-Petition Collateral and the Post-Petition Collateral are collectively referred to herein as the "*Collateral*." In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtor to Agent, Lenders and Bank Product Providers, shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by Debtor, and the diminution in the value, of the Collateral existing on the Petition Date. For the avoidance of doubt, the Post-Petition Collateral shall include Avoidance Actions Recoveries upon entry of a Permanent Financing Order granting such relief.

    2.1.2 <u>Lien Priority</u>. The pre-petition and post-petition liens and security interests of Agent, Lenders and Bank Product Providers granted under the Loan Documents and this Interim Order in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; <u>provided</u>, <u>however</u>, that Agent's, Lenders' and Bank Product Providers' liens on and security interests in the Collateral shall be subject only to (i) the Permitted Encumbrances and (ii) the Carve Out Expenses (as defined below) solely to the extent provided for in Sections 2.3, 2.4 and 2.5 of this Interim Order (the foregoing clauses (i) and (ii) are collectively referred to herein as the "*Permitted Liens and Claims*").

    2.1.3 <u>Post-Petition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, with respect to any blocked, lockbox

or depository account consisting of Collateral (a "*Perfection Act*").  Notwithstanding the foregoing, if Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, Agent is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Agent and Lenders may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law.  Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

        2.1.4    <u>Nullifying Pre-Petition Restrictions to Post-Petition Financing.</u>
Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which the Debtor is a party or under which the Debtor is obligated, except as otherwise permitted under the Loan Documents, any provision that restricts, limits or impairs in any way the Debtor from granting Agent, Lenders and Bank Product Providers security interests in or liens upon any of the Debtor's assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which the Debtor is a party) under this Interim Order, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or the Loan Documents shall <u>not</u> (i) be effective and/or enforceable against the Debtor, Agent, Lenders and Bank Product Providers, or (ii) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to Agent, Lenders

-14-

and Bank Product Providers pursuant to this Interim Order or the Loan Documents to the maximum extent permitted under the Bankruptcy Code and other applicable law.

        2.2      Superpriority Administrative Expense. For all Post-Petition Obligations now existing or hereafter arising pursuant to this Interim Order, the Loan Documents or otherwise, Agent, for the benefit of itself, the other Lenders and the Bank Product Providers, is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "***Superpriority Claim***"), provided, however, the Superpriority Claim (i) shall be subject only to the Permitted Liens and Claims as and to the extent expressly set forth in this Interim Order, and (ii) shall extend to Avoidance Action Recoveries upon the entry of the Permanent Financing Order.

        2.3      Carve Out Expenses.

        2.3.1      Carve Out Expenses. Subject to the terms and conditions contained in this Interim Order, the Agent's, Lenders' and Bank Product Providers' liens, claims and security interests in the Collateral and their Superpriority Claim shall be subject only to the right of payment from the Allowed Professional Fee Escrow Account (as defined below) of the following expenses (the "***Carve Out Expenses***"):

        a.      statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

        b.      fees payable to the Clerk of this Court; and

        c.      the unpaid and outstanding reasonable fees and expenses actually incurred on or after the Petition Date, and approved by a final order of the Court pursuant to Sections 326, 327, 328, 330, or 331 of the Bankruptcy Code (collectively, the "***Allowed Professional Fees***"), by attorneys, accountants and other professionals retained

-15-

by the Debtor and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "*Professionals*"), in a cumulative, aggregate sum not to exceed $1,780,000 (the "*Professional Fee Carve Out*").

   2.3.2 Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, neither the Professional Fee Carve Out nor the proceeds of any Advances, DIP Supplemental Advances, Letters of Credit, Bank Products or Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations or Agent's, Lenders' and Bank Product Providers' liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or Agent's, Lenders' and Bank Product Providers' liens on and security interests in the Collateral, or (iii) preventing Agent's, Lenders' or Bank Product Providers' assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Interim Order; provided, however, not more than $25,000 in the aggregate of the Professional Fee Carve Out or the proceeds of any Advances, DIP Supplement Advances, Line of Credit, Bank Products or Collateral may be used to pay the Allowed Professional Fees of Professionals retained by the Committee incurred in connection with investigating the matters set forth in this Section 2.3.2(a)(i), 2.3.2(a)(ii) and 2.3.2(a)(iii); (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Agent in accordance with the terms and conditions of this Interim Order; (c) a request for authorization to obtain Debtor-in-Possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Agent or Lenders, without the prior written consent of Agent; (d) the commencement or prosecution of any action or proceeding of any claims, causes of action

or defenses against the Agent, any Lender, and Bank Product Provider or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Agent, any Lender or any Bank Product Provider under Chapter 5 of the Bankruptcy Code; or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Agent, any Lender or any Bank Product Provider, or which is contrary, in a manner that is material and adverse to the Agent, any Lender or any Bank Product Provider, to any term or condition set forth in or acknowledged by the Loan Documents or this Interim Order and which results in the occurrence of an Event of Default under the Loan Documents or this Interim Order.

   2.4 <u>Carve Out Funding</u>. Prior to the expiration or termination of the Debtor's authority to borrow and obtain credit accommodations from Agent and Lenders pursuant to the terms of the Interim Order and the Loan Documents, the Debtor shall, on a weekly basis, utilize a portion of the proceeds from the DIP Supplemental Advances to fund into a trust account maintained by Debtor's counsel (the "***Allowed Professional Fee Escrow Account***") an amount equal to 120% of the amounts set forth in the Budget for "Debtor's Advisors" and "Creditors Committee Advisors", with all such weekly amounts so funded to permanently reduce the amount of the Professional Fee Carve Out on a dollar for dollar basis. On and after the expiration or termination of the Debtor's authority to borrow and obtain credit accommodations from Agent and Lenders pursuant to the terms of the Interim Order and the Loan Documents, the DIP Junior Participants shall promptly arrange to fund into the Allowed Professional Fee Escrow Account (which funding shall be afforded all of the rights and protections of a DIP Supplemental Advance under the Loan Documents), an amount equal to the balance of the Professional Fee Carve Out (as such amount has been reduced after giving effect to the aggregate amount of the Debtor's weekly funding of such account in accordance with this section 2.4). Subject to section 2.3.2 of this Interim Order, the funds deposited into the Allowed Professional Fee Escrow Account shall be free and clear of all liens and claims and shall be solely available for

the payment of unpaid Allowed Professional Fees incurred as Metavation Bankruptcy Costs (as defined in the GM/Chrysler Sale Support Agreement) during the Funding Period (as defined in the GM/Chrysler Sale Support Agreement), up to the amounts and in accordance with the allocations provided for in the Budget. The liens and claims of Agent, Lenders and the Bank Product Providers in and to the funds deposited in the Allowed Professional Fee Escrow Account shall be subject and subordinate to the payment of such Allowed Professional Fees as provided for in this section 2.4. Any funds remaining in the Allowed Professional Fee Escrow Account following the payment of all Allowed Professional Fees incurred as Metavation Bankruptcy Costs during the Funding Period will be promptly returned to the DIP Junior Participants to the extent of any outstanding Retained Participations (as defined in the GM/Chrysler Sale Support Agreement), and applied to reduce the amount of such outstanding Retained Participations.

      2.5    <u>Payment of Carve Out Expenses</u>.   Under no circumstances shall Agent, Lenders or Bank Product Providers have any obligation or responsibility to fund, pay or reimburse any party in respect of the Professional Fee Carve Out, the other Carve Out Expenses or any other fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in this Interim Order shall be construed to obligate Agent, any Lender or any Bank Product Provider in any way to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

      2.6    <u>Use of Cash Collateral; Adequate Protection.</u>

      2.6.1    <u>Authorization to Use Cash Collateral</u>.   Subject to the terms and conditions of this Interim Order, the Credit Agreement and the other Loan Documents, and in accordance with the Budget, Debtor shall be and is hereby authorized to use, until the expiration of Agent's and Lenders' commitment to lend under the Credit Agreement and the other Loan Documents, the Cash Collateral (as defined in Section 363 of the Bankruptcy Code) subject to the pre-petition liens and security interests granted to the Agent, Lenders and Bank Product Providers.  Nothing in this Interim Order shall authorize the disposition of any assets of the

-18-

Debtor or its Estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the Credit Agreement, the other Loan Documents and in accordance with the Budget.

2.6.2    Replacement Liens.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral, the Agent, for the benefit of itself, the Lenders and the Bank Product Providers, is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "*A/L Replacement Lien*").  The A/L Replacement Lien shall (i) be junior and subordinate only to the Carve-Out Expenses as and to the extent provided in this Interim Order and the liens and security interests granted to Agent, Lenders and Bank Product Providers in the Collateral securing the Post-Petition Obligations and (ii) otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

2.6.3    Section 507(b) Priority Claim.  As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral, the Agent, for the benefit of itself, the Lenders and the Bank Product Providers, is hereby granted as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in the Case and in any subsequent case, if applicable, of the Debtor under Chapter 7 of the Bankruptcy Code (the "*A/L Adequate Protection Superpriority Claim*").  The A/L Adequate Protection Superpriority Claim shall be junior only to the Carve-Out Expenses and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

Section 3.    Default; Rights and Remedies; Relief from Stay.

3.1    Events of Default.  The occurrence of any of the following events shall constitute an "*Event of Default*" under this Interim Order:

a.    Debtor's failure to perform, in any respect, any of the terms, conditions or covenants, or their obligations, under this Interim Order; or

b.      An "Event of Default" under the Credit Agreement or any of the other Loan Documents.

3.2     <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the Credit Agreement and the other Loan Documents, and (ii) Agent shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Interim Order or any Loan Document, including, without limitation, declaring all Obligations immediately due and payable, accelerating the Obligations, immediately ceasing to extend Advances, DIP Supplemental Advances on behalf of Debtor, setting off any Obligations with Collateral or proceeds in Agent's possession, and enforcing any and all rights with respect to the Collateral.  Agent, Lenders and Bank Product Providers shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default.

3.3     <u>Expiration of Commitment</u>.  Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from Agent and Lenders pursuant to the terms of this Interim Order and the Loan Documents (except if such authority shall be extended with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or any Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Interim Order, all of the Obligations shall immediately become due and payable and Agent, Lenders and Bank Product Providers shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Agent, Lenders and Bank Product Providers pursuant to the terms and conditions of the Loan Documents or this Interim Order, and Agent, acting on behalf of itself, the other Lenders and the Bank Product Providers, shall be and is hereby authorized, in its sole discretion, to take any and

-20-

all actions and remedies provided to it in this Interim Order, the Loan Documents or applicable law which Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtor's Estates.

        3.4     <u>Relief from Automatic Stay</u>.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Agent, Lenders and Bank Product Providers to perform any act authorized or permitted under or by virtue of this Interim Order or the Loan Documents, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Interim Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents, and apply such payments to the Obligations pursuant to the Loan Documents and this Interim Order.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days prior written notice (the "***Enforcement Notice***") to counsel for the Debtor, counsel for the Committee (if appointed), the DIP Junior Participants and the U.S. Trustee, Agent, acting on behalf of itself, the other Lenders and the Bank Product Providers, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the Loan Documents or applicable law as Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which Agent, for the benefit of itself, the other Lenders and the Bank Product Providers, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations.

Section 4.     <u>Representations; Covenants; and Waivers.</u>

4.1     Objections to Pre-Petition Obligations.  Notwithstanding anything to the contrary contained in this Interim Order, any action, claim or defense (hereinafter, an "*Objection*") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre-Petition Obligations, (b) the extent, legality, validity, perfection or enforceability of Agent's, Lenders' and Bank Product Providers' pre-petition liens and security interests in the Pre-Petition Collateral, or (c) Agent's, Lenders' and Bank Product Providers' right to apply proceeds of Post-Petition Collateral against Pre-Petition Obligations in satisfaction of Agent's, Lenders' and Bank Product Providers' pre-petition liens as provided for in this Interim Order (provided however, that the only grounds for such Objection under this clause (c) is that the Pre-Petition Obligations were not fully secured by the Pre-Petition Collateral as of the Petition Date and such application unduly advantaged Agent, Lenders and Bank Product Providers as against other similarly situated creditors of the Debtor's Estate), shall be filed with the Court (x) by any Committee, and no other party, within sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, or (y) in the event no Committee is appointed within the thirty (30) days following the Petition Date, by any party in interest with requisite standing within seventy-five (75) calendar days from the date of entry of this Interim Order.  If any such Objection is timely filed and successfully pursued, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Pre-Petition Obligations or Agent's, Lenders' and Bank Product Providers' liens on the Pre-Petition Collateral.  If no Objection is timely filed, or if an Objection is timely filed but denied, (a) the Pre-Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's, Lenders' and Bank Product Providers' pre-petition liens on and security interest in the Pre-Petition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Liens and Claims, and (b) Agent, Lenders, Bank

Product Providers and each of their respective participants, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Existing Loan Documents and shall not be subject to any further objection or challenge by any party at any time. Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent, Lenders and Bank Product Providers in connection with all post-petition Advances, DIP Supplemental Advances and Letters of Credit and other financial and credit accommodations provided by Agent, Lenders and Bank Product Providers to Debtor in reliance on Section 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Interim Order and the Loan Documents.

   4.2 <u>Debtor's Waivers</u>. At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek authority (i) to use Cash Collateral of Agent, Lenders and Bank Product Providers under Section 363 of the Bankruptcy Code, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code, other than from Agent, Lenders and Bank Product Providers or as may be otherwise expressly permitted pursuant to the Credit Agreement, (iii) to challenge the application of any payments authorized by this Interim Order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (iv) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the Ratification Agreement, or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent, Lenders and Bank Product Providers as provided in this Interim Order and the Loan Documents or Agent's, Lenders' and Bank Product Providers' exercise of such rights or remedies; <u>provided</u>, <u>however</u>, that Agent may otherwise consent in writing, but no such consent

shall be implied from any other action, inaction, or acquiescence by the Agent, any Lender or any Bank Product Provider.

      4.3      Section 506(c) Claims. Upon the entry of a Permanent Financing Order, no costs or expenses of administration which have or may be incurred in the Case shall be charged against the Agent, any Lender or any Bank Product Provider, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by the Agent, any Lender or any Bank Product Provider.

      4.4      Collateral Rights. Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

      4.4.1   no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral; and

      4.4.2   upon and after the occurrence of an Event of Default, and subject to Agent obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its business. Agent and Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties).

      4.5      Release. Upon the earlier of (a) the entry of a Permanent Financing Order approving the Motion or (b) the entry of an Order extending the Interim Financing Period

beyond thirty (30) calendar days after the date of this Interim Order, and in each instance subject to Section 4.1 above, in consideration of Agent, Lenders and Bank Product Providers making post-petition loans, advances and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Loan Documents and this Interim Order, Debtor, on behalf of itself and its successors and assigns, (collectively, the "*Releasors*"), shall forever release, discharge and acquit each Agent, each Lender, each Bank Product Provider and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "*Releasees*") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Obligations, the Loan Documents and any Advances, DIP Supplemental Advances, Letters of Credit or other financial accommodations made by Agent, Lenders and Bank Product Providers to Debtor pursuant to the Loan Documents.  In addition, upon the repayment of all Obligations owed to Agent, Lenders and Bank Product Providers by Debtor and termination of the rights and obligations arising under the Loan Documents and either a Permanent Financing Order or extended Interim Order, as the case may be (which payment and termination shall be on terms and conditions acceptable to Agent), Agent, Lenders and Bank Product Providers shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents or the applicable Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses), on terms and conditions acceptable to Agent.

Section 5.      Other Rights and Obligations.

5.1    <u>No Modification or Stay of This Interim Order</u>.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the Loan Documents or any term hereunder or thereunder, (ii) the failure to obtain a Permanent Financing Order pursuant to Bankruptcy Rule 4001(c)(2), (iii) the dismissal or conversion of the Case, or (iv) any order entered at any time the Case containing terms conflicting with the terms and conditions contained in this Interim Order (each, a "***Subject Event***"), (x) the acts taken by Agent and Lenders in accordance with this Interim Order, and (y) the Post-Petition Obligations incurred or arising prior to the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by Agent and Lenders in accordance with this Interim Order, and the liens granted to Agent and Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and Lenders pursuant to this Interim Order and the Loan Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

5.2    <u>Power to Waive Rights; Duties to Third Parties</u>.  Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of Agent and Lenders (the "***Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by Agent of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject Agent or any Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Agent or any Lender.

5.3     Disposition of Collateral.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by Agent or any Lender) and an order of this Court, except for sales of Debtor's Inventory in the ordinary course of their business.  Debtor shall remit to Agent, or cause to be remitted to Agent, all proceeds of the Collateral for application by Agent to the Obligations, in such order and manner as Agent may determine in accordance with the terms of this Interim Order, the Credit Agreement and the other Loan Documents.

5.4     Inventory.  Debtor shall not, without the consent of Agent, (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of Agent, Lenders and Bank Product Providers to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

5.6     Binding Effect.

5.6.1    The provisions of this Interim Order and the Loan Documents, the Post-Petition Obligations, the Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of Agent, Lenders and Bank Product Providers provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon

-27-

entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing one or more of the Case.

         5.6.2   Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Agent's, Lenders' and Bank Product Providers' liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral.

         5.6.3   In the event this Court modifies any of the provisions of this Interim Order or the Loan Documents following a Final Hearing, (a) such modifications shall not affect the rights or priorities of Agent, Lenders and Bank Product Providers pursuant to this Interim Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and (b) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

         5.6.4   This Interim Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case of the Debtor. This Interim Order shall also inure to the benefit of Agent, Lenders, Bank Product Providers, Debtor and their respective successors and assigns.

         5.7   <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All post-petition advances and other financial accommodations under the Credit Agreement and the other Loan Documents are made in reliance on this Interim Order and there shall not at any time be entered in the Case, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Permanent Financing Order) which (a)

-28-

authorizes the use of cash collateral of Debtor in which Agent, Lenders or Bank Product Providers have an interest, or the sale, lease, or other disposition of property of the Debtor's Estate in which Agent, Lenders or Bank Product Providers have a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent, Lenders or Bank Product Providers hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Agent, Lenders and Bank Product Providers herein; unless, in each instance (i) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Agent, any Lender or any Bank Product Provider, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Credit Agreement and the other Loan Documents, including, without limitation, all debts and obligations of Debtor to Agent, Lenders and Bank Product Providers which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Agent.  The security interests and liens granted to or for the benefit of Agent, Lenders and Bank Product Providers hereunder and the rights of Agent, Lenders and Bank Product Providers pursuant to this Interim Order and the Loan Documents with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor and, if Agent shall expressly consent in writing that the Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

    5.8 <u>Sales Support Agreements</u>.  Notwithstanding anything to the contrary contained in any agreement or other order of this Court, any and all liens and/or superpriority administrative claims granted to or for the benefit of GM, Chrysler and/or Ford Motor Company (collectively, the "***Customers***") in connection with any automotive sale transactions support

agreement or similar arrangement entered into by any Loan Party and any of the Customers, including, without limitation, that GM/Chrysler Sale Support Agreement (collectively, the "*Sale Support Agreements*"), shall in all respects be junior and subordinate to the Superpriority Claim and Agent's, Lenders' and Bank Product Providers' liens on the Collateral securing the Obligations.  All rights of the Customers to receive payment in respect of any and all obligations arising under such Sale Support Agreements shall be subordinate in right of payment to the full repayment of all Obligations in accordance with the terms of the Loan Documents and this Interim Order.

      5.9    No Owner/Operator Liability.  Upon entry of a Permanent Financing Order, in determining to make any loan under the Credit Agreement, the other Loan Documents or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the Loan Documents or any Financing Order, Agent, Lenders and Bank Product Providers shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.10    Marshalling.  Upon the entry of a Permanent Financing Order, in no event shall Agent, any Lender or any bank Product Provider be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.

      5.11    Section 552(b).  The Agent, Lenders and Bank Product Providers shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Agent, Lenders and Bank Product Providers with respect to proceeds, products, offspring or profits of any of the Collateral.

      5.12    Right to Credit Bid.  The Agent, on behalf of itself, the Lenders and the Bank Product Providers, shall have the right to "credit bid" the amount of its and their claims

during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

       5.13   <u>Term; Termination</u>.  Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among Debtor, Agent, Lenders and Bank Product Providers authorized by this Interim Order may be terminated by Agent pursuant to the terms of the Credit Agreement.

       5.14   <u>Limited Effect</u>.  Unless the Interim Order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Loan Documents and this Interim Order, the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the Loan Documents.

       5.15   <u>Objections Overruled</u>.  All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

Section 6.   <u>Final Hearing and Response Dates.</u>  The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for August 21, 2013, at 11:00 a.m. before this Court (the "***Final Hearing***").  *The Debtor shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Creditors' Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtor, McDonald Hopkins PLC, 39533 Woodward Avenue, Suite 318, Bloomfield Hills, Michigan 48304 ; Attn: Stephen M. Gross, Fax: (248) 646-5075; (b) counsel for the Agent, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Daniel F. Fiorillo, Esq., Fax: (212) 682-6104; (c) counsel to any Committee; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States*

*Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the*

*foregoing no later than* <u>August 14</u>*, 2013 at 4:00 p.m. prevailing Eastern time.*

Dated: July_24, 2013
_____

_____
The Honorable Brendan Linehan Shannon
United States Bankruptcy Judge

3117974.2 06758/1654