IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Revstone Industries, LLC, <u>et al.</u>,[1] | : | Case No. 12-13262 (BLS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Metavation, LLC, | : | Case No. 13-11831 (BLS) |
| | : | |
| Debtor. | : | Joint Administration Requested |
| | : | |
| | : | |

**EMERGENCY MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR AUTHORIZATION TO PROSECUTE CERTAIN
CLAIMS ON BEHALF OF REVSTONE'S ESTATE**

The Official Committee of Unsecured Creditors (the "Committee") of

Revstone Industries, LLC ("Revstone"), by and through its undersigned counsel,

hereby moves (the "Motion"), on an emergency basis, for entry of an Order

authorizing the Committee to prosecute certain estate claims (the "Metavation

Claims") held by Revstone against its affiliate Metavation, LLC ("Metavation").  In

support of this Motion, the Committee respectfully states as follows:

---

[1]     The debtors in these chapter 11 bankruptcy cases and the last four digits of each Debtor's
federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613);
Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450).  The location
of the Debtors' headquarters and the service address for each of the Debtors is 2250
Thunderstick Dr., Suite 1203, Lexington, KY 40505.

## PRELIMINARY STATEMENT

1.     By this Motion, the Committee seeks entry of an order authorizing it to pursue the Metavation Claims, consisting of intercompany claims that Revstone has against Metavation. As set forth herein, the Committee believes that the professionals employed by Revstone, which professionals are also proposed to be employed by Metavation and owe fiduciary obligations to Metavation, cannot pursue the Metavation Claims.[2]

2.     Indeed, as set forth herein, the inherent and pervasive conflicts between the Metavation and Revstone estates, and the inability of professionals employed by both such estates to prosecute fully the Metavation Claim, in the first week of the Metavation bankruptcy case, have already caused these very professionals, among other things, to (i) omit the Metavation Claims from the Metavation Schedules (as defined herein), (ii) omit certain obligations that Metavation purports apparently may be owed by the Revstone estates to Metavation's proposed debtor-in-possession lender, Wells Fargo Capital Finance, N.A. ("Wells Fargo") from the Metavation Schedules, (iii) fail to provide any notice, let alone the notice required by the Federal Rules of Bankruptcy Procedure (the "Federal Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to creditors of the Revstone estate of additional obligations that such estate would incur

---

[2]     This Motion is without prejudice to the rights of the Committee with respect to the proposed retention of Revstone's professionals by Metavation in the Metavation bankruptcy case.

under the terms of the proposed financing being provided to Metavation by Wells Fargo; and (iv) fail to provide customary protections in an otherwise standard cash management order for post-petition intercompany obligations, including post-petition obligations owed to Revstone (in the form of superpriority administrative expense claim status for such obligations).

3.     Accordingly, demand on the hopelessly conflicted professionals employed by both Metavation and Revstone for standing to pursue the Metavation Claims in the Metavation bankruptcy case would be futile and is not required under Delaware law. Notwithstanding this, and out of an abundance of caution, counsel for the Committee made such demand on counsel for Revstone and Metavation as promptly as possible following the first day hearing in Metavation and counsel's review of the Metavation Schedules. On July 29, 2013, counsel for Revstone and Metavation responded to the demand letter and denied granting the Committee standing to pursue the Metavation Claims.

4.     To date, Revstone has not only refused to grant the Committee such standing, but has refused to recognize the Committee as a party in interest in the Metavation bankruptcy case. See, e.g., Transcript of Metavation First Day Hearing, dated July 24, 2013, at 22:10-15; 28:14-16; 32:23-25, 33:1-2. In light of the pendency of the committee formation meeting in the Metavation bankruptcy case and the refusal by counsel for Metavation to provide basic and relevant information regarding the Metavation bankruptcy case to the Committee and its professionals, the Committee has been compelled to file this motion on an emergency basis.

3

## BASIS FOR EMERGENCY RELIEF

5.      The Office of the United States Trustee (the "U.S. Trustee") has scheduled a formation meeting in the Metavation bankruptcy case. The Committee should immediately be vested with standing to prosecute the Metavation Claim so that the Committee can assert and protect the interests of Revstone's unsecured creditors against Metavation, including, among other things, the right to seek to be appointed to any committee ultimately formed in the Metavation bankruptcy case. Accordingly, the Committee hereby requests entry of an order vesting the Committee with authority to commence, prosecute, and compromise an action or actions prosecuting the Metavation Claims on behalf of Revstone's estate.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief sought herein are sections 105(a), 1103(c)(5), and 1109(b) of 11 U.S.C. §§ 101-1532 (as amended and applicable to these bankruptcy cases, the "Bankruptcy Code").

## BACKGROUND

A.      **The Non-Metavation Bankruptcy Cases**

8.      On December 3, 2012 (the "Revstone Petition Date"), Revstone and Spara, LLC, each filed a voluntary petition for relief under chapter 11

of the Bankruptcy Code in the Court.  The Debtors are operating their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.  To date, no trustee or examiner has been appointed.

9.    Since the Petition Date, Greenwood Forgings, LLC, US Tool & Engineering, LLC, and Metavation, each of which are indirect subsidiaries of Revstone, have also filed petitions under chapter 11 of the Bankruptcy Code.

10.    On January 16, 2013, Revstone filed its Schedules of Assets and Liabilities (Revstone Docket No. 128) (the "Revstone Schedules").  As set forth in the Revstone Schedules, Metavation owed Revstone no less than $3,668,995.00 as of the Revstone Petition Date.[3]  See Revstone Schedule B16.  Since Revstone's Petition Date, Revstone's claims against Metavation increased as post-petition intercompany claims continued to accrue, including for unpaid management fees and for the portion of professional fees that Revstone attributed to Metavation.

11.    Specifically, Revstone's professionals devised a formula for attributing a portion of accrued professional fees at the Revstone level to various Revstone subsidiaries and affiliates.  Although the Committee's professionals were informed that Revstone had created such an attribution formula, the Committee had no role in creating the formula and did not consent to such formula.  Indeed,

---

[3]    At the section 341(a) meeting of creditors of Revstone, Revstone's newly appointed CRO disavowed much of the information set forth in the Revstone schedules and statements and committed to filing amended schedules and statements.  See Transcript of Revstone Meeting of Creditors on February 14, 2013, a true and correct copy of relevant portions of which are attached hereto as Exhibit A at 29:4-8; 34:25, 35:1-3; 37:6-11.  However, no such amendments have been filed to date.

Revstone's professionals provided the specific dollar figures for each of the affiliates

to the Committee's professionals on a "professionals' eyes only" basis. Revstone

has never sought, let alone obtained, Court approval of its attribution formula.

### B.    The Metavation Bankruptcy Case

12.    Metavation filed a petition for relief under chapter 11 of the

Bankruptcy Code on July 22, 2013 (the "Metavation Petition Date"), also in the

Court. Between the late evening of July 22, 2013 and the early morning of July 23,

2013, Metavation filed a series of notice and "first day" motions. Among the "first

day" motions filed were (i) the motion to approve Metavation's cash management

system (Metavation Docket No. 6) (the "Metavation Cash Management Motion")

and (ii) the motion to approve certain debtor-in-possession financing (Metavation

Docket No. 21) (the "Metavation DIP Motion"). In the Metavation DIP Motion,

counsel for Metavation states correctly that "Local Rule 4001-(2)(a)(i)(A) requires a

debtor to disclose whether it has granted cross-collateralization to prepetition secured

creditors . . .." Revstone DIP Motion ¶ 5.a. However, Metavation thereafter, and

incorrectly (as was subsequently discovered), stated that "[t]he proposed Interim

Order does not provide for the granting of cross-collateralization protection to any

prepetition secured creditors." Id.

13.    On July 24, 2013, Metavation filed its Schedules of Assets and

Liabilities (Metavation Docket No. 37) (the "Metavation Schedules"). Despite

having scheduled the claims against Metavation in the Revstone Schedules, the

Metavation Schedules fail to list any amounts due from Metavation to Revstone.

The Metavation Schedules also fail to schedule Revstone as a co-debtor on the Wells Fargo obligations, again notwithstanding that Revstone, in fact, listed Wells Fargo as a contingent creditor asserting a claim in excess of $17 million in the Revstone Schedules.  See Revstone Schedule D.

14.    Thus, despite having responsibility to file accurate schedules and statements in both the Revstone and the Metavation bankruptcy cases, current management and the professionals employed in the Revstone bankruptcy case and proposed to be employed in the Metavation bankruptcy case, caused the Metavation Schedules to be filed without listing Revstone as a creditor.  This is so notwithstanding that the Revstone estate is a significant creditor of Metavation.  Indeed, the amount owed by Metavation makes the Revstone estate larger than any of the creditors listed by Metavation in its bankruptcy petition.

15.    On July 24, 2013, the Court held a hearing (the "Metavation First Day Hearing") at which the Court considered the "first day" motions filed by Metavation, including the Metavation Cash Management Motion and the Metavation DIP Motion.  At the First Day Hearing, only after concerns were raised by counsel for Boston Finance Group, LLC, a member of the Committee, counsel for Wells Fargo indicated the view of Wells Fargo that the borrowings under the proposed debtor-in-possession financing, for which Metavation alone was the movant, would in fact (and from the first borrowing under such financing) increase the amount due under a purported limited recourse guaranty entered into by Revstone prior to the Revstone Petition Date, thereby increasing any claim that Wells Fargo might have

7

against the Revstone estate and importantly against the property purportedly securing the limited guaranty by Revstone.

16.     Following the Metavation First Day Hearing, the Court entered an order granting the Metavation DIP Motion on an interim basis (Metavation Docket No. 50) (the "Metavation Interim DIP Order") and an order granting the Metavation Cash Management Motion (Metavation Docket No. 43) (the "Metavation Cash Management Order"). Counsel for Revstone, in accordance with the Court's instructions at the Metavation First Day Hearing, caused both orders, among others, and the notice of final hearing with respect to the Metavation DIP Motion, to be filed in both the Revstone and the Metavation bankruptcy cases, pending the Court's decision with respect to joint administration of such cases. However, and notwithstanding the revelations at the Metavation First Day regarding the potential impact of the proposed debtor-in-possession financing on the Revstone estate, Metavation has not to date (nor has Revstone to date) (i) amended the Metavation DIP Motion to correct the statement in the DIP Motion regarding an absence of cross-collateralization or (ii) provided creditors of Revstone with notice of the impact of the proposed Metavation debtor-in-possession financing on the Revstone estate.

17.     As noted above, the U.S. Trustee has indicated that it will conduct a formation meeting on Thursday, August 1, 2013, at 10:00 a.m. (Eastern) in the Metavation bankruptcy case. In order to protect the interests of the Revstone estate in the Metavation bankruptcy case and maximize the value of the Metavation

8

Claims, and because there is no routine cash management order protecting the

intercompany claims, it is critical that the Committee be granted standing to pursue

such claims on behalf of the Revstone estate and further that a representative selected

by the Committee be granted authority to serve on any committee appointed in the

Metavation bankruptcy case if a committee is formed and the U.S. Trustee seats a

representative of the Revstone estate, which estate holds one of the largest unsecured

claims in the Metavation bankruptcy case.

## REQUEST FOR RELIEF

**A.    The Committee Should Be Vested With Authority To Pursue The Metavation Claims.**

18.    While the Bankruptcy Code does not expressly confer power

on official creditors' committees to pursue claims on behalf of a debtor's estate, the

United States Court of Appeals for the Third Circuit has held that a bankruptcy court

may authorize a party-in-interest, such as an official creditors' committee, to pursue

litigation on behalf of the estate in the debtor's stead when the debtor fails or refuses

to do so.  See In re Cybergenics Corp., 330 F.3d 548 (3d Cir. 2003).

19.    This authority stems from Bankruptcy Code sections 105(a),

1103(c)(5), and 1109(b), and ensures that, when the debtor-in-possession

unreasonably fails to pursue an estate claim, or cannot do so effectively because of

conflicts-of-interest, an official creditors' committee may step into the debtor's shoes

and prosecute the claim as the representative of the estate.  See In re Cybergenics

Corp., 330 F.3d at 577; see also In re Caldor Corp., 303 F.3d 161, 166 n.2 (2d Cir.

2002); In re Commodore Int'l Ltd., 262 F.3d 96, 100 (2d Cir. 2001); Fogel v. Zell,

221 F.3d 955, 966 (7th Cir. 2000); In re Bumper Sales, Inc., 907 F.2d 1430, 1433-34

(4th Cir. 1990); La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 247 (5th Cir.

1988); Official Comm. of Asbestos Claimants of G-I Holding, Inc., 342 B.R. 416,

424-26 (S.D.N.Y. 2006); In re Adelphia Communications Corp., 330 B.R. 364, 373

(Bankr. S.D.N.Y. 2005); In re Life Serv. Sys., Inc., 279 B.R. 504, 510 (Bankr. W.D.

Pa. 2002), rev'd on other grounds, 327 B.R. 561 (W.D. Pa. 2005).

       20.    Because of a debtor's obvious conflict-of-interest, derivative

standing should be vested in an official creditors' committee when the target of

estate claims is an affiliate.  See Cybergenics, 330 F.3d at 573 ("[Management]

conflicts of interest can arise even in situations where there is no concern that a

debtor's management is trying to save its own skin . . . .  In any of these situations,

the real losers are the unsecured creditors . . ..").

       21.    Here, there is ample reason to vest the Committee with

standing to pursue the Metavation Claims against Metavation.  Metavation is an

indirect subsidiary of Revstone.  Moreover, Metavation shares common management

with Revstone.  However, the management of Metavation failed to schedule the very

Metavation Claims that are clearly set forth in the Revstone Schedules.  Nor has

Metavation provided basic protections for the post-petition claims that Revstone and

other debtor and non-debtor affiliates of Metavation may have as a result of

intercompany obligations under the Cash Management Order.  Finally, such

management has failed to provide any notice, let alone sufficient notice under the

Bankruptcy Rules and the Local Rules, to creditors of the Revstone estate regarding, among other things, the impact of Metavation's proposed debtor-in-possession financing on creditors of Revstone, through a potential increase in the allegedly secured prepetition guaranty from Revstone to Wells Fargo (which guaranty is purportedly secured by a pledge of Revstone's membership interests in its direct subsidiary Revstone Transportation, LLC).

22.     Management of Metavation and the professionals it has employed, which professionals are also employed by the Revstone estate, are, in short, inherently and irreconcilably conflicted from pursuing the Metavation Claims that such management and its professionals have already failed to schedule and otherwise act in the best interests of the Revstone estate in connection with the Metavation bankruptcy case. Accordingly, to the extent necessary, the Court should afford the Committee derivative standing to pursue the Metavation Claims.

**B.      Revstone Must Transfer Evidentiary Privileges Related to the Metavation Claims to the Committee.**

23.     In connection with its grant of standing to the Committee, the Committee requests that the Court order that all of Revstone's evidentiary privileges with respect to the Metavation Claims, including the attorney-client privilege, be transferred to the Committee. Such a transfer has been found to be automatic upon the granting of standing: "[w]hen a committee obtains court authorization to prosecute a . . . cause of action on behalf of the estate, that committee gains control over the exercise of the evidentiary privileges." Whyte v. Williams (In re Williams),

152 B.R. 123, 128 (Bankr. N.D. Tex. 1992) (finding that the "control over the evidentiary privilege in connection with or in relation to [an estate] action must be exercised by the fiduciary charged with liquidating the action").[4]

24.    The transfer of Revstone's privileges with respect to the Metavation Claims is also appropriate under the "fiduciary exception" first articulated by the Fifth Circuit Court of Appeals with respect to shareholder derivative actions. See Garner v. Wolfinbarger, 430 F.2d 1093, 1104 (5th Cir. 1970) (establishing criteria for waiver of attorney-client privilege in shareholder derivative actions to protect interests of corporation and public); see also Official Comm. of Asbestos Claimants of G-I Holding, Inc., 342 B.R. at 424-26 (applying fiduciary exception to actions brought by creditors' committee). The fiduciary exception has been consistently applied under Delaware law. See UniSuper Ltd. v. New Corp., Civ. A. No. 1699-N, 2006 WL 668547 (Del. Ch. Mar. 7, 2006); In re Unitrin, Inc. S'holders Litig., Civ. A. Nos. 13656, 13699, 1994 WL 507859 (Del. Ch. Sept. 7, 1994); Bray v. Okla. Publ. Co., Civ. A. No. 10793, 1990 WL 108313 (Del. Ch. July 26, 1990).

---

[4]    In light of the filing of a plan in the Revstone bankruptcy case by the Committee and the pending August 21, 2013, hearing date with respect to the adequacy of the disclosure statement filed with such plan, the Committee believes that the request herein that it be granted standing and that the privileges in connection with the Metavation Claims be transferred to the Committee is really a timing issue necessitated by the Metavation filing and the schedules proposed in the Metavation bankruptcy case. If the Committee's plan is ultimately confirmed, all of the claims of Revstone, including the Metavation Claims, and the privileges attendant thereto will ultimately be transferred to a reorganized entity owned and controlled by the creditors of Revstone.

25.    The Garner court provided nine (9) factors to consider in determining whether good cause exists to waive privilege with respect to a fiduciary pursuing an action on behalf of a corporation. See Garner, 430 F.2d at 1104. These factors can be grouped into four (4) categories: (i) the discovering party's stake in the fiduciary relationship; (ii) the apparent merit of the claim; (iii) the need of the discovering party for such information; and (iv) the nature of the communication itself. See G-I Holding, 342 B.R. at 424. When the party seeking discovery seeks to recover on behalf of a corporation, rather than individual claimants, the courts "bring a lesser degree of scrutiny to bear on determining whether good cause exists." Id. at 424-25.

26.    Similarly, in connection with a grant of standing to a creditors' committee to pursue claims belonging to a debtor's estate, the privilege should be waived in favor of the committee. In G-I Holding, the creditors' committee, which was granted standing to pursue causes of action belonging to the debtor, sought discovery from the debtor related to actions brought by the committee against the debtor's control persons. Id. at 419–20. The debtor refused to provide certain communications, asserting its attorney-client privilege. Id. The court found that the Garner fiduciary exception applied and denied the debtor's right to assert the privilege. Id. at 424–28. Similarly, Revstone's privileges should be transferred to the Committee in this case.

WHEREFORE, for the foregoing reasons, the Committee respectfully requests that this Court enter an Order (i) vesting the Committee with authority to

pursue the Metavation Claims; (ii) ordering that Revstone's privileges relating to the

Metavation Claims are transferred to the Committee; and (iii) providing the

Committee such further relief as is just and proper.

Dated: Wilmington, Delaware
      July 29, 2013

/s/ Mark L. Desgrosseilliers
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Matthew P. Ward (Del. Bar No. 4471)
Ericka F. Johnson (Del. Bar No. 5024)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
Telephone:  (302) 252-4320
Facsimile:  (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com

Counsel for the Official Committee of
Unsecured Creditors of Revstone Industries,
LLC

WCSR 30948177v9