# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | **Related to Docket Nos. 794, 795** |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Related to Docket Nos. 19, 20, 49** |

**AMENDED MOTION OF METAVATION, LLC AND REVSTONE INDUSTRIES, LLC PURSUANT TO SECTIONS 105, 362 & 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 4001 AND 9019 FOR ENTRY OF A FINAL ORDER (A) APPROVING AUTOMOTIVE SALE TRANSACTIONS SUPPORT AGREEMENT AND (B) MODIFYING THE AUTOMATIC STAY**

Metavation, LLC ("Metavation")[2] a debtor and debtor in possession herein, hereby submits this amended motion (the "Motion") and together with Revstone Industries, LLC ("Revstone"), a debtor and debtor in possession herein, seek entry of an order (the "Final Order") substantially in the form attached hereto as **Exhibit A** following a final hearing set by the Court for August 21, 2013 at 11:00 a.m. (the "Final Hearing"), pursuant to sections 105, 362 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the terms of that

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] Metavation filed its chapter 11 bankruptcy case on July 22, 2013 (the "Metavation Petition Date"). A motion seeking joint administration of the Metavation Chapter 11 case with those of the above captioned Debtors was filed

certain *Automotive Sale Transactions Support Agreement* (the "Support Agreement") a summary of which is attached hereto as **Exhibit B**[3] by and among (i) Metavation, Revstone, and certain of Revstone's non-debtor affiliates and (ii) General Motors, LLC ("GM") and Chrylser Group, LLC ("Chrysler"), original equipment manufacturers that are customers of certain of Revstone's non-debtor affiliates including Metavation (GM and Chrysler together, the "Supporting Customers"). In support of this Motion, Metavation and Revstone respectfully state as follows:

## Preliminary Statement

Metavation and Revstone seek approval of the Support Agreement with the Supporting Customers as an integral part of a broader plan – including the sale of the assets of Metavation and certain other of Revstone's non-debtor affiliates, entry into additional support agreements with other customers, a resolution of certain claims and other matters with the Pension Benefit Guaranty Corporation, and other arrangements – that collectively will provide tangible, as well as indirect, substantial benefits and value to their estates. The Supporting Customers are the principal customer constituents at Metavation and certain of Revstone's other non-debtor operating companies. Most of the revenues generated at Metavation originate from orders placed by the Supporting Customers. The continued support of the Supporting Customers is necessary to maintain Metavation and Revstone's non-debtor subsidiaries as going concerns (and the value thereof) and, in turn, maximize Revstone's interests in its subsidiaries.

---

on the Metavation Petition Date as part of Metavation's first day motions.

[3] The Support Agreement, filed under seal at Docket No. 19 pursuant to the confidentiality terms set forth therein, was disclosed to the Office of the United States Trustee and Official Committee of Unsecured Creditors appointed in the Revstone Case. Subject to the Debtors' discretion to limit disclosure of the Support Agreement based upon the identity of the requesting party and their role with respect to the Debtors and Revstone Group, a copy of the Support Agreement will be provided to parties that execute and return to Debtors' counsel the Confidentiality Agreement attached hereto as Exhibit C. The Supporting Customers shall have one (1) business day to object to the dissemination of the Support Agreement following submission of an executed Confidentiality Agreement. Bankruptcy Court review can be sought for any dispute over the exercise of the Debtors' and Supporting Customers' discretion to provide the Support Agreement.

Since the commencement of its bankruptcy case, Revstone focused on maximizing the value of its affiliates in an effort to yield the highest possible return on equity to Revstone and its estate, while balancing the cash needs of the operating businesses of its affiliates with the legitimate concerns of the Supporting Customers and the remainder of the customer base regarding the viability of Revstone's affiliates and subsidiaries. Over a period of months, Revstone and Metavation have been involved in extensive, arms'length, and multi-party negotiations with and amongst their various customers, including the Supporting Customers. The proposed Support Agreement is culmination of those efforts with GM and Chrysler.

In summary, the Support Agreement provides that Revstone will agree to sell all of its automotive business and, subject to the entry of orders approving the Support Agreement and completion of the sales, the Supporting Customers will support the transactions by making certain payments to Metavation (the "Sale Support Payments") and to continue providing necessary funding to Metavation to enable it to operate to the closing of a sale, thereby maximizing the value of the estate. Further, the Supporting Customers have agreed to purchase participation interests in Metavation's proposed debtor-in-possession financing and to forgive portions of prior financial accommodations provided to Metavation and Contech. In consideration of the foregoing, Revstone's subsidiaries and affiliates are required to repay only (i) certain retained participation interests which include loans previously provided that are not being forgiven and (ii) a portion of the Sale Support Payments provided by the Supporting Customers secured by proceeds of the asset sales and certain equipment and real estate interests. The Supporting Customers will have certain rights and remedies upon default, as described in detail below and in the Support Agreement. Metavation and certain of Revstone's subsidiaries

and affiliates have also agreed to provide the Supporting Customers various supply protection assurances.

The Support Agreement is clearly in the best interests of the estates of Revstone and Metavation and should be approved. The transactions contemplated thereunder provide the means to maximize recoveries from Revstone's interests in its operating subsidiaries and for Metavation to consummate a proposed sale of its assets for the highest and best value. In fact, Metavation, with the consent and financial support of the Supporting Customers, filed a motion to sell substantially all of its operating assets. Thus, the benefits to these estates from the proposed settlement are immediate, substantial and include, among other things, Supporting Customer accommodations and funding, satisfaction of creditor claims at subsidiary levels, preservation of Supporting Customer relationships and going concern value, and Sale Support Payments to further enhance value so that ultimately the result will be the maximum value for key assets of Metavation and Revstone's estates.

### Jurisdiction and Venue

1.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for this Motion are sections 105, 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

3.  On December 3, 2012, Revstone and its sister company, Spara, LLC ("Spara"), commenced their respective cases by filing voluntary petitions for relief under chapter

11 of the Bankruptcy Code. On January 7, 2013, Revstone subsidiaries, Greenwood Forgings, LLC ("Greenwood") and US Tool & Engineering, LLC ("US Tool", with Revstone, Spara and Greenwood, the "Original Debtors"), commenced their respective cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Original Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The factual background relating to the commencement of Revstone's chapter 11 case is set forth in detail in the Declaration of Jay N. Brown in Support of First Day Pleadings filed on December 5, 2012 and incorporated herein by reference.

5. On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Revstone chapter 11 case (the "Revstone Case"). No committee has been appointed in the cases of Spara, Greenwood or US Tool. No trustee or examiner has been appointed in any of the Original Debtors' chapter 11 cases.

6. On July 22, 2013, Metavation (with the Original Debtors, collectively, the "Debtors") commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Metavation continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Metavation's chapter 11 case (the "Metavation Case"). As of the date hereof, no creditors' committee has been appointed in the Metavation Case.

5

7.      The factual background relating to the commencement of the Metavation Case is set forth in detail in the Declaration of John C. Didonato in Support of First Day Pleadings (the "Didonato Declaration") filed on July 22, 2013 and incorporated herein by reference.

8.      Metavation is a wholly owned subsidiary of non-debtor Revstone Transportation, LLC ("Revstone Transportation") which, in turn, is a wholly owned subsidiary of Revstone. Metavation is an affiliate of Debtors Spara, Greenwood and US Tool.

9.      As part of its first day motions, Metavation filed pleadings seeking, among other things, entry of orders directing joint administration with the Debtors' cases, authorizing debtor in possession financing, and this Motion to approve the Support Agreement on interim and final bases. Additionally, Metavation contemporaneously filed motions for approval of bid procedures and authorization of the sale of substantially all of Metavation's operating assets.

10.     The Debtors and their affiliates (collectively referred to herein as the "Company") are premier designers and manufacturers of highly engineered components for automotive and other industrial sectors focusing on case and formed metals, tooling, and high-performance products and processes. The Company is also a premier designer, manufacturer and supplier of components for the global aerospace, energy, military, defense and transportation industries. Certain affiliates specialize in thermoform plastics, forging, casting, fabricating and molding of various types of ferrous and non-ferrous metals, as well as the performance of precision machining and fabrication.

DOCS_DE:188798.2 73864/001

A.  **The Company's Business Relationship with the Supporting Customers**

11.  The Company's portfolio of products includes components for automotive powertrains, drivetrains and chassis for engine transmissions, suspension chassis, chassis sub frames and exhaust suspension systems.

12.  Many of the products are sole-sourced directly into the manufacturing process and supply chain by the Company's customers, making the Company a valued, long-term preferred provider of unique components and an integral, trusted partner with its customers in the assembly process. Following an active acquisition program that began in 2008, the Company became an integral supplier to the Supporting Customers and other automotive companies.

13.  Specifically, Revstone's interests include indirect ownership of operating companies, Metavation, Contech Castings, LLC ("Contech"), Eptec S.A. de C.V. ("Eptec"), Creative Lighting Solutions, LLC ("CLS") and Aarkel Tool & Die Inc. ("Aarkel"). These businesses together generate approximately $313 million of revenues and approximately $28 million of positive adjusted EBITDA on an annual basis. Revstone believes that significant equity value exists in these non-debtor subsidiaries.

14.  Metavation manufactures and provides its customers, including but not limited to, GM and Chrysler, with component parts (the "Metavation Component Parts"). Revstone holds 100% of the membership interests in Metavation through its wholly owned intermediate subsidiary Revstone Transportation. Fairfield Casting, LLC ("Fairfield"), a non-debtor subsidiary of Spara, also manufactures parts for Metavation.

15. Non-debtor affiliate Contech manufactures and provides its customers, including, but not limited to, Chrysler and Linamar Corporation ("Linamar", with Chrysler, collectively, the "Contech Customers") with component parts (the "Contech Component Parts", with the Metavation Component Parts, collectively, the "Component Parts"). Other non-debtor affiliates, Eptec, CLS and Aarkel, also manufacture and supply Component Parts. Like Metavation, Revstone holds 100% of the membership interests in Contech through Revstone Transportation. Revstone indirectly holds 100% of the equity in Eptec, a Mexican entity, through Revstone Transportation and two subsidiary U.S. entities. Revstone is directly or indirectly the sole member of CLS and Aarkel.

16. Prior to and since the Original Debtors' petition date, the Supporting Customers and other customers have expressed their concern about the Companies' viability for reasons including, but not limited to, allegations of improper conduct, and inefficient operating and financial control by prior management of the Companies, that the Supporting Customers contend adversely impacted the Companies' performance. In light of the Supporting Customers' concerns, and because the Supporting Customers recognize the benefits of having the Companies continue operating as a going concern, the Supporting Customers encouraged a change in control of Revstone Transportation, Metavation, Contech (and its subsidiary, Contech Real Estate Holdings, LLC "Contech Real Estate"), Eptec, CLS and Aarkel (collectively, the "Revstone Group"). The Revstone Group has been in the process of marketing these assets in an effort to preserve going concern value and maximize recovery to all constituents. The Revstone Group's efforts have led to the pending sale of the assets of Contech and Contech Real Estate to Shiloh

Die Casting Midwest LLC and the proposed sale of Metavation. Without the Support Agreement, these efforts will have a significantly lower chance of success, and with not nearly the same overall benefits to the Companies' constituents.

17. In addition to the marketing and sale efforts, the Revstone Group has been involved in arms'-length negotiations with the Supporting Customers regarding certain needed financial accommodations that will permit the Revstone Group to continue operating while pursuing going concern sales, and to maximize the return resulting from such sales. The proposed Support Agreement is the product of those multi-party discussions. This Court's approval of the Support Agreement in each of Revstone and Metavation's chapter 11 cases is a necessary condition to its effectiveness.

**B.    The Support Agreement**

18. The Support Agreement is integral to maximizing the value of Metavation, Contech, Eptec, CLS and Aarkel (each a "<u>Business</u>" and collectively the "<u>Businesses</u>") by (i) providing adequate financing to Metavation through the sale in order to maintain the continued production of Component Parts, (ii) to support the going concern sales of the Businesses with a direct support payment that will assist to defray significant claims, and (iii) forgiving substantial past and future participation loans made by the Supporting Customers to Metavation and Contech.

19. As more fully described in the Debtor's motion to approve interim and final orders authorizing postpetition financing and use of cash collateral (the "<u>DIP Motion</u>"), the Supporting Customers have agreed to purchase participations in the DIP Supplemental Advances

9

(as defined in the DIP Motion), which represent the out-of-formula advances that Metavation projects to be incurred prior to the sale of Metavation. Further, to incentivize Metavation's lender to continue to provide in-formula advances, the Supporting Customers have agreed to provide certain credit enhancements. The financing to be provided by the Supporting Customers to Metavation will be in accordance with the budget provided by Metavation and pursuant to the terms of that certain Amended and Restated Junior Participation Agreement (as amended).

20. Subject to certain conditions, the Supporting Customers have also agreed to make direct payments to Metavation in two tranches upon the timely satisfaction of sale process milestones set forth in the Support Agreement, a portion of which will be repaid through various alternative forms of collateral.

21. Finally, provided there is no event of default, the Supporting Customers have agreed to forgive certain secured participation loans. The Supporting Customers will retain only certain participations, namely (i) those purchased after January 11, 2013 as a result of changes to the borrowing base calculation imposed by the lender under the Credit Agreement (as defined in the DIP Motion), (ii) certain secured loans provided by the Supporting Customers to Metavation, and (iii) a portion of debtor-in-possession financing and other loans extended after June 1, 2013. These retained participations will be secured by a limited collection of collateral, including the Businesses (other than Contech and Metavation), certain excess real estate and machinery and equipment, and certain rights of setoff.

22. Failure to meet the sale milestones will result in default. Upon default, the Supporting Customers can withdraw their financial support of the Businesses and the related

sales and, after written notice, enforce an agreed upon form of order for the appointment of a receiver at each of the Businesses (the "Receivership Order").  The proposed order approving the Support Agreement provides for relief from the automatic stay, to the extent applicable and upon three (3) business days written notice, to allow the Supporting Customers to exercise any remedy available under the Support Agreement upon events of default.

23.     Metavation has agreed to provide Supporting Customers certain assurances regarding continuation of production, including, without limitation, continuation and expansion of certain pre-petition rights to either purchase or to use Metavation and certain non-debtor subsidiaries' assets to manufacture the Supporting Customers component parts after the occurrence of certain specified defaults (as more fully set forth in certain pre-petition agreements (including without limitation, the Agreement to Limit Setoffs and Grant Access Security among Chrysler, Contech Castings, LLC and certain other customers) and in the Omnibus Access and Security Agreement incorporated into and made a part of the Support Agreement, the "Access Rights.").

## Relief Requested

24.     By this Motion, Metavation and Revstone request the entry of a final order, pursuant to sections 105, 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, substantially in the form attached hereto as **Exhibit A**, approving the Support Agreement and modifying the automatic stay and for such other relief as is just and proper.

## Basis for Relief

25.     Approval of the Support Agreement constitutes a reasonable exercise of the debtor's business judgment under Bankruptcy Code section 363(b). This provision states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting this provision, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983. Approval of the Motion should be further authorized pursuant to section 105 of the Bankruptcy Code, which authorizes the Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *See* 11 U.S.C. § 105(a).

26.     To the extent applicable, the proposed Support Agreement also should be approved as a compromise or settlement under Bankruptcy Rule 9019, which provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).

27.  Approving a settlement "is within the discretion of the bankruptcy court." *In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate." *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The Third Circuit has enumerated four factors to be considered when evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *accord In re Nutraquest*, 434 F.3d at 644.

## Argument

### A.  The Support Agreement Satisfies Sections 105 and 363(b) of the Bankruptcy Code and Should be Approved

28.  The proposed Support Agreement should be approved by the Court as a proper exercise of business judgment under sections 105 and 363(b) of the Bankruptcy Code. Revstone is a holding company with interests in various non-debtor component manufacturers that include Metavation, Contech, Eptec, CLS and Aarkel. These businesses together generate approximately $313 million of revenues and approximately $28 million of positive adjusted EBITDA on an annual basis. Metavation alone generates $72 million of revenues. To maximize its value and generate much needed funds, Metavation has focused on completing a sale of substantially all of its assets while Revstone has pursued the sale of other operating companies which are part of the Revstone Group.

29. The Support Agreement is the result of Revstone and Metavation's extensive, arms' length negotiations with the Supporting Customers responsible for the significant portions of the business generated at Metavation and certain of Revstone's other subsidiary companies. The continued support of the Supporting Customers is absolutely vital to preserving the going value of these businesses. By way of the Support Agreement, in addition to the Sale Support Payment payable directly to Metavation, the Supporting Customers have agreed to support the sale of the other Businesses while continuing to fund operations at Metavation pending the outcome of an agreed sale process. The Supporting Customers' support is a critical element in maintaining the going concern value of Revstone's businesses, since, without the Supporting Customers, the value of such businesses (including Metavation) could be substantially reduced. The Supporting Customers also agreed to forgive a substantial amount of prior financial accommodations provided to Metavation and will not require full repayment of the Sale Support Payment. In return for the Supporting Customers' support, Metavation and Revstone's other non-debtor subsidiaries will be required to continue producing Component Parts, complete sales of their businesses and grant certain remedies should an event of default occur.

30. Metavation and Revstone believe that the Support Agreement is clearly in the best interests of this estate and should be approved because the transactions contemplated thereunder provide the means to maximize recoveries from Metavation and Revstone's interests in its other significant operating subsidiaries. The benefits to the estate from the proposed settlement are substantial and include, among other things, substantial Supporting Customer

accommodations, satisfaction of creditor claims at subsidiary levels, preservation of Supporting Customer relationships and going concern value, and ultimately the result of yielding maximum value for substantially all the operating assets of Metavation.

31.     The Support Agreement is the result of independent and lengthy negotiations and represents the best possible result achievable under the circumstances. While the Supporting Customers are granted certain remedies under the Support Agreement, including, but not limited to, stay relief and the ability to seek a receivership in the event of default, Metavation and Revstone believe that providing for such remedies are appropriate given the alternative of protracted litigation, loss of sale support and other accommodations, and the potential, if not likely loss of significant value of the Businesses. Metavation and Revstone therefore strongly urge the Court to approve the Support Agreement under sections 105 and 363 of the Bankruptcy Code.

**B.    The Support Agreement Satisfies the *Martin* Factors
and Should Be Approved Under Bankruptcy Rule 9019**

32.     For the same reasons noted above, Revstone and Metavation submit that the terms and conditions of the Support Agreement are fair and reasonable and in the best interests of their estates for purposes of Bankruptcy Rule 9019.

33.     Metavation and certain of the other members of the Revstone Group have contractual obligations to the Supporting Customers. Faced with a liquidity crisis, Metavation and Revstone face the distinct possibility that breach of their obligations to provide Component Parts would result in significant clashes with the Supporting Customers. The Support Agreement

avoids any disputes that may arise with the Supporting Customers and provides a mechanism for financing Metavation pending an orderly sale process designed to maximize value of not only Metavation but the other members of the Revstone Group, including through the provision of significant sale support and financing (including the waiver of substantial outstanding claims), which will defray significant obligations to the benefit of Revstone, Metavation and their estates.

34. In terms of the *Martin* factors, the probability of success in litigation and the complexity of disputes at issue both weigh strongly in favor of the proposed Support Agreement. The longstanding nature and extent of Metavation and the Revstone Group's relationships with the Supporting Customers make litigation over the parties' respective rights and claims against each other an onerous, costly, and highly risky exercise for all sides. Moreover, litigation will, at a minimum, hinder Metavation and the Revstone Group's ability to recover any monies under the purchase contracts from the Supporting Customers. Thus, the first three criteria of the *Martin* test support the resolution set forth in the Support Agreement.

35. With respect to the paramount interest of creditors, Metavation and Revstone believe that the terms and conditions of the Support Agreement are in the best interests of creditors because it preserves and maximizes going concern value and is expected to yield tangible benefits to Revstone and Metavation. The significant benefits provided to Metavation and Revstone include, the Sale Support Payment, debtor-in-possession financing, and operations funding pursuant to a budget coupled with Supporting Customer accommodations that forgive certain indebtedness and forbears setoff rights. The Supporting Customers' support of the sale process is also not be to overlooked as that support will help realize the best value for the

Businesses. In exchange, Metavation and Revstone have agreed to, among other things, relief from the automatic stay to allow each Supporting Customer to exercise available remedies and stipulated to a Receivership Order for certain members of the Revstone Group. These remedies are reasonable in light of the substantial financial and other commitments made by the Supporting Customers for the benefit of the Metavation, Revstone and the other members of the Revstone Group. Ultimately, given the costs, risks, and delay associated with a protracted dispute with the Supporting Customers, Metavation and Revstone believe that the terms of the Support Agreement are fair and reasonable, satisfy the standard promulgated by the Third Circuit governing compromise of controversies under Bankruptcy Rule 9019, and should be approved.

## Notice

36.    Notice of this Motion has been provided by first-class mail to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Committee in the Revstone Case; and (iii) those parties that have requested service under Bankruptcy Rule 2002.

*Remainder of Page Intentionally Blank*

WHEREFORE, Metavation and Revstone respectfully request entry of a final order approving the Support Agreement, modifying the automatic stay, and granting such other and further relief as this Court deems just and proper.

Dated: July 29, 2013

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com
        crobinson@pszjlaw.com

Counsel to Revstone Industries, LLC and Proposed Counsel to Metavation, LLC, Debtors and Debtors in Possession