# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re Metavation, LLC                                    **Case No. 13-11831 (BLS)**
    Debtor

## INITIAL MONTHLY OPERATING REPORT
**File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.**

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation.
Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession."
Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit
agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| **12-Month Cash Flow Projection  (Form IR-1)** | YES | |
| **Certificates of Insurance:** | | |
|    Workers Compensation | YES | |
|    Property | YES | |
|    General Liability | YES | |
|    Vehicle | YES | |
|    Other: Exec Risk Mgmt; Professional; D&O | YES | |
|    Identify areas of self-insurance w/liability caps | N/A | |
| **Evidence of Debtor in Possession Bank Accounts** | | |
|    Tax Escrow Account | N/A | |
|    General Operating Account | YES | |
|    Money Market Account pursuant to Local Rule 4001-3.  Refer to | N/A | |
|    http://www.deb.uscourts.gov/ | | |
|    Other: | | |
| **Retainers Paid (Form IR-2)** | YES | |
| | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached
are true and correct to the best of my knowledge and belief.

_____          _____
Signature of Debtor                                      Date


_____          _____
Signature of Joint Debtor                                Date

*(signature)* James M. Lederer                          8/2/2013

Signature of Authorized Individual*                      Date


_____          _____
Printed Name of Authorized Individual                    Title of Authorized Individual


*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

**Metavation**

**Cash Forecast**

| Accounting Period | Forecast 7 7/13/2013 Week 1 | Forecast 7 7/20/2013 Week 2 | Forecast 7 7/27/2013 Week 3 | Forecast 7 8/3/2013 Week 4 | Forecast 8 8/10/2013 Week 5 | Forecast 8 8/17/2013 Week 6 | Forecast 8 8/24/2013 Week 7 | Period Total Total |
|---|---|---|---|---|---|---|---|---|
| **Available Funds:** | | | | | | | | |
| Beginning Cash | $ 414,301 | $ 480,274 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 414,301 |
| Wells Borrowings | 1,342,488 | 999,111 | 1,008,384 | 1,008,384 | 1,090,284 | 1,089,435 | 535,840 | 7,073,925 |
| Customer Advances | 1,150,000 | 319,029 | 429,442 | 600,875 | 328,310 | 346,873 | 470,154 | 3,644,682 |
| **Cash Available:** | $ 2,906,789 | $ 1,798,414 | $ 1,487,825 | $ 1,659,258 | $ 1,468,594 | $ 1,486,308 | $ 1,055,994 | $ 11,132,908 |
| **DIP Scenario Professional Fee Budget** | | | | | | | | |
| Production Disbursements | $ 1,671,952 | $ 514,613 | $ 943,457 | $ 943,457 | $ 984,055 | $ 984,055 | $ 626,217 | $ 6,667,806 |
| Payroll/Taxes | 182,032 | 251,377 | 182,032 | 251,377 | 189,865 | 262,194 | 94,932 | 1,413,808 |
| Benefits (Hlth, Dis, Life, 401K) | 63,097 | 63,097 | 63,097 | 63,097 | 65,812 | 65,812 | 32,906 | 416,920 |
| Facilities | 84,548 | 84,548 | 84,548 | 84,548 | 88,186 | 88,186 | 44,093 | 558,658 |
| Other SG&A | 29,779 | 29,779 | 29,779 | 161,779 | 31,060 | 31,060 | 7,957 | 321,193 |
| Management Fee | 54,615 | - | 54,615 | - | 54,615 | - | 54,615 | 218,460 |
| Property Taxes | - | - | - | - | - | - | 62,155 | 62,155 |
| Interest | - | - | 75,297 | - | - | - | 78,118 | 153,415 |
| Pension Expense | - | - | - | - | - | - | - | - |
| General CapEx | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 35,000 |
| DIP Fees and Related Charges | - | 100,000 | - | 100,000 | - | - | - | 200,000 |
| Material Supplier Deposits | - | 700,000 | - | - | - | - | - | 700,000 |
| Friday Avail Adjustment | 335,492 | | | | | | | 335,492 |
| **Total Disbursements** | 2,426,514 | 1,748,414 | 1,437,825 | 1,609,258 | 1,418,594 | 1,436,308 | 1,005,994 | 11,082,908 |
| **Ending Cash Balance** | 480,274 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| **Revolver Calculations** | | | | | | | | |
| Beg A/R Balance | $ 8,559,467 | $ 8,374,634 | $ 8,335,422 | $ 8,242,616 | $ 8,149,811 | $ 8,170,406 | $ 8,197,588 | $ 8,559,467 |
| Sales | 1,018,037 | 967,135 | 967,135 | 967,135 | 1,080,783 | 1,080,783 | 455,066 | 6,536,075 |
| A/R Collections | (1,157,775) | (968,383) | (1,019,048) | (1,019,048) | (1,019,036) | (1,012,588) | (417,959) | (6,613,838) |
| Adjustments | (45,095) | (37,965) | (40,892) | (40,892) | (41,151) | (41,013) | (43,803) | (290,811) |
| Ending A/R Balance | $ 8,374,634 | $ 8,335,422 | $ 8,242,616 | $ 8,149,811 | $ 8,170,406 | $ 8,197,588 | $ 8,190,893 | $ 8,190,893 |
| Ineligible | 4,366,881 | 4,291,519 | 4,211,260 | 4,131,001 | 4,067,775 | 4,004,550 | 3,859,170 | 3,859,170 |
| Eligible A/R @ 85% | 3,406,590 | 3,437,318 | 3,426,653 | 3,415,988 | 3,487,236 | 3,564,083 | 3,681,964 | 3,681,964 |
| Inventory @ Advance Rate | 897,442 | 897,442 | 897,442 | 897,442 | 897,442 | 897,442 | 897,442 | 897,442 |
| Reserves/ Blocks | - | - | - | - | - | - | - | - |
| Availability Before Loan | $ 4,304,032 | $ 4,334,760 | $ 4,324,095 | $ 4,313,430 | $ 4,384,678 | $ 4,461,525 | $ 4,579,406 | $ 4,579,406 |
| Additional Reserves/ Blocks | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 |
| Beginning Revolver Balance | $ 1,619,320 | $ 1,804,032 | $ 1,834,760 | $ 1,824,095 | $ 1,813,430 | $ 1,884,678 | $ 1,961,525 | $ 1,619,320 |
| Draws | 1,342,488 | 999,111 | 1,008,384 | 1,008,384 | 1,090,284 | 1,089,435 | 535,840 | 7,073,925 |
| A/R Collections | (1,157,775) | (968,383) | (1,019,048) | (1,019,048) | (1,019,036) | (1,012,588) | (417,959) | (6,613,838) |
| Additional Cash Receipts | | | | | | | | |
| Ending Revolver balance | $ 1,804,032 | $ 1,834,760 | $ 1,824,095 | $ 1,813,430 | $ 1,884,678 | $ 1,961,525 | $ 2,079,406 | $ 2,079,406 |
| Net Availability | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Scenario Assuming Wells Payoff:** | | | | | | | | |
| Customer in Formula Adv not Subject to Cap | | $ 30,728 | | | $ 49,919 | $ 76,847 | $ 117,882 | 275,374 |
| Total Customer Operating Adv | $ 1,150,000 | $ 349,757 | $ 429,442 | $ 600,875 | $ 378,228 | $ 423,720 | $ 588,035 | $ 3,920,056 |
| Total Customer Professional Fee Adv | $ 500,000 | $ 280,000 | $ 402,500 | $ 292,500 | $ 175,000 | $ 175,000 | $ 175,000 | $ 2,000,000 |
| Total Jr. Participation | $ 1,650,000 | $ 629,757 | $ 831,942 | $ 893,375 | $ 553,228 | $ 598,720 | $ 763,035 | $ 5,920,056 |

*Note that BBC is shown for calculating customer Participations. Wells will provide 100% of cash receipts and participations remitted.

**Metavation**
Professional Fee Budget

| | Pre File Prep Retainer Week 1 7/13 | Week 2 7/20 | Week 3 7/27 | Week 4 8/3 | Week 5 8/10 | Week 6 8/17 | Week 7 8/24 | Period Total |
|---|---|---|---|---|---|---|---|---|
| **Debtor's Advisors** | | | | | | | | |
| Counsel - Pachulski | 250,000 | 100,000 | 150,000 | 100,000 | 50,000 | 50,000 | 50,000 | 750,000 |
| Special Counsel - McDonald Hopkins | | 20,000 | 37,500 | 37,500 | 20,000 | 20,000 | 20,000 | 155,000 |
| Claims Agent | | 20,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 95,000 |
| Huron | 250,000 | 100,000 | 150,000 | 100,000 | 50,000 | 50,000 | 50,000 | 750,000 |
| **Lender's Advisors** | | | | | | | | |
| Counsel | | 40,000 | 20,000 | 10,000 | 10,000 | 10,000 | 10,000 | 100,000 |
| **Creditors Committee Advisors** | | | | | | | | |
| Committee Counsel | | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 75,000 |
| Committee FA | | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 75,000 |
| Total | 500,000 | 280,000 | 402,500 | 292,500 | 175,000 | 175,000 | 175,000 | 2,000,000 |

Note:
Any part of an advisor's amount that is unused in any week may be used in any prior or later week for which that advisor exceeds its budgeted amount.  In addition, advisors are subject to a 20% variance by advisory firm.
Any individual advisor's unused variance at the end of the
Post Close/Wind Down Period may be reallocated by the debtor to increase another advisor's total at that time.

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

METAV-1        OP ID: SC

**DATE (MM/DD/YYYY)**
07/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Spankie Carolanne | |
|---|---|---|
| Todd Associates, Inc.<br>23825 Commerce Park, Suite A<br>Beachwood, OH 44122<br>Timothy P. Fitzpatrick | Phone: 440-461-1101<br>Fax: 440-446-0192 | |
| | PHONE (A/C, No, Ext): 440-995-4224 | FAX (A/C, No): 440-446-0192 |
| | E-MAIL ADDRESS: scarolanne@toddassociates.com | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED  Ascalon Enterprises, LLC<br>Revstone Industres, LLC<br>Metavation, LLC<br>21177 Hilltop<br>Southfield, MI 48034 | INSURER A : Travelers P&C Co. of America | 25674 |
| | INSURER B : Travelers Indemnity Company | 25658 |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>  CLAIMS-MADE  X  OCCUR | | | 630-291D4776 | 12/29/2012 | 12/29/2013 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>  POLICY  PRO-JECT  LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>X ALL OWNED AUTOS   X SCHEDULED AUTOS<br>X HIRED AUTOS  X NON-OWNED AUTOS | | | 810-291D4776 | 12/29/2012 | 12/29/2013 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  X OCCUR<br>  EXCESS LIAB  CLAIMS-MADE<br>  DED  RETENTION$ nil | | | CUP 291D4776 | 12/29/2012 | 12/29/2013 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | UB 291D4868 | 12/29/2012 | 12/29/2013 | X WC STATU-TORY LIMITS  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| A | Global Liability | | | ZPP-12S22317-12-GC | 12/29/2012 | 12/29/2013 | per occur | 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
The Certificate Holder will receive written notice in the event any of the above policies are cancelled.

Locations: 215 Industrial Park Drive, Hillsdale MI 49242; 760 E Huron Avenue, Vassar MI 48768; 1799 & 1996 Gover Parkway, Mt Pleasant MI 48851

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| OFFIWI1<br><br>Office of the United States Trustee<br>Attn: Jane Leamy<br>844 King St, #2207, Box 35<br>Wilmington, DE 19899-0035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>**AUTHORIZED REPRESENTATIVE**<br>*Timothy P Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)        The ACORD name and logo are registered marks of ACORD

OP ID: SC

# ACORD® EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
07/29/2013

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 440-461-1101 | COMPANY NAME AND ADDRESS | NAIC NO: 22667 |
|---|---|---|---|
| Todd Associates, Inc.<br>23825 Commerce Park, Suite A<br>Beachwood, OH 44122<br>Timothy P. Fitzpatrick | | ACE American Ins.Co.<br>1 Beaver Valley Road<br>P.O. Box 15054<br>Wilmington, DE 19850-5054 | |

| FAX (A/C, No): 440-446-0192 | E-MAIL ADDRESS: | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |
|---|---|---|
| CODE: | SUB CODE: | POLICY TYPE |
| AGENCY CUSTOMER ID #: METAV-1 | | |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Metavation, LLC<br>21177 Hilltop<br>Southfield, MI 48034 | | PGLN09148863 |

| | EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|---|
| ADDITIONAL NAMED INSURED(S) | 12/29/12 | 12/29/13 | CONTINUED UNTIL TERMINATED IF CHECKED |
| | THIS REPLACES PRIOR EVIDENCE DATED: | | |

**PROPERTY INFORMATION (Use REMARKS on page 2, if more space is required)**   ☐ BUILDING OR ☐ BUSINESS PERSONAL PROPERTY

LOCATION/DESCRIPTION
215 Industrial Park Drive
Hillsdale, MI 49242                    Rubber Goods Mfg

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**  PERILS INSURED  ☐ BASIC  ☐ BROAD  ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE:  $ 25773635       DED: 100000

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☐ RENTAL VALUE | X | | | If YES, LIMIT: **Included** X  Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | X | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | | X | | Attach Disclosure Notice / DEC |
|    IS THERE A TERRORISM-SPECIFIC EXCLUSION? | X | | | |
|    IS DOMESTIC TERRORISM EXCLUDED? | X | | | |
| LIMITED FUNGUS COVERAGE | | X | | If YES, LIMIT:                                DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | X | | | |
| REPLACEMENT COST | X | | | |
| AGREED VALUE | X | | | |
| COINSURANCE | X | | | If YES, **100** % |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: **50,000,000**          DED: **100,000** |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | X | | | |
|    - Demolition Costs | X | | | If YES, LIMIT: **5,000,000**          DED: **100,000** |
|    - Incr. Cost of Construction | X | | | If YES, LIMIT: **5,000,000**          DED: **100,000** |
| EARTH MOVEMENT (If Applicable) | X | | | If YES, LIMIT: **50,000,000**          DED: **100,000** |
| FLOOD (If Applicable) | X | | | If YES, LIMIT: **50,000,000**          DED: **100,000** |
| WIND / HAIL (If Subject to Different Provisions) | | | X | If YES, LIMIT:                                DED: |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | X | | | |

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| ☐ MORTGAGEE | CONTRACT OF SALE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|---|
| ☒ LENDERS LOSS PAYABLE | | |

NAME AND ADDRESS
**Office of the US Trustee**
**Attn: Jane Leamy**
**844 King Street, Suite 2207**
**Wilmington, DE 19899-0035**

AUTHORIZED REPRESENTATIVE
*Timothy P Fitzpatrick*

ACORD 28 (2009/12)        Page 1 of 2        © 2003-2009 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

**EVIDENCE OF COMMERCIAL PROPERTY INSURANCE REMARKS - Including Special Conditions (Use only if more space is required)**

**Certificate Holder will receive written notice in the event of
policy cancellation.**

# EVIDENCE OF PROPERTY INSURANCE
## PROPERTY SCHEDULE

DATE(MM/DD/YY)
**07/29/2013**

PAGE **3**

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION
**760 E Huron Avenue**
**Vassar, MI 48768**
**Precision Machining**

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION
**1799 & 1996 Gover Parkway**
**Mt Pleasant, MI 48851**
**Precision Machining**

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

ATTACH TO EVIDENCE OF PROPERTY APPLICATION

REVST-1     OP ID: SC

**ACORD**®  **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
07/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | CONTACT NAME: Spankie Carolanne | | |
|---|---|---|---|---|---|
| Todd Associates, Inc. 23825 Commerce Park, Suite A Beachwood, OH 44122 Timothy P. Fitzpatrick | Phone: 440-461-1101 Fax: 440-446-0192 | | PHONE (A/C, No, Ext): 440-995-4224 | | FAX (A/C, No): 440-446-0192 |
| | | | E-MAIL ADDRESS: scarolanne@toddassociates.com | | |
| | | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | | INSURER A : Federal Insurance Co./Chubb | | 20281 |
| INSURED Ascalon Enterprises LLC Revstone Industries LLC Metavation, LLC 21177 Hilltop Southfield, MI 48034 | | | INSURER B : | | |
| | | | INSURER C : | | |
| | | | INSURER D : | | |
| | | | INSURER E : | | |
| | | | INSURER F : | | |

**COVERAGES**    CERTIFICATE NUMBER:        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liab | | | 82251145 | 02/17/2012 | 12/29/2013 | Aggregate Limit | 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder will receive written notice in the event the above policy is cancelled.

| CERTIFICATE HOLDER | OFFIWI1 | CANCELLATION |
|---|---|---|
| Office of the United States Trustee Attn: Jane Leamy 844 King St, #2207, Box 35 Wilmington, DE 19899-0035 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE *Timothy P. Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

**ACORD**

# CERTIFICATE OF LIABILITY INSURANCE

REVST-1    OP ID: SC

DATE (MM/DD/YYYY)
07/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Spankie Carolanne | |
|---|---|---|
| Todd Associates, Inc. 23825 Commerce Park, Suite A Beachwood, OH 44122 Timothy P. Fitzpatrick | Phone: 440-461-1101  Fax: 440-446-0192 | |
| | PHONE (A/C, No, Ext): 440-995-4224 | FAX (A/C, No): 440-446-0192 |
| | E-MAIL ADDRESS: scarolanne@toddassociates.com | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Torus Specialty Ins. Co, | 44776 |
| INSURED  Ascalon Enterprises LLC Revstone Industries LLC Metavation, LLC 21177 Hilltop Southfield, MI 48034 | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ WC STATU-TORY LIMITS  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Excess D&O | | | 60173B120ASP | 04/20/2012 | 12/29/2013 | Aggregate Limit | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder will receive written notice in the event the above policy
is cancelled.

| CERTIFICATE HOLDER | OFFIWI1 | CANCELLATION |
|---|---|---|
| Office of the United States Trustee Attn: Jane Leamy 844 King St, #2207, Box 35 Wilmington, DE 19899-0035 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE  *Timothy P Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

REVST-1        OP ID: SC

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
07/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Spankie Carolanne | |
|---|---|---|
| Todd Associates, Inc. 23825 Commerce Park, Suite A Beachwood, OH 44122 Timothy P. Fitzpatrick | Phone: 440-461-1101 Fax: 440-446-0192 | |
| | PHONE (A/C, No, Ext): 440-995-4224 | FAX (A/C, No): 440-446-0192 |
| | E-MAIL ADDRESS: spankie@toddassociates.com | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| | INSURER A : Federal Insurance Co./Chubb | 20281 |
| INSURED Ascalon Enterprises LLC Revstone Industries LLC Metavation, LLC 21177 Hilltop Southfield, MI 48034 | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

**COVERAGES**  CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | ExecutiveRiskMgmt | | | 8211-0568 | 12/29/2011 | 12/29/2013 | Aggregate Limit | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder will receive written notice in the event the above policy is cancelled.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| OFFIWI1 Office of the United States Trustee Attn: Jane Leamy 844 King St, #2207, Box 35 Wilmington, DE 19899-0035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Timothy P Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)        The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

REVST-1   OP ID: SC

**DATE (MM/DD/YYYY)** 07/29/2013

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER Todd Associates, Inc. 23825 Commerce Park, Suite A Beachwood, OH 44122 Timothy P. Fitzpatrick | Phone: 440-461-1101 Fax: 440-446-0192 | CONTACT NAME: Spankie Carolanne | | |
|---|---|---|---|---|
| | | PHONE (A/C, No, Ext): 440-995-4224 | | FAX (A/C, No): 440-446-0192 |
| | | E-MAIL ADDRESS: scarolanne@toddassociates.com | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A: AmTrust International Und. | | 384 |
| INSURED Ascalon Enterprises, LLC Revstone Industries, LLC Metavation, LLC 21177 Hilltop Southfield, MI 48034 | | INSURER B: Underwriters at Lloyds | | |
| | | INSURER C: | | |
| | | INSURER D: | | |
| | | INSURER E: | | |
| | | INSURER F: | | |

## COVERAGES       CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ N/A (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Independent D&O | | | EUC100125700 | 02/15/2013 | 12/29/2013 | | 5,000,000 |
| B | Excess IDL | | | B0146ERUSA1300427 | 03/06/2013 | 12/29/2013 | | 10,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate Holder will receive written notice in the event the above policy is cancelled.

| CERTIFICATE HOLDER | OFFIWI1 | CANCELLATION |
|---|---|---|
| Office of the United States Trustee Attn: Jane Leamy 844 King St, #2207, Box 35 Wilmington, DE 19899-0035 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Timothy P. Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)       The ACORD name and logo are registered marks of ACORD

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Related to Docket No. 787** |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | (Joint Administration Requested) |
| Debtor. | ) | |
| | ) | **Related to Docket No. 6** |

**ORDER AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS,
(II) CONTINUED USE OF EXISTING BUSINESS FORMS,
(III) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM,
AND (IV) CONTINUED PERFORMANCE OF INTERCOMPANY
TRANSACTIONS, AND (V) WAIVER OF SECTION 345(b) DEPOSIT
AND INVESTMENT REQUIREMENTS**

Upon consideration of the motion (the "Motion")[2] filed by Metavation, LLC a

debtor and debtor-in-possession ("Metavation" or the "Debtor") in the above-captioned chapter

11 cases seeking entry of an Order under sections 105, 363, 364, 1107 and 1108 of title 11 of the

United States Code (the "Bankruptcy Code") authorizing (i) the maintenance of existing bank

accounts including the authority to pay routine prepetition banking fees owed to financial

institutions, (ii) the continued use of existing business forms, (iii) the continued use of the

existing cash management system for the Debtor, (iv) the continued performance of

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] Unless otherwise noted, capitalized terms used herein shall have the meanings ascribed to them in the Motion.

intercompany transactions, and (v) a limited waiver of 11 U.S.C. section 345(b) deposit and

investment guidelines; and it appearing that the relief requested is in the best interests of the

Debtor's estates, their creditors and other parties in interest; and it appearing that this Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O); and due and

adequate notice of the Motion having been given under the circumstances; and after due

deliberation, and cause appearing therefor; it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Debtor is authorized, but not directed, in the reasonable

exercise of its business judgment, (i) to designate, maintain and continue to use, with the same

account numbers, all of the bank accounts in existence on the Petition Date, including, without

limitation, those accounts identified on Exhibit A to the Motion (the "Bank Accounts"); (ii) to

use, in their present form, checks and other documents related to the Bank Accounts; and (iii) to

treat the Bank Accounts for all purposes as accounts of the Debtor as Debtor in possession; and it

is further

ORDERED that Wells Fargo and any other bank (collectively, the "Banks") at

which any Bank Account is or may be maintained are hereby authorized to continue to service

and administer such Bank Account as an account of the Debtor as debtor in possession without

interruption and in the usual and ordinary course, and to receive, process, honor and pay any and

all checks and drafts drawn on the Bank Account after the Petition Date by the holders or makers

thereof, as the case may be; and it is further

ORDERED that (i) existing arrangements, between the Debtor and Wells Fargo with respect to the Bank Accounts and with respect to the transfers to and from the Bank Accounts shall continue to govern the postpetition cash management relationship between the Debtor and Wells Fargo and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect; (ii) the Debtor and Wells Fargo, without further order of this Court, agree to and implement changes to the cash management system and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts with notice to the United States Trustee and counsel to any official committee appointed in this case; and (iii) in the course of providing cash management services to the Debtor, Wells Fargo is authorized, without further Order of this Court, to continue to deduct from the appropriate accounts of the Debtor, the Bank's customary fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtor, whether arising prepetition or postpeition, and further, to charge back to the appropriate accounts of the Debtor any amounts resulting from returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers; and is further

ORDERED that no later than the close of business on the fifth (5th) business day following entry of this Order, the Debtor shall, to the extent not provided, provide Wells Fargo with copies of any orders granting any "first day motions" via email, and a letter setting forth a

list (the "Prepetition Check List") of applicable checks that have not been honored prior to the

Petition Date (the "Prepetition Checks") with details setting forth (a) the account numbers,

check numbers and dollar amounts for each such Prepetition Check, designating whether or not

such Prepetition Checks should be honored pursuant to any orders entered by the Court and (b)

all account numbers for which the Debtor does not write checks on and state "no outstanding

items - no stop payments needed," and that a Bank's reliance on the Prepetition Check List in

connection with its honoring or dishonoring of a Prepetition Check, as the case may be, shall not

constitute a violation of this Order; and it is further

ORDERED that each Bank that maintains a disbursement account of the Debtor

shall implement reasonable handling procedures designed to effectuate the terms of this Order,

and no Bank that implements such handling procedures and then honors a prepetition check,

automated clearing house debit, wire transfer or other item drawn on any account that is the

subject of this Order either (i) at the direction of the Debtor to honor such prepetition check or

item, (ii) in good faith belief that the Court has authorized such prepetition check or item to be

honored, or (iii) as a result of an innocent mistake made despite implementation of such handling

procedures, shall be deemed to be, nor shall be liable to, the Debtor or its estate or otherwise in

violation of this Order; and it is further

ORDERED that the Debtor may continue to fund its business and operations

through the Bank Accounts; and it is further

ORDERED that the Debtor shall at all times maintain sufficient balances in accounts at each of the Banks to secure its obligations to the Banks for cash management and related services to the Debtor; and it is further

ORDERED that the Debtor shall maintain detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtor's Cash Management System.  In connection with the ongoing utilization of their Cash Management System, the Debtor shall continue to maintain detailed records with respect to all transfers of cash so that all transactions may be readily ascertained, traced and recorded properly on the applicable accounts; and it is further

ORDERED that nothing contained herein shall prevent the Debtor from opening any new bank accounts or closing any existing bank accounts as they may deem necessary and appropriate, with notice to the United States Trustee, the Debtor's principal lenders, and to any official committee appointed in these cases; *provided, however*, that any new account shall be with a bank that is insured by the Federal Deposit Insurance Corporation and organized under the laws of the United States or any state therein; and it is further

ORDERED that the Debtor is authorized to continue to use its checks and existing business and correspondence forms until such time as they are reasonably able to effectuate the necessary changes required to add the words "debtor in possession" to such forms; and it is further

ORDERED that the Debtor is authorized to continue utilizing its Cash Management System to manage the Debtor's cash, in a manner consistent with the Debtor's prepetition practice; and it is further

ORDERED that, subject to the following paragraph of this Order, the Debtor is (i) authorized, on an interim basis, to deposit funds, in excess of amounts insured by the Federal Depository Insurance Corporation, as requested in the Motion, all in accordance with the Debtor's customary prepetition Cash Management System, in addition to the investments and deposits permitted by Bankruptcy Code § 345 and (ii) granted a 60-day extension of time to comply with the investment and deposit requirements of section 345 of the Bankruptcy Code, which extension is without prejudice to the Debtor's ability to seek a final waiver of those requirements; and it is further

ORDERED, for banks at which the Debtor holds accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days from the date of entry of this Order the Debtor shall (a) contact each bank, (b) provide the bank with each of the Debtor's employer identification numbers, and (c) identify each of its accounts held at such banks as being held by a Debtor in possession; and it is further

ORDERED that nothing contained herein shall prevent any of the Banks from terminating any cash management services not less than thirty (30) days prior written notice to the Debtor and upon terms reasonably satisfactory to such Bank; and it is further

ORDERED that the Debtor shall cause a copy of this Order to be served on each Bank at which a Bank Account is maintained within five (5) business days of the date hereof; and it is further

ORDERED that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, the Debtor is authorized to continue to consummate Intercompany Transactions in the ordinary course of business; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion; and it is further

ORDERED that the notice requirements under Bankruptcy Rule 6004(a) and the stay under Bankruptcy Rule 6004(h) are hereby waived, to the extent that they apply, and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: July 24 , 2013

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF METAVATION, LLC FOR ORDER UNDER 11 U.S.C. §§ 105, 363, 503(b), 1107 AND 1108 AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) CONTINUED USE OF EXISTING BUSINESS FORMS, (III) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (IV) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS, AND (V) WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

Metavation, LLC, a debtor and debtor-in-possession herein ("Metavation" or the "Debtor"), hereby moves the Court for entry of an order under 11 U.S.C. §§ 105, 363, 503(b), 1107 and 1108, authorizing (i) the maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions, (ii) the continued use of existing business forms, (iii) the continued use of the existing cash management system for the Debtor, (iv) the continued performance of intercompany transactions, and (v) a limited waiver of 11 U.S.C. section 345(b) deposit and investment guidelines (the "Motion"). In support

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

DOCS_DE:187516.9 73864/002

of its Motion, the Debtor respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction to consider and determine this Motion under 28
U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a),
345(b), 363, 503(b), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy
Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules").

## Background

3. On December 3, 2012, Debtors Revstone Industries, LLC and Spara, LLC
commenced their cases by filing voluntary petitions for relief under chapter 11 of the
Bankruptcy Code. On January 7, 2013, Debtors Greenwood Forgings, LLC and US Tool and
Engineering, LLC commenced their cases by filing voluntary petitions for relief under
chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their
property and have continued to operate and manage their business as debtors in possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Pursuant to the Order Authorizing Joint Administration of Related Chapter
11 Cases for Procedural Purposes Only (Docket No. 173) (the "Existing Joint Administration
Order"), the chapter 11 cases of Revstone Industries, LLC, Spara, LLC, Greenwood

Forgings, LLC and US Tool and Engineering, LLC (the "Original Debtors") are jointly administered and are consolidated for procedural purposes.

5.   On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the case of Revstone Industries, LLC. No committee has been appointed in the cases of Spara, LLC Greenwood Forgings, LLC and US Tool and Engineering, LLC. No trustee or examiner has been appointed in any of the Original Debtors' chapter 11 cases.

6.   On the date hereof (the "Metavation Petition Date"), Metavation filed a voluntary petition in the Court for relief under chapter 11 of the Bankruptcy Code. Metavation continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Metavation's chapter 11 case. As of the date hereof, no creditors' committee has been appointed in the Metavation chapter 11 case.

7.   The factual background relating to the commencement of the chapter 11 case of Revstone Industries, LLC is set forth in detail in the *Declaration of Jay N. Brown in Support of First Day Pleadings* (the "Brown Declaration") filed on December 3, 2012, and incorporated herein by reference. The factual background relating to the commencement of the chapter 11 case of Metavation, LLC is set forth in detail in the *Declaration of John C. DiDonato in Support of Metavation, LLC Petition and First Day Motions* (the "DiDonato Declaration") filed concurrently herewith and incorporated herein by reference.

8.   Metavation, LLC (the "Company") is a Michigan-based manufacturer of precision machined components and assemblies, including dampers, engine components, knuckles, and driveline products for the automotive industry. Metavation specializes in designing and manufacturing dampers that are included on original equipment manufacturers' ("OEMs") engine platforms. The Company also has rapid development capabilities to produce "solution" dampers to correct driveline and powertrain noise vibration and harshness ("NVH") issues. The Company serves many of the largest automotive customers, suppliers, and platforms. The Company's major OEM customers include General Motors and Chrysler. Metavation's Tier I supplier customers include American Axle, Dana Automotive, and J.G. Kern. These long-standing relationships have led the Company to a dominant market position in the U.S. crankshaft damper market. Metavation operates from four, modernized facilities located in central Michigan. The Company begins its manufacturing process by developing the rubber component at the Hillsdale, MI facility, and then sends the rubber component to Mt. Pleasant, MI or Vassar, MI facility for machining and/or assembly.

## Relief Requested

9.   By this Motion, the Debtor seeks authorization (1) to maintain its existing bank accounts and to pay any prepetition routine banking fees imposed by the financial institutions where the Debtor's bank accounts are maintained, (2) to continue to use its existing check stock and business forms until exhausted, (3) to continue to use its existing cash management system, (4) to continue performance of intercompany transactions, and (5)

for a limited waiver of the deposit and investment guidelines imposed under section 345(b) of the Bankruptcy Code.

**The Debtor's Cash Management System**

10. The Debtor's cash management system (the "Cash Management System") is a network of a lockbox and three bank accounts that facilitates the timely and efficient collection, management, and disbursement of funds used in the Debtor's business. Because of the nature of the Debtor's operations and the disruption that would result if the Debtor was forced to close its existing accounts, it is critical that the Cash Management System remain in place.

11. The Debtor maintains a lockbox and three bank accounts at Wells Fargo Bank, N.A. ("Wells Fargo") that comprises the Cash Management System.[2] A listing of the Debtor's bank accounts (together, the "Bank Accounts") is attached hereto as **Exhibit A**. A diagram summarizing the role of each of the Bank Accounts in the Cash Management System is attached hereto as **Exhibit B**.

12. Collections. Collections from revenues consist of check and wire payments made by the Debtor's customers. Customer payments made by check are sent to the lockbox (the "Lockbox") established for the Debtor and maintained by Wells. Checks sent into the Lockbox are deposited by Wells Fargo on a daily basis into the Debtor's depository account ("Concentration Account"). Customer payments by wire transfer are

---

[2] The Debtor also maintains a bank account at County National Bank, account number xxxxxx1734, that contains employee vending machine funds (the "Vending Machine Account"). The Vending Machine Account is not part of the Cash Management System.

made directly to the Concentration Account. Available funds are swept from the Concentration Account by Wells Fargo each morning and applied as a payment against the Debtor's outstanding amounts then due under the prepetition loan facility to Wells Fargo.

13. Operating Account. The operating account ("Operating Account") consists of funds advanced by Wells Fargo as additional loans under the prepetition loan facility. These funds are then used to process wire payments to trade vendors and for other expenses, including wire transfers to the payroll account maintained by the Debtor's payroll processor, Ceridian Corporation ("Ceridian"), and to make advances to the Disbursement Account to clear payments made by check

14. Disbursements. The Debtor issues payments by check from its disbursement account (the "Disbursement Account"). Funds are automatically transferred from the Operating Account as checks previously issued are presented to Wells Fargo for payment. No balance is maintained in the Disbursement Account with funds advanced from the Disbursement Account only as necessary to clear checks.

15. Approximately $1.3 million to $2.2 million flows through the Cash Management System on a weekly basis. Fluctuations are primarily due to scheduled payroll payments and payments to the Debtor's suppliers and vendors. As of the Petition Date, the Debtor has approximately $157,390.83 in cash or cash equivalents in its Operating Account and $40,269.58 in cash or cash equivalents in its Concentration Account.

### The Court Should Authorize the
### Debtor to Maintain Their Existing Bank Accounts

16. The United States Trustee for the District of Delaware has established certain operating guidelines for a debtor in possession. One such provision requires a chapter 11 debtor in possession to open new bank accounts and close all existing accounts. The United States Trustee Guidelines also require that the new bank accounts only be opened with certain financial institutions designated as authorized depositories by the United States Trustee. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

17. The Debtor seeks a waiver of the United States Trustee's requirement that the Bank Accounts be closed and new postpetition bank accounts be opened at depositories authorized by the United States Trustee. If strictly enforced in this case, the United States Trustee's requirement would cause a severe disruption in the Debtor's activities and would impair the Debtor's ability to operate under chapter 11.

18. Maintenance of the Bank Accounts will greatly facilitate the Debtor's operations in chapter 11. As noted above, all revenues and income realized by the Debtor ultimately flows into the Operating Account and are disbursed through the interlinked Disbursement Account. If the Bank Accounts were closed, the Debtor would have to open new accounts and then attempt to arrange alternative electronic and manual payment procedures for payments into and out of the Debtor's accounts, which would completely

disrupt the flow of postpetition receipts and disbursements. In addition, closing the Bank Accounts would require the Debtor to cancel and reinstitute wire transfer instructions which would be difficult to modify under exigent circumstances. These disruptions would severely impact and could irreparably harm the Debtor's ability to operate their business at this critical juncture.

19. To avoid disruptions and delays in the operation of the Debtor's business, the Debtor should be permitted to maintain its existing Bank Accounts and, if necessary, to open new accounts as debtor in possession accounts or to close any unneeded existing accounts.

20. To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtor will promptly notify Wells Fargo not to honor checks drawn on the Debtor's accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtor requests that it be authorized to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period.

21. If the relief requested herein is granted, the Debtor will not pay, and Wells Fargo will be required not to pay, any debts incurred before the Petition Date, other than as specifically authorized through this Motion or otherwise ordered by the Court.

**The Court Should Authorize the Debtor to**
**Continue Its Existing Cash Management System**

22. The Debtor hereby seeks authority to continue to use its Cash

Management System, as such system may be modified pursuant to the requirements of any

Court-approved cash collateral order, and related order of this Court.

23. For the reasons set forth above, the Debtor's Cash Management System

constitutes an essential business practice and was created and implemented by the

management of the Debtor in the exercise of its business judgment. The widespread use of

this particular Cash Management System, moreover, is attributable to the numerous benefits

it provides, including the ability to (a) process and timely pay expenses; (b) allow a

mechanism for deposits from revenues; (c) ensure cash availability; (d) control and monitor

corporate funds; and (e) reduce administrative expenses by facilitating the movement of

funds and the development of timely and accurate balance and presentment information. In

addition, preserving a "business as usual" atmosphere and avoiding the unnecessary

distractions that would inevitably be associated with a substantial disruption of the Cash

Management System will facilitate and enhance the Debtor's efforts to continue to operate

postpetition. Moreover, the Debtor submits that the relief requested is consistent with the

relief provided to a debtor in a number of other cases pending in this District.

**The Court Should Grant the Debtor Authority to Use**
**Existing Business Forms and Checks to the Limited Extent Requested Below**

24. To minimize expense to their estates, the Debtor also requests authority (i)

to continue to use all correspondence and business forms (including, but not limited to

letterhead, purchase orders, invoices, etc.) until such time as the Debtor can effectuate any

necessary changes to their computer-generated forms in order to add the "debtor in possession" label, and (ii) to continue using their existing check stock without reference to their "debtor in possession" status until new check stock can be generated, provided that the Debtor shall add the "debtor in possession" designation to any new checks produced after the depletion of the existing stock. The Debtor's business and correspondence forms are produced internally. With respect to these forms, the Debtor requests that it be allowed to continue to use its existing forms, provided that they add the "debtor in possession" labels to forms that are ordered once the existing stock is depleted.

### The Debtor Should Be Authorized to Continue Its
### Intercompany Arrangements

25. Prior to the Petition Date, the Debtor and the Original Debtors engaged in intercompany financial transactions in the ordinary course of business (collectively, the "Intercompany Transactions"), and as part of the Debtor's and Original Debtors' consolidated Cash Management System. The Debtor requests authority to continue performing Intercompany Transactions in the ordinary course of business without need for further Court order.

26. At any given time, there may be balances due and owing between the Debtor and Original Debtors. These balances represent extensions of intercompany credit made in the ordinary course of business and are an essential component of the Cash Management System. The Debtor maintains records of these transfers of cash and can ascertain, trace and account for these Intercompany Transactions. The Debtor, moreover,

will continue to maintain such records, including records of all current intercompany

accounts receivable and payable.

**The Court Should Grant a Limited § 345(b) Waiver
on an Interim Basis Subject to Final Approval**

27. The Debtor seeks a limited waiver of section 345(b) of the Bankruptcy

Code. The waiver would permit the Debtor to maintain its Bank Accounts without posting a

bond or other security, as would otherwise be required under section 345(b) whenever the

funds on deposit exceed the amount permitted under section 345(b). The Debtor believes

that its Bank Accounts are (a) covered by FDIC insurance and contain amounts which are

within the limits of such insurance, and/or (b) with financial institutions which have standing

collateralization agreements with the office of the United States Trustee. To the extent

needed for a particular Bank Account, the Debtor will work with the various financial

institutions to put acceptable collateralization agreements in place or otherwise satisfy the

requirements of the Bankruptcy Code. As noted above, the Debtor's Bank Accounts may, at

certain times, contain cash in excess of the FDIC insurance limits.

**Authority for the Requested Relief**

A.    The Continued Use of the Debtor's Routine Cash Management
      System, Bank Accounts and Business Forms is Essential to the
      Debtor's Operations, and Approval to Maintain the Status Quo
      is Routinely Granted Under Bankruptcy Code Sections 363 and 105

28. Bankruptcy courts routinely grant chapter 11 debtors authority to continue

utilizing existing cash management systems, and treat requests for such authority as a

relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio

1987). This is particularly true where, as here, the chapter 11 case involves affiliated entities

with complex financial affairs. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and forty-three (43) of its subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not Debtor." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

29. Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticabilities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

30. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2nd Cir. 1997). Included within the purview of section 363(c) is a Debtor's ability to continue the "routine transactions" necessitated by a Debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to its Cash Management System as described above.

31. Additionally the Court may exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).  Continuing the Debtor's Cash Management System without interruption is vital to the success of these chapter 11 cases.

32. In other cases in this District, including in the Original Debtors' bankruptcy proceedings, this Court has granted relief similar to that requested in this Motion. *See, e.g., In re Revstone Industries, LLC, et al.*, Case No. 12-13262 (BLS) (Bankr. D. Del. January 10, 2013), *In re Latham International, Inc., et al.*, Case No. 09-14490 (SS) (Bankr.

D. Del. December 23, 2009), *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019

(KJC) (Bankr. D. Del November 20, 2009), *In re Filene's Basement, Inc., et al.*, Case No. 09-

11525 (MFW) (Bankr. D. Del. May 5, 2009).

33. It is well within the Court's equitable power under section 105(a) to

approve the continued use of the Cash Management System and Bank Accounts, and to

authorize the Debtor's continued use of their existing business forms, including, but not

limited to, purchase orders, letterhead, envelopes, promotional materials, checks, and

business forms, without reference to the Debtor's debtor in possession status, substantially in

the forms existing immediately before the Petition Date, at least until such existing business

forms are exhausted and replacement forms with the "debtor in possession" designation are

obtained.

**B.**     An Interim Waiver of Section 345(b) to Allow the Debtor to
         Continue to Use Its Bank Accounts Without the Need for Posting
         a Bond or Providing Other Security is Appropriate

34. The Debtor seeks an interim waiver of section 345(b) of the Bankruptcy

Code subject to final approval.  The waiver would permit the Debtor to maintain their Bank

Accounts without posting a bond or other security, as would otherwise be required under

section 345(b) whenever the funds on deposit exceed the amount permitted under section

345(b), while the Debtor takes steps to comply with the requirements of the Bankruptcy

Code.  The Debtor believes that its Bank Accounts are (a) covered by FDIC insurance and

contain amounts which are within the limits of such insurance and/or (b) with financial

institutions which have standing collateralization agreements with the office of the United

States Trustee (the "OUST"). With regard to any Bank Account that does not conform with the requirement of section 345(b), the Debtor will work with the Banks to either (a) put acceptable collateralization agreements in place subject to the reasonable consent of the OUST or, (b) if that is not practicable, will move the funds in these accounts to a new or existing bank account that satisfies the requirements of the Bankruptcy Code within sixty (60) days of the Petition Date subject to the Debtor's right to seek additional time. As noted above, the Bank Accounts may, at certain times, contain cash in excess of the FDIC insurance limits.

35. For the foregoing reasons, it is critical that the Debtor continues to utilize its existing Cash Management System and continue to use its existing business forms as set forth herein, without disruption. Accordingly, it is appropriate and entirely consistent with applicable provisions of the Bankruptcy Code and case law for the Court to approve the Debtor's centralized Cash Management System in its current form and grant a waiver of the requirements of section 345(b) of the Bankruptcy Code on an interim basis pending a final hearing.

**C.    The Debtor Should Be Permitted to Continue**
**Intercompany Transactions in the Ordinary Course of Business**

36. Throughout the reorganization process, it will be critically important that the Debtor be allowed to maintain its intercompany practices with the Original Debtors and its affiliates. As noted above, continuation of the Intercompany Transactions is important to the Debtor's efforts to operate its businesses in the ordinary course.

37. Thus, the Debtor respectfully requests authority to continue performing Intercompany Transactions in the ordinary course of business without need for further Court order. Courts have routinely granted such authority in other complex, multi-debtor chapter 11 cases for similar reasons. *See, e.g., In re Latham International, Inc., et al.*, Case No. 09-14490 (SS) (Bankr. D. Del. December 23, 2009), *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019 (KJC) (Bankr. D. Del November 20, 2009), *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. July 17, 2009); *In re Source Interlink Companies, Inc.*, Case No. 09-11424 (KG) (Bankr. D. Del. April 30, 2009); *In re Nobex Corporation*, Case No. 05-20050 (MFW) (Bankr. D. Del., Dec. 6, 2005); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Nov. 8, 2005); *In re W. R. Grace & Co.*, Case No. 01-01139 (Bankr. D. Del. Apr. 2, 2001); *In re Montgomery Ward Holding Corp.*, Case No. 97-01409 (PJW) (Bankr. D. Del. July 8, 1997); *In re Mid-Valley, Inc.*, Case No. 03-35592 (JKF) (Bankr. W.D. Pa. June 8, 2004) (interim order authorizing Debtor to continue to engage in intercompany agreements in the ordinary course of business).

### Bankruptcy Rules 6003 and 6004

38. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described more fully above, and as supported by the DiDonato Declaration, and to the extent that the relief requested herein implicates Rule 6003(b), the Debtor submits that

the requirements of Rule 6003 have been met and that the relief requested in this Motion is

necessary to avoid immediate and irreparable harm.

39. Finally, to implement the foregoing successfully, the Debtor seeks a

waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay

of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to

the extent these rules are applicable.

## Notice

40. Notice of this Motion has been given to the following or, in lieu thereof, to

their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's

prepetition and postpetition secured lenders; (iii) the Pension Benefit Guaranty Corporation;

(iv) the Debtor's major OEM customers: General Motors and Chrysler; (v) Dayco Products,

LLC and  Dayco Products S.A. de C.V., the stalking horse purchaser for the Debtor's assets;

and (vi) the Official Committee of Unsecured Creditors in the case of Revstone Industries,

LLC.  As the Motion is seeking "first day" relief, within two business days of the hearing on

the Motion, the Debtor will serve copies of the Motion and any order entered respecting the

Motion as required by Del. Bankr. LR 9013-1(m).  The Debtor submits that, in light of the

nature of the relief requested, no other or further notice need be given.

## No Prior Request

41. No prior motion for the relief requested herein has been made to this or

any other Court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, and grant such other further relief as the Court deems appropriate.

Dated: July 22 2013

PACHULSKI STANG ZIEHL & JONES LLP

_Laura Davis Jones_

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Colin R. Robinson (Bar No. 5524)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone:  302/652-4100
Facsimile:  302/652-4400
Email: ljones@pszjlaw.com
       dbertenthal@pszjlaw.com
       tcairns@pszjlaw.com
       crobinson@pszjlaw.com

[Proposed] Counsel for Debtor and Debtor-in-Possession

# EXHIBIT A

**EXHIBIT A**

**Metavation, LLC**
**Wells Fargo Bank Accounts**

| Account Number | Account Type |
|---|---|
| xxx599 | Lockbox |
| xxxxxx2467 | Concentration Account |
| xxxxxx0577 | Operating Account |
| xxxxxx8713 | Disbursement Account |

# EXHIBIT B



In re_Metavation, LLC

Debtor

Case No. _13-11831 (BLS)___

Reporting Period: July 2013

### SCHEDULE OF RETAINERS PAID TO PROFESSIONALS

(This schedule is to include each Professional paid a retainer [1])

| Payee | Check Date | Number | Name of Payor | Amount | Amount Applied to Date | Balance |
|---|---|---|---|---|---|---|
| Huron Consulting Services, LLC | 7/12/2013 | wire | Metavation, LLC | $250,000.00 | $0.00 | $250,000.00 |
| Pachulski Stang Ziehl & Jones LLP | 7/12/2013 | wire | Metavation, LLC | $250,000.00 | $0.00 | $250,000.00 |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

[1] Identify all Evergreen Retainers

Form IR-2
(4/07)