# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re METAVATION, LLC**<br><br>**Debtor,** | )<br>)  **Chapter 11**<br>)  **Case No: 13- 11831 (BLS)**<br>) |

## RESERVATION OF RIGHTS AND PROVISION OF INFORMATION RELATED TO SALE

Douglas Holmes and John Hollister (collectively H&H), on their behalf and on behalf of their entity DHJH Holdings, LLC, a Delaware Limited Liability Company, ("DHJH") file this information memorandum and announcement of their reservation of rights and intent to file claims related to the sale of the assets of Debtor Metavation, LLC ("Metavation"). The sale is a Competing Transaction and as such fulfills the only condition to DHJH being owed a $250,000 "break-up fee" plus documented legal and other expenses due to DHJH under an Agreement dated January 7, 2013, as amended, attached hereto as Exhibit A with Amendment No. 1 dated February 8, 2013 attached hereto as Exhibit B. Under Amendment No. 1 the total due to DHJH cannot exceed $600,000.

1. Metavation is a wholly-owned subsidiary of Revstone Transportation, LLC ("RevTran") which, in turn is a wholly-owned subsidiary of Revstone Industries, LLC ("RevInds").

2. Starting in November 2012, management and ownership of Metavation, RevTran and RevInds approached H&H to consider the acquisition of Metavation.

3. On December 3, 2012, RevInds filed for bankruptcy protection in this Court.

{D0271853.1 }

4. On January 7, 2013, RevTran and Metavation executed a Membership Interest Purchase Agreement ("MIPA") for DHJH to buy and RevTran to sell all Membership Interests in Metavation.

5. On July 22, 2013, Metavation filed Chapter 11 with this Court and on the same date filed the Motions (Docket 17 and Docket 18) for the Competing Transaction as defined in the MIPA for which this filing is related.

6. This MIPA was then extended by a draft written document whose terms where agreed to through February 28, 2013 and then, formally amended, by Amendment No. 1 to the MIPA dated February 8, 2013. The extension provided a new termination date of March 15, 2013. However, under the original MIPA or the Amendment, Section 8.4, provided that it, Section 8.3 and 8.2 did not terminate on the termination date.

7. The initial MIPA provided that GM was to make certain agreements, and GM is doing so in the upcoming sale. The MIPA did not required GM to do so in connection with the sale to DHJH just that it be willing and able to do so. Clearly, GM is willing and able to do so, and is doing so now. Thus, the provisions of Section 8.2 were met.[1]

8. Regardless of whether the provisions of Section 8.2 were met became irrelevant under Amendment No. 1. Amendment No. 1 provided a new Section 8.4(d) to be in Section 8.4. Because it is in Section 8.4, it never terminates as Section 8.4 (like Sections 8.2 and 8.3) never terminate under the terms of Section 8.4.

---

[1] A requirement of closing the MIPA was that General Motors Corporation would agree to provide funds for the pension plans of Metavation and to accept higher prices on certain Metavation parts. Some time in early April, H&H were informed by the Companies that General Motors would agree to the two requirements requested by RevTran but just not with DHJH. Thus, the purpose of the MIPA was fulfilled as the stalking horse role of the transaction did in fact its job. The necessity to have them fulfilled in the DHJH transaction was not a requirement of the MIPA. Regardless of this issue, because of the value to Metavation and to RevTran of the MIPA, Section 8.4(d) was added specifically in the MIPA to provide for the break up fee regardless of anything else to the contrary in the MIPA.

> **"(d) Notwithstanding anything to the contrary contained in the Purchase Agreement, if the Company and/or Seller consummate a Competing Transaction, Seller shall pay Purchase [sic](i) a break-up fee equal to $250,000, and (ii) all of Purchaser's Expenses."**
>
> Noteworthy was the elimination of all other conditions to the obligation to pay this fee and reimburse expenses other than the consummation of a Competing Transaction."

9. In addition, by its placement in Section 8.4, the passage of time to be post the termination date is irrelevant as Section 8.4 specifically goes on beyond the termination date.

10. Under Amendment No. 1, the legal and other expenses cannot exceed $350,000 by Amendment No. 1 specific terms. Thus, the total of the break up fee of $250,000 and the maximum amount of legal and other expenses of $350,000 (or a total of $600,000) is less than the stalking horse value of up to $650,000 in the Docket 17 and Docket 18 asset sale transaction.

11. The transaction coming up for approval is exactly the type of "Competing Transaction" that was both planned and contemplated by Amendment No. 1. In fact, the DHJH transaction was a stalking horse for the subsequent transaction and a substantial contribution to the value of Metavation and RevTran that is being achieved by the Docket 17 and Docket 18 asset sale transaction.

12. H&H and DHJH were assured by all relevant parties prior to and post the Metavation bankruptcy that the DHJH break-up fee and expenses would be paid.

13. Senior executives continued to provide this assurance to H&H and DHJH continually up until last week. Just last Thursday August 22, 2013 H&H and DHJH were told for the first time that the RevTran and Metavation do not intend to honor the break-up fee and

expenses of the MIPA. Therefore, H&H and RHJH file this reservation of rights related to the sale.

14. The break up fee and expenses under Section 8.2 of the MIPA is obligated to be paid despite any termination of the Membership Interest Purchase Agreement. This continuation of obligation is provided for in Section 8.4 of the Agreement. The Amendment then added Section 8.4(d) that eliminated the conditions to the break up fee and expense reimbursement obligation other than a consummation of a Competing Bid (including post termination of the MIPA).

15. H & H and DHJH will need to determine the proper form to bring these claims for the break up fee and expenses before the Court, be it by motion for Administrative Expense, as an equitable stalking horse as DHJH was in fact used and acknowledged to be a stalking horse adding substantial value, or under other equitable or legal principals. That process has just started. H & H and DHJH wanted the Court and parties to be aware of this important obligation, which is the purpose of this filing as well as to announce the reservation of rights by DHJH to do just that to make additional filings to follow, and as soon as prepared those shall be filed.

Dated: Wilmington, Delaware

August 26, 2013　　　　　　　　　Respectfully submitted,

CAMPBELL & LEVINE LLC

/s/ *Mark T. Hurford*
Mark T. Hurford, Esquire (DE 3299)
222 Delaware Avenue, Suite 1620
Wilmington, DE 19801
(302) 426-1900
(302) 426-9947 (fax)
mhurford@camlev.com

{D0271853.1 }

– and –

Of counsel to this pleading:

Joseph D. Carney, Esquire
Joseph D. Carney & Associates, LLC
1991 Crocker Road, Suite 600
Westlake, OH 44145
(440) 249-0860
jdc@jdcarney.com

*Counsel to H & H and DHJH Holdings LLC*

{D0271853.1 }