## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF METAVATION, LLC'S ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), 363(F) AND 363(M); (III) AUTHORIZING THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; AND (IV) GRANTING RELATED RELIEF**

Upon the *Metavation, LLC's Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); (C) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365; and (D) Granting Related Relief* (Docket No. 18) (the "Sale Motion")[1]  filed by Metavation, LLC (the "Debtor")  for the entry of an order (the "Sale Order"), inter alia, (i) approving the sale of substantially all of the Debtor's operating assets (the "US Acquired Assets"), free and clear of all Liens, Claims, interests and encumbrances (other than Assumed Liabilities and Permitted Liens and/or except as otherwise

---

[1]  Capitalized terms used, but not defined, herein shall have the meaning ascribed to them in the Sale Motion or in the Agreement, as applicable.

provided in the Agreement (as defined below)); (ii) approving the Debtor's entry into the Agreement with the Purchaser (as defined below) and authorizing the Debtor to consummate the transactions contemplated thereby; and (iii) approving of the assumption and assignment of certain executory contracts and unexpired leases of the Debtor (such executory contracts and unexpired leases that are proposed to be assumed and assigned, the "Assigned Contracts"); after holding a hearing on August 7, 2013 (the "Bidding Procedures Hearing"), the Bankruptcy Court having entered an order dated August 9, 2013 (the "Bidding Procedures Order") (Docket No. 113), authorizing the Debtor to solicit and consider offers for the US Acquired Assets and conduct an auction ("Auction") in accordance with the terms and conditions of the Bidding Procedures and approving, inter alia, (i) the Bidding Procedures; (ii) the form and manner of notice of the Auction and Sale Hearing (defined below); and (iii) the manner in which the notice of the assignment and proposed cure amounts of the Assigned Contracts (the "Assumption and Assignment Procedures") would be provided and the procedures related to the assignment of the Assigned Contracts to the Purchaser; and the Bankruptcy Court having conducted a hearing on the Sale Motion on August 30, 2013 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement; and the Bankruptcy Court having reviewed and considered the Sale Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing  and this chapter 11 case and proceeding, and after due deliberation thereon, and good cause appearing therefor; it is hereby

**FOUND AND DETERMINED THAT:**

       A.    **Findings and Conclusions**.  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent

any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

        B.     **Jurisdiction and Venue**. The Bankruptcy Court has jurisdiction over the Sale Motion and the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

        C.     **Statutory Predicates**. The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 362, 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

        D.     **Notice**. Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Sale, the transactions contemplated under the Agreement (the "Transactions"), the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, or of the entry of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Rule 6004-1, and in compliance with the Bidding Procedures Order. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the Transactions, the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

        E.     A Notice of Assignment and Cure has been provided to each of the non-Debtor counterparties to the Assigned Contracts, all in accordance with and as provided by the Bidding Procedures Order and subject to the Purchaser's right to modify or further designate the

3

schedule of Assigned Contracts to be assigned to the Purchaser in accordance with the Agreement.

F. **Opportunity to Object**. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

G. **Title to the US Acquired Assets**. The US Acquired Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

H. **Business Justification**. The Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the Agreement, assume and assign the Assigned Contracts, and sell the US Acquired Assets under section 363 of the Bankruptcy Code. Such action is an appropriate exercise of the Debtor's business judgment and in the best interests of the Debtor, its estate, their creditors and all other parties in interest. Such business reasons include, but are not limited to, the fact that (i) there is substantial risk of deterioration of the value of the US Acquired Assets if the Sale is not consummated quickly; (ii) the Agreement constitutes the highest or otherwise best offer for the US Acquired Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtor on a going concern basis and to avoid decline and devaluation of the Debtor's businesses; and (iv) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, potential creditor recoveries may be substantially diminished. Entry of an order approving the Agreement and all provisions thereof -as these relate to the Debtor and the US Acquired Assets- is a necessary condition precedent to the Purchaser consummating the Transactions.

4

I.        **Opportunity to Bid**.  The Debtor and its professionals marketed the

Acquired Assets and conducted the marketing and sale process as set forth in the Sale Motion

and in accordance with the Bidding Procedures Order. The Auction process set forth in the

Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for

any entity to make a higher or otherwise better offer to purchase the Acquired Assets. Based

upon the record of these proceedings, all creditors and other parties in interest and all prospective

purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

J.        Dayco Products, LLC (the "Purchaser") submitted the highest or otherwise

best offer for the US Acquired Assets, and the Purchaser is the Successful Bidder for the US

Acquired Assets in accordance with the Bid Procedures Order.

K.        **Highest or Otherwise Best Offer**.  The total consideration provided by

the Purchaser for the Acquired Assets is the highest or otherwise best offer received by the

Debtor.

L.        **Good Faith Purchaser**.  The Asset Purchase Agreement with the

Purchaser (the "Agreement") and the Transactions contemplated thereby have been negotiated

by the Debtor and the Purchaser in good faith, at arm's length and without collusion or fraud.

The terms and conditions of the Agreement and the Transactions, including the total

consideration to be realized by the Debtor pursuant to the Agreement, are fair and reasonable,

and the Transactions are in the best interest of the Debtor, its creditors, and its estate.  The

Purchaser is a "good faith purchaser" of the US Acquired Assets, entitled to the full benefits and

protections of section 363(m) of the Bankruptcy Code with respect to the sale and assignment of

the US Acquired Assets and the Transactions.

DOCS_DE:188541.4 73864/002

M.     The Agreement was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n). The Debtor and the Purchaser have not engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.   The Purchaser is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

N.     The Purchaser will be acting in good faith in consummating the Transactions at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

O.     **Corporate Power and Authority**.  Subject to entry of this Order, the Debtor and the Purchaser have full corporate power and authority to execute and deliver the Agreement and the Transactions and to perform all of their respective obligations thereunder, and the sale and assignment of the US Acquired Assets and the Assigned Contracts has been duly and validly authorized by all corporate authority necessary to consummate the Transactions. No consents or approvals, other than as expressly provided for in the Agreement and the entry of this Order, are required by the Debtor to consummate the Transactions.

P.     **Assumption and Assignment in Best Interests**.  The purchase, assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtor, its estate, its creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. Accordingly, such purchase, assumption and assignment is reasonable and enhances the value of the Debtor's estate.

6

Q.    **Cure/Adequate Assurance**.  Subject to the Purchaser's obligations, if any, with respect to cure claims under the Agreement, the Debtor has provided adequate assurance of cure of any default existing prior to the Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of Bankruptcy Code section 365(b)(1)(B).  The Purchaser has provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(C).  The non-Debtor parties to the Assigned Contracts were given notice and the opportunity to object to the Notice of Assumption and Cure and are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

R.    **Waiver of Causes of Action against Certain Suppliers and Customers**. To the extent any Avoidance Actions against the Released Parties (as defined in para. 37 below) are Excluded Assets under the Agreement, the Debtor's complete waiver and release of the Released Claims (as defined in para. 37 below) is integral to the Agreement and the Transactions and is necessary to avoid substantial disruption to the Business.  The Purchaser would not have entered into the Agreement absent the Debtor's complete waiver and release of such Avoidance Actions.

S.    **Free and Clear**.  The sale and assignment of the US Acquired Assets to the Purchaser will be, as of the Closing, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Purchaser with all right, title and interest of the Debtor to the US Acquired Assets free and clear of all Liens, Claims (as defined in section 101(5) of the Bankruptcy Code), interests and encumbrances (other than Assumed Liabilities and

7

Permitted Liens and/or except as otherwise provided in the Agreement) (collectively, "Liens, Claims and Encumbrance")) with any Liens, Claims and Encumbrances to attach to the consideration to be received by the Debtor in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. The Purchaser would not enter into the Agreement to acquire the US Acquired Assets if the sale of the US Acquired Assets were not free and clear of all Liens, Claims and Encumbrances, or if the Purchaser would, or in the future could, be liable for any such Liens, Claims and Encumbrances. A sale of the US Acquired Assets other than one free and clear of all Liens, Claims and Encumbrances would adversely impact the Debtor's estate, and would likely yield substantially less value for the Debtor's estate, with less certainty than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtor, its estate and creditors, and all other parties in interest.

   T. **Satisfaction of 363(f) Standards**.  The Debtor may sell and assign the US Acquired Assets free and clear of all Liens, Claims and Encumbrances, because, with respect to each creditor asserting a Lien, Claim and Encumbrance one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Liens, Claims and Encumbrances who did not object or who withdrew their objections to the Sale, the Transactions or any Notice of Assignment and Cure are deemed to have consented to the Sale Motion and sale and assignment of the US Acquired Assets to the Purchaser pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens, Claims and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims and Encumbrances, if any, attach to the proceeds of the Transactions ultimately attributable to the US Acquired Assets in which such holders allege a Lien, Claim and Encumbrance, in the same order of priority, with the same validity, force and effect that such

holder had prior to the Transactions, and subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

U.    **No Successor Liability**.  The Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor other than those liabilities expressly assumed under the Agreement (the "Assumed Liabilities"), subject to the terms of the Agreement.

V.    The Transactions contemplated under the Agreement do not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor and/or the Debtor's estate; there is not substantial continuity between the Purchaser and the Debtor; there is no common identity between the Debtor and the Purchaser; there is no continuity of enterprise between the Debtor and the Purchaser, the Purchaser is not a mere continuation of the Debtor or its estate; and the Purchaser does not constitute a successor to the Debtor or its estate. Other than the Assumed Liabilities, the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor, including, without limitation, the liabilities of the Debtor specifically excluded under the Agreement (the "Excluded Liabilities"), subject to the terms of the Agreement, and the Debtor will release and forever discharge the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, assented or unassented, fixed or contingent, relating to the Transactions, and the sale and assignment of the US Acquired Assets and the Assigned Contracts except for any and all liabilities and obligations

under the Agreement and any and all rights and claims of the Debtor thereunder.  The

Bankruptcy Court finds that the Purchaser would not have acquired the US Acquired Assets but

for the foregoing protections against potential claims based upon "successor liability" theories.

    W.  **No Fraudulent Transfer**.  The Transactions are not for the purpose of

hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor

the Purchaser are or will be entering into the Transactions fraudulently.

    X.  **Fair Consideration**.  The consideration constitutes reasonably equivalent

value and fair consideration (as those terms are defined in each of the Uniform Fraudulent

Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code),

and fair consideration under the Bankruptcy Code and under the laws of the United States, any

state, territory, possession or the District of Columbia. The Agreement represents a fair and

reasonable offer to purchase the US Acquired Assets and assume or acquire liabilities under the

circumstances of the Debtor's case. Approval of the Agreement (as to the Debtor and its assets)

and the consummation of the Transactions is in the best interests of the Debtor, its estate, its

creditors, and all other parties in interest.

    Y.  **Compliance with Bankruptcy Code.**  The consummation of the

Transactions is legal, valid, and properly authorized under all applicable provisions of the

Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f),

363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been or

will be complied with in respect of the Transactions as of the effective date of assignment.

    Z.  **Transactions not a Sub Rosa Plan**.  The sale and assignment of the US

Acquired Assets outside of a plan of reorganization pursuant to the Agreement neither

impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor. The Transactions do not constitute a sub rosa chapter 11 plan.

AA.   **Time is of the Essence**.  Time is of the essence in consummating the Transactions. In order to maximize the value of the Debtor's assets, it is essential that the sale and assignment of the US Acquired Assets and the Assigned Contracts occur within the time constraints set forth in the Agreement. Specifically, the Transactions must be approved and consummated promptly in order to preserve the viability of the Debtor's business subject to the Sale as a going concern, to maximize the value to the Debtor, its estate, its creditors, and all other parties in interest. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

BB.   The Transactions contemplated by the Agreement (as it relates to the Debtor and its assets) are in the best interests of the Debtor and its estate, creditors, interest holders and all other parties in interest herein; and it is therefor,

### ORDERED, ADJUDGED AND DECREED THAT:

1.   **Relief Granted**.  The relief requested in the Sale Motion is granted in its entirety.

2.   **Objections Overruled**.  All objections and responses to the Sale Motion, this Order, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.   **Notice**.  Notice of the Sale Motion, including without limitation, the transactions set forth in the Agreement and the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007 and Local Rule 6004-1.

11

4.      **Prior Findings of Fact and Conclusions of Law**.  The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5.      **Approval**.  The Agreement and the Transactions (as to the Debtor and its assets) are hereby approved and authorized in all respects, and the Debtor is hereby authorized and empowered to enter into, and to perform its obligations under, the Agreement and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Agreement.

6.      **Good Faith Purchaser**.  The Purchaser is a good faith purchaser of the US Acquired Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order or the Agreement, as the case may be.

7.      **Section 363(n) of the Bankruptcy Code**.  The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8.      **Authorization of Performance by the Debtor**.  The Debtor and its managers, officers, employees, agents, and representatives are authorized to fully perform under,

consummate, and implement the terms of the Agreement together with any and all additional

instruments and documents that may be reasonably necessary or desirable to implement and

effectuate the terms of the Agreement, this Order, and the Transactions, including, without

limitation, deeds, assignments and other instruments of transfer, and to take all further actions as

may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting,

conveying, and conferring to the Purchaser, or reducing to possession any or all of the US

Acquired Assets, as may be necessary or appropriate to the performance of the Debtor's

obligations as contemplated by the Agreement, without any further corporate action or orders of

the Bankruptcy Court.

9.     The Debtor is authorized and empowered to cause to be filed with the secretary of

state of any state or other applicable officials of any applicable governmental units, any and all

certificates, agreements, or amendments necessary or appropriate to effectuate the transactions

contemplated by the Agreement, any related agreements and this Order, including amended and

restated certificates or articles of incorporation and by-laws or certificates or articles of

amendment, and all such other actions, filings, or recordings as may be required under

appropriate provisions of the applicable laws of all applicable governmental units or as any of

the officers of the Debtor may determine are necessary or appropriate. The execution of any such

document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of

the authority of such person to so act.

10.     The Purchaser and the Debtor shall have no obligation to proceed with the

Closing until all conditions precedent to their respective obligations to do so have been met,

satisfied or waived.

13

11.    **Allocation by the Purchaser**.  To the extent provided in the Agreement, the Purchaser is hereby authorized in connection with the consummation of the Transactions to allocate the US Acquired Assets and the Assigned Contracts among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the US Acquired Assets or the rights under any Assigned Contracts to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Debtor shall reasonably cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

12.    **Valid Transfer**.  Effective as of the Closing (a) the sale and assignment of the US Acquired Assets and the Assigned Contracts by the Debtor to the Purchaser shall constitute a legal, valid and effective transfer of the US Acquired Assets and the Assigned Contracts notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtor in and to the US Acquired Assets, free and clear of all Liens, Claims and Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtor of all liability with respect to such Assumed Liabilities.

13.    **Free and Clear**.  Upon the Closing, the Debtor shall be, and hereby is, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and assign the US Acquired Assets and the Assigned Contracts to the Purchaser. The sale and assignment of the US Acquired Assets and the assignment of the Assigned Contracts to the Purchaser vests the Purchaser with all right, title and interest of the Debtor to the US Acquired

DOCS_DE:188541.4 73864/002

Assets free and clear of any and all Liens, Claims and Encumbrances, with all such Liens,

Claims and Encumbrances to attach only to the proceeds of the sale and assignment of the US

Acquired Assets with the same priority, validity, force, and effect as they now have in or against

the US Acquired Assets.  The Sale Motion shall be deemed to provide sufficient notice as to the

sale and assignment of the US Acquired Assets free and clear of all Liens, Claims and

Encumbrances in accordance with Local Rule 6004-1. Following the Closing, no holder of any

Lien, Claim and Encumbrance on the US Acquired Assets may interfere with the Purchaser's use

and enjoyment of the US Acquired Assets based on or related to such Lien, Claim and

Encumbrance,  and no interested party may take any action to prevent, interfere with or

otherwise enjoin consummation of the Transactions.

14.    The provisions of this Order authorizing the sale and assignment of the US

Acquired Assets free and clear of Liens, Claims and Encumbrances shall be self-executing, and

neither the Debtor nor the Purchaser shall be required to execute or file releases, termination

statements, assignments, consents, or other instruments in order to effectuate, consummate, and

implement the provisions of this Order.

15.    Notwithstanding anything in this Order or the Agreement, the tax lien claims of

the City of Vassar, Michigan, the City of Mt. Pleasant, Michigan, and the City of Hillsdale,

Michigan (collectively, the "Cities") and the sewer and water lien claim of the City of Vassar,

Michigan as asserted in the Limited Objections to the Sale Motion filed by the Cities [Docket No.

131 and 182] (collectively, the "City Claims"), shall attach to the proceeds from the sale and

assignment of the US Acquired Assets with the same rank, priority, validity, force, and effect as

they have at the time of Sale . The Debtor shall hold proceeds from the Sale in the amount of the

City Claims in a segregated account until such time as an agreement between the Debtor and the

DOCS_DE:188541.4 73864/002

Cities or Order of this Court allows the release of such proceeds to the Cities or the Debtor. The Debtor agrees that it shall make its determination as to the payment of the City Claims from the proceeds of the Sale within thirty (30) days of Closing or file an objection to the City Claims within that time period. To the extent the Cities and Debtor agree that the payment of the City Claims is appropriate, such payment will be made from the Sale proceeds held in the segregated account within five (5) business days. Nothing set forth in this paragraph shall modify, enhance or limit the Purchaser's payment obligations under the Agreement.

16. **Direction to Creditors**. On the Closing Date (as defined in the Agreement), each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims and Encumbrances in the US Acquired Assets, if any, as such Liens, Claims and Encumbrances may otherwise exist.

17. **Direction to Government Agencies**. Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the US Acquired Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

18. **Direction to Surrender Possession or Control**. All persons or entities, currently or on or after the Closing Date, in possession or control of some or all of the US Acquired Assets are directed to surrender possession or control of the US Acquired Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

16

19.    **Licenses and Permits**.  To the greatest extent available under applicable law, and to the extent provided for pursuant to the Agreement, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtor with respect to the US Acquired Assets and the Assigned Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date and, to the extent permitted by applicable law, such licenses or permits of the Debtor shall remain in place for the Purchaser's benefit until new licenses and permits are obtained.

20.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the US Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the transaction contemplated by the Agreement.

21.    **Transfer of Title and Interests**.  All of the Debtor's interests in the US Acquired Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the US Acquired Assets including the Assigned Contracts acquired by the Purchaser under the Agreement and/or a bill of

17

sale or assignment transferring indefeasible title and interest in the US Acquired Assets,
including the Assigned Contracts, to the Purchaser.

22.    **No Successor Liability**.  Except as otherwise provided in the Agreement, the
Purchaser and its affiliates and their respective successors, assigns, members, partners, principals,
and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect
to the Debtor or its estate as a result of the consummation of the Transactions contemplated by
the Agreement or any other event occurring in the chapter 11 case under any theory of law or
equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtor
or its estate, (c) deemed to have a common identity with the Debtor, (d) deemed to have a
continuity of enterprise with the Debtor, or (e) deemed to be a continuation or substantial
continuation of the Debtor or any enterprise of the Debtor; and the Purchaser shall not assume,
nor be deemed to assume, or in any way be responsible for any liability or obligation of any of
the Debtor and/or its estate including, but not limited to, any bulk sales law, successor liability,
liability or responsibility for any claim against the Debtor or against an insider of the Debtor, or
similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion
contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  Except for
the Assumed Liabilities, the transfer of the US Acquired Assets and the Assigned Contracts to
the Purchaser under the Agreement shall not result in (i) the Purchaser and its affiliates and their
respective successors, assigns, members, partners, principals and shareholders (or equivalent), or
the US Acquired Assets, having any liability or responsibility for any claim against the Debtor or
against an insider of the Debtor, (ii) the Purchaser and its affiliates and their respective
successors, assigns, members, partners, principals, and shareholders (or equivalent), or the US
Acquired Assets, having any liability whatsoever with respect to or be required to satisfy in any

18

manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens, Claims and Encumbrances or Excluded Liability, or (iii) the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent), or the US Acquired Assets, having any liability or responsibility to the Debtor except as is expressly set forth in the Agreement.

23.     Without limiting the effect or scope of the foregoing, except as otherwise provided in the Agreement, as of the Closing Date, the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Debtor's business, the US Acquired Assets or the Assigned Contracts prior to the Closing.

24.     Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under  non-bankruptcy law governing such transfers or assignments.

19

25. **Injunction**. Except to the extent expressly included in the Assumed Liabilities or to enforce the Agreement, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, administrative agencies, governmental tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers, and other parties in possession of any of the US Acquired Assets at any time, trade creditors and all other creditors, holding Liens, Claims and Encumbrances of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the US Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the US Acquired Assets, the Assigned Contracts, the operation of the Debtor's business before the Closing Date, the Transactions, or the transfer of the US Acquired Assets and the Assigned Contracts to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing such Lien, Claim and Encumbrance, in any manner, in any action, claim, or other proceeding of any kind, directly or indirectly, against the Purchaser, or any affiliates, successors or assigns thereof, their property or the US Acquired Assets. Following the Closing Date, no holder of a Lien, Claim or Encumbrance shall interfere with the Purchaser's title to or use and enjoyment of the US Acquired Assets based on or related to such Lien, Claim and Encumbrance. For the avoidance of doubt, none of the foregoing shall prevent the Debtor, its estate, and their respective successors or assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns for any breach of the Agreement to the extent permitted thereby.

20

26.    The Purchaser has not assumed and is not otherwise obligated for any of the Debtor's liabilities other than the Assumed Liabilities and the Purchaser has not acquired any of the Excluded Assets (as defined in the Agreement). Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, Claims and Encumbrances, based upon or arising out of liabilities retained by the Debtor, are hereby enjoined from taking any action against the Purchaser or the US Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens, Claims and Encumbrances or on account of any liabilities of the Debtor other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Lien, Claim and Encumbrance on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims and Encumbrances or cause of action against the Purchaser or the US Acquired Assets for any liability associated with the Excluded Assets.

27.    **No Bulk Sales; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions. No brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions.

28.    **Sale, Assumption and Assignment of Assigned Contracts**.  Under sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transactions, the Debtor's sale, assumption and assignment of the Assigned Contracts to the Purchaser free and clear of all Liens, Claims and Encumbrances pursuant to the terms set forth in the Agreement, as modified by the terms of any amendments reached directly by the Purchaser with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Each

21

counterparty to the Assigned Contracts is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtor or the Purchaser, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability, or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinate) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing. The Debtor and its estate shall be relieved of any liability for any breach of any of the Assigned Contracts occurring from and after the Closing, pursuant to and in accordance with section 365(k).

29.     The Assigned Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Assigned Contracts.

30.     **Adequate Assurance**. The Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Assigned Contracts have been satisfied.

31.     **Anti-Assignment Provisions Unenforceable**. No sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict or condition Debtor's assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-Debtor party to such Assigned Contracts; (b) authorize the termination, cancellation or modification of the Assigned Contracts based on the filing of a bankruptcy case,

22

the financial condition of the Debtor or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtor; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assigned Contracts, or modification of any term or condition upon the assignment of an Assigned Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). The entry of this Order constitutes the consent of the non-Debtor parties to the Assigned Contracts to the assumption and assignment of such agreements. All Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate cure amount, if any, by the Debtor or Purchaser as provided in the Agreement.

32.     **No Fees for Assumption and Assignment**. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, its successors or assigns, or the Debtor as a result of the assumption and assignment of the Assigned Contracts.

33.     **Cure Amounts**. All defaults or other obligations shall be deemed cured by the payment or other satisfaction of the cure amounts, if any, associated with the Assigned Contracts (the "Cure Amounts"). Except for the Cure Amounts, if any, there are no other defaults existing under the Assigned Contracts.

34.     **Notice of Assumption and Assignment**. The Debtor has served by first class mail all of the non-Debtor counterparties to the Assigned Contracts, identified on the lists prepared by the Debtor, a Cure Notice and supplemental notice(s) (if any) that included (i) the title or a description of the Assigned Contract of that particular counterparty, (ii) the name of that

23

particular counterparty to the Assigned Contract, (iii) any applicable Cure Amount for that counterparty's Assigned Contract, (iv) the identity of the Purchaser, and (v) the deadline by which any such Assigned Contract counterparty must file an objection ("Objection") to the proposed assumption and assignment.  No other or further notice is required.

35.    **Objections to Assumption and Assignment**.  If a timely Objection is received and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at a later date set by the Bankruptcy Court. The pendency of a dispute relating to a particular Assigned Contract shall not, subject and pursuant to the Agreement, prevent or delay the assumption and assignment of any other Assigned Contracts or the Closing.

36.    Any non-Debtor counterparty to the Assigned Contracts designated to be assumed and assigned to the Purchaser who does not file an Objection by the applicable deadline as set forth in the Cure Notice shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Assigned Contract and such Assigned Contract shall be deemed assumed by the Debtor and assigned to the Purchaser on the Closing Date.

37.    **Compliance with Anti-Assignment Act**.  Nothing in this Order shall interfere with the applicability of the Anti-Assignment Act, 41 U.S.C. §§ 15 et seq.

38.    **Release/Liabilities Not Assumed by Purchaser**.  Other than the Assumed Liabilities, the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor, including, without limitation, the Excluded Liabilities, and the Debtor and its estate are deemed to release and forever discharge the Purchaser and its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) from any and all claims, causes of action, obligations, liabilities, demands, losses,

24

costs, and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Transactions, the sale and assignment of the US Acquired Assets and the Assigned Contracts, except for any and all liabilities and obligations expressly assumed under the Agreement and any and all rights and claims of the Debtor thereunder.

39.    **Release of Causes of Action against Certain Suppliers and Customers**.  To the extent any Avoidance Actions against the Released Parties (defined below) are Excluded Assets under the Agreement, subject to the Closing, the Debtor and its estate shall not pursue any Avoidance Actions ("Released Claims") against any supplier or customer of the Business, with whom the Purchaser continues to do business following the Closing, other than insiders (as defined in the Bankruptcy Code) and Affiliates of the Debtor and Mexico Seller and all other parties identified in Schedule 1.2(g) of the Agreement (the "Released Parties"), and, subject to the Closing, the Debtor hereby irrevocably releases on behalf of its estate, effective as of the closing of the Transactions, any Released Claims against the Released Parties, provided that nothing herein shall be deemed to limit in any way rights Sellers may wish to (a) exercise, pursue or assert with respect to suppliers or customers of the Mexico Seller unrelated to Avoidance Actions that pertain to the Mexico Seller's damper business or (b) use defensively with respect to any claims made against either Seller by customers and suppliers.

40.    **Amendments**.  Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.  Any

material modification, amendment, or supplement to the Agreement must be approved by Order

of the Bankruptcy Court following a motion on notice to all interested parties.

41.    **Failure to Specify Provisions**.  The failure specifically to include any particular

provisions of the Agreement or any related agreements in this Order shall not diminish or impair

the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor, and

the Purchaser that the Agreement and any related agreements are authorized and approved in

their entirety with such amendments thereto as may be made by the parties in accordance with

this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

42.    **Binding Order**.  This Order and the Agreement shall be binding upon and govern

the acts of all persons and entities, including without limitation, the Debtor and the Purchaser,

their respective successors and permitted assigns, including, without limitation, any chapter 11

trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if

this case is converted from chapter 11, all creditors of the Debtor (whether known or unknown),

all non-Debtor parties to any Assigned Contracts, filing agents, filing officers, title agents,

recording agencies, governmental departments, secretaries of state, federal, state and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office or contract, to accept, file, register, or otherwise record or release any documents

or instruments or who may be required to report or insure any title in or to the US Acquired

Assets.  The Agreement and Transactions shall not be subject to rejection or avoidance under any

circumstances. This Order and the Agreement shall inure to the benefit of the Debtor, its estate,

its creditors, the Purchaser and their respective successors and assigns.

43.    **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order

shall be effective and enforceable immediately upon entry and its provisions shall be self-

DOCS_DE:188541.4 73864/002

executing. Time is of the essence in closing the Transactions referenced herein, and the Debtor and the Purchaser intend to close the Transactions as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

44. **Lift of Automatic Stay**. If and to the extent that section 362 may be applicable to a particular action in connection with the Agreement and Transactions, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Bankruptcy Court, to allow the Purchaser to deliver any notice provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

45. **Mexico Seller**. Nothing herein is intended to modify, limit or otherwise affect the rights and powers of Eptec S.A. de C.V. to take any and all actions in respect to the Agreement and the Transactions contemplated under the Agreement.

46. Notwithstanding any other provision of this Order or the Agreement, nothing in this Order or the Agreement limits or impairs the security interests, liens, claims, rights or remedies of GE CF Mexico, S. de R.L. de C.V. f/k/a GE CF Mexico, S.A. de C.V. ("GE Mexico") under applicable law with respect to Eptec S.A. de C.V. In addition, nothing in this Order grants a security interest or lien on the equity in Eptec S.A. de C.V (which equity is held, subject to a pledge asserted by GE Mexico, by Metavation Mexico, LLC and Metavation Mexico II, LLC) or the assets of Eptec S.A. de C.V.

47. **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement, including all amendments thereto and any waivers and consents

27

thereunder and each of the agreements executed in connection therewith, in all respects, (b) to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the US Acquired Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims and Encumbrances and (c) enter any orders with respect to the assumption and assignment of any post-Closing Assigned Contracts.

48. **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Debtor's chapter 11 case or any order confirming any such plan or any other order in the chapter 11 case of the Debtor (including any order entered after any conversion of the Debtor's case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Agreement or this Order.

49. **Further Assurances**. From time to time, as and when requested by any party to the Agreement, each such party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Purchaser its right, title, and interest in and to the US Acquired Asset and the Assigned Contracts.

50. **Governing Terms**. To the extent this Order is inconsistent with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern. To the extent there is

28

any inconsistency with between the terms of this Order and the terms of the Agreement

(including all ancillary documents executed in connection therewith), the terms of the Order shall

govern.

Dated: Wilmington, Delaware
        August 30, 2013

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

51. Notwithstanding anything in this Order which
may be to the contrary the net proceeds of
the Sale will be distributed in accordance
with the Final Order (A) Authorizing Debtor to Obtain
Post-Petition Financing and Grant Security Interests
and Superpriority Administrative Expense Status
(B) Modifying the Automatic Stay and (C) Authorizing
Debtor to Enter Into Agreements with
Wells Fargo Capital Finance, LLC, As Agent entered
on August 23, 2013 [Docket No. 185].

Pursuant to 11 U.S.C. §§
105 and 364(c);

Pursuant to 11 U.S.C. § 362;

DOCS_DE:188541.4 73864/002