**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TPOP, LLC,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 13-11831 (BLS)<br><br><br>**Hearing Date: December 11, 2013 at 10am<br>Objection Deadline: December 4, 2013 at 4pm** |

**MOTION OF PENSION BENFIT GUARANTY CORPORATION FOR THE ENTRY OF
AN ORDER PURSUANT TO 11 U.S.C. § 1112(B) CONVERTING THE BANKRUPTCY
CASE OF TPOP, LLC FROM CHAPTER 11 OF THE BANKRUPTCY CODE
TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

Pension Benefit Guaranty Corporation ("PBGC") hereby moves for entry of an order pursuant to 11 U.S.C. § 1112(b) converting the Chapter 11 case of TPOP, LLC ("TPOP") to a case under Chapter 7 or, in the alternative, appointing a Chapter 11 trustee ("Motion").

**JURISDICTION AND VENUE**

1.　　This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2.　　Venue of this Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3.　　On December 3, 2012, Revstone Industries, LLC and Spara, LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On January 7, 2013, Greenwood Forgings, LLC and US Tool & Engineering, LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[1] The Debtor in this Chapter 11 case is TPOP, LLC f/k/a Metavation, LLC and the last four digits of the Debtor's federal tax identification number are 5884. The Debtor's headquarters are located at 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

1

4. On July 22, 2013, TPOP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  In support of its petition, TPOP filed the Declaration of John C. DiDonato [Docket No. 3] ("DiDonato Declaration").

5. TPOP is a wholly-owned subsidiary of Revstone Transportation, LLC which, in turn, is a wholly-owned subsidiary of Debtor Revstone Industries, LLC. TPOP is an affiliate of Debtors Greenwood Forgings, LLC, US Tool & Engineering, LLC and Spara, LLC. DiDonato Declaration Page 7, ¶ 15.

6. TPOP remains in possession of its properties and in control of its business pursuant to 11 U.S.C. §§ 1107 and 1108.

7. On July 22, 2013, TPOP filed a Motion for Order: (A) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Operating Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts; (D) Approving Payment of a Break-Up Fee and Expense Reimbursement; and (E) Granting Related Relief [Docket No. 17] ("Bidding Procedures Motion").

8. On July 24, 2013, TPOP filed its Schedules of Assets and Liabilities [Docket Nos. 36 and 37].

9. On August 9, 2013, the Court granted the Bidding Procedures Motion and entered the Order Pursuant to Bankruptcy Code Sections 105(a), 363, 365, and Bankruptcy Rules 2002, 6004, 6006 [Docket No. 113] ("Bidding Procedures Order").

10. Under the Bidding Procedures Order, an auction for TPOP's assets was set for August 29, 2013. Dayco Products, LLC ("Dayco") submitted the only qualified bid and was therefore selected as the buyer.

11. On August 30, 2013, the Court entered an order ("Sale Order") approving the sale of TPOP to Dayco and approving the Asset Purchase Agreement ("APA") between Dayco and TPOP for TPOP's US Acquired Assets. Upon information and belief, closing on the APA occurred on September 9, 2013.

12. To date, an Unsecured Creditors Committee has not been formed in the TPOP bankruptcy case.

13. TPOP is the contributing sponsor of the Hillsdale Hourly Pension Plan and the Hillsdale Salaried Pension Plan ("collectively, the "Pension Plans") within the meaning of 29 U.S.C. § 1301(a)(13), and TPOP is the Plan Administrator of the Pension Plans within the meaning of 29 U.S.C. § 1302(a)(1).

14. There are approximately 1,526 participants in the Pension Plans, and PBGC estimates that the Pension Plans are underfunded by approximately $47 million or more on a termination basis.

15. On August 9, 2012, the Department of Labor filed a complaint (the "DOL Action") against TPOP and seven other parties, alleging violation of fiduciary standards under the Employee Retirement Income Security Act of 1974 ("ERISA") that resulted in losses to the Pension Plans of approximately $34.6 million. *Perez v. Hofmeister, et. al.*, case No. 12-cv-00250 (E.D. Ky. Aug. 9. 2012).

16. On March 1, 2013, PBGC issued Notices of Determination to TPOP as plan administrator of the Pension Plans, notifying TPOP that PBGC had determined, pursuant to

29 U.S.C. §1342, that the Pension Plans should be terminated because they will be unable to pay benefits when due, and because the possible long-run loss to PBGC may reasonably be expected to increase unreasonably if the Pension Plans are not terminated.  The Notices of Determination also noted that the Pension Plans must be terminated in order to protect the interests of participants and to avoid any unreasonable increase in liability of the PBGC insurance fund.

17. On August 23, 2013, PBGC issued revised Notices of Determination to TPOP, setting forth the same determinations.

18. On August 23, 2013, PBGC filed a complaint in the United States District Court for the Eastern District of Kentucky against TPOP to terminate the Pension Plans pursuant to 29 U.S.C. § 1342 (the "PBGC Action").  *Pension Ben. Guar. Corp. v. Metavation, LLC, et. al.*, case No. 13-cv-00273 (E.D. Ky. Aug. 23, 2013).

## ARGUMENT

19. The TPOP Chapter 11 bankruptcy case should be converted to a Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 1112(b) because: (1) there is continuing diminution of the estate, (2) there is no reasonable likelihood of rehabilitation since TPOP's assets have been liquidated, and (3) conversion is in the best interests of the creditors and the estate.

20. Bankruptcy Code section 1112(b)(1) provides, in part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

21. Section 1112(b)(4) provides a non-exclusive list of what defines "cause," including substantial or continuing loss to or diminution of the estate *and* the absence of a

reasonable likelihood of rehabilitation. In reviewing a motion under § 1112(b), "[f]irst the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given evidence presented at hearing." *In re Gateway Solutions, Inc.* 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).

22.     If a movant establishes cause for conversion, the bankruptcy court is required to convert the case unless there are "unusual circumstances" present that would make conversion not in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1).

## I.   THERE IS CONTINUING LOSS, OR DIMUNITION OF, THE TPOP ESTATE

23.     TPOP has no income, operations or employees. Its assets consist of approximately $25 million in cash proceeds from the asset sale. Currently, TPOP is incurring substantial professional fees in opposing the PBGC Action and the DOL Action. Arguably, these expenditures are not necessary or beneficial to the estate.

24.     TPOP cannot support the Pension Plans; it has liquidated. And, upon information and belief, there is no operating entity in TPOP's controlled group that can meet the financial obligations to sponsor the Pension Plans. To the extent that it is TPOP's position that the Pension Plans will be assumed by an entity other than TPOP, it is inappropriate for TPOP's assets to be depleted to benefit a non-debtor entity when TPOP's own creditors have not been made whole.[2]

25.     At this time, there are no fewer than 17 law firms employed to handle litigation involving TPOP across North America. *In re: TPOP, LLC*, 13-11831 (Bankr. D. De. Jul. 22,

---

[2] If an entity exists that has the financial wherewithal to support the Pension Plans, it should fund ongoing litigation, not TPOP. As set forth fully in its complaint in the PBGC Action, PBGC does not believe that any such entity exists. In this regard, PBGC notes that, according to a motion recently filed by the indirect owners of Spara, LLC in that company's bankruptcy proceeding, all remaining operating affiliates of TPOP are being marketed for sale. *In re Spara LLC*, case 12-13262-BLS (Bankr. D. De. Nov. 13, 2013), Docket No. 1160.

2013), Docket No. 11.[3] PBGC has requested documentation on the number of hours billed for the various TPOP litigation matters but, to date, TPOP has not responded.

26. TPOP's continued participation in the DOL Action alone will result in enormous fees for counsel, fact witnesses and expert witnesses. For example, the Department of Labor has requested 100 interrogatories and 25 to 30 depositions in its action.[4] Furthermore, the District Court in the DOL Action has scheduled a 4 week trial in that case.[5] Upon information and belief, TPOP has not sought a consensual resolution of its role in the case, and has, in fact, rejected DOL's proposal to engage in mediation. In addition, PBGC does not have information indicating how the cost of defending the DOL Action is being apportioned among the defendants.

27. A disinterested trustee is urgently needed to investigate the value to TPOP's creditors of continued expenditure on these professionals. If this case is converted to a case under Chapter 7, the neutral court-appointed trustee will have the information and authority to determine the reasonableness of costs incurred by the estate in order to preserve the value of the estate for its creditors.

## II. THERE IS NO REASONABLE LIKELIHOOD OF REHABILITATION

28. It is not possible for TPOP to be rehabilitated because it is no longer an operating entity. In the context of section 1112(b), "rehabilitation means that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its

---

[3] Motion for an Order Authorizing the Debtor to Retain, Employ and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course of Business.

[4] Transcript of Scheduling Conference Proceedings at 6, *Perez v. Hofmeister et al.*, Case No. 13-cv-00156 (E.D. Ky. Oct. 28, 2013), Docket No. 42.

[5] Scheduling Order, *Perez v. Hofmeister et al.*, Case No. 12-cv-00250 (E.D. Ky. Nov. 1, 2013), Docket No. 89.

current obligations can be met." *In re Motel Props., Inc.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004).

29. Furthermore, "rehabilitation" under 11 U.S.C. § 112(b)(4)(A) definitively means to "put back in good condition; reestablish on a sound firm basis." 5 Collier on Bankruptcy § 1112.03(2)(15th ed. 1980) (quoted in *In re L.S. Good & Co.*, 8 B.R. 315, 317 (Bankr. N.D. W. Va. 1980)). Also, "[c]ourts have consistently understood "rehabilitation" to refer to the debtor's ability to restore the viability of its business." *Loop Corp v. United States Tr.*, 379 F.3d 511, 516 (8th Cir. 2004). In *Loop Corp*, the court noted that where debtors intended to liquidate their assets instead of restoring business operations, there was no reasonable likelihood of reorganization. 379 F.3d 511, 516 (8th Cir. 2004).

30. TPOP has liquidated substantially all of its assets and is no longer operating. Additionally, all employees were separated from employment. Therefore, there is no reasonable likelihood that TPOP will be rehabilitated.

### III. CONVERSION TO CHAPTER 7 IS IN THE BEST INTEREST OF TPOP'S CREDITORS

31. TPOP's current management and professionals cannot effectively discharge their duty to maximize the value of TPOP's estate for the benefit of its creditors, as those individuals are conflicted. TPOP employs financial and legal professionals who are also employed by debtors Revstone Industries, LLC ("Revstone"), Spara LLC, Greenwood Forgings, LLC, and U.S. Tool and Engineering, LLC. Upon information and belief, those debtors lack sufficient funds to pay the professional fees that have accrued in those cases. As a result, the professionals employed by TPOP, an indirect subsidiary of Revstone, have an interest in upstreaming TPOP's assets to the Revstone estate to pay Revstone's professionals. As such, the individuals in control of TPOP have interests that are structurally adverse to those of TPOP's creditors.

7

32. TPOP is incurring substantial litigation and administrative expenses while not generating any income. This Court must not permit the Debtor to continue to deplete funds in a way that is adverse to the interests of TPOP's creditors. Rather, the Court should appoint an independent trustee to manage TPOP's estate and determine whether the litigated matters should continue or be settled in order to maximize the value of the estate for its creditors.

## IV.   IF THIS CASE IS NOT CONVERTED, A CHAPTRE 11 TRUSTEE SHOULD BE APPOINTED

33. As shown above, sufficient cause exists to convert the case to a Chapter 7 case. In the event that this Court does not convert this case to Chapter 7, then the Court should appoint a Chapter 11 trustee pursuant to 11U.S.C. § 1104(a)(3). This section requires the Bankruptcy Court to appoint a trustee at any time after the commencement of the case, but prior to confirmation of a plan, on request of a party in interest, and after notice and a hearing. "[I]f grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1104(a)(3).

34. Therefore, if this Court finds that it is more beneficial to creditors and the estate to appoint a trustee or an examiner instead of converting the case, such appointment can be made pursuant to section 1104(a).

## CONCLUSION

WHREFORE, PBGC respectfully requests that this Court issue an order converting the TPOP Chapter 11 case to a case under Chapter 7 or, in the alternative, appointing a Chapter 11 trustee or examiner.

Dated: November 20, 2013
       Washington, D.C.

Respectfully Submitted,

/s/ Cassandra B. Caverly
ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
KARTAR S. KHALSA
Assistant Chief Counsel
DESIREE M. AMADOR
CASSANDRA B. CAVERLY
M. KATHERINE BURGESS
Attorneys
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street NW, Suite 340
Washington, DC 20005
Telephone: (202) 326-4020 ext. 6778
Facsimile: (202) 326-4112
caverly.cassandra@pbgc.gov