## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TPOP, LLC,[1] | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**Objection Deadline: March 13, 2014, at 4:00 p.m. (prevailing Eastern time)**
**Hearing: March 20, 2014 at 10:00 a.m. (prevailing Eastern time)**

### MOTION OF TPOP, LLC FOR ORDER
### PURSUANT TO 11 U.S.C. §§ 105 & 363 AND BANKRUPTCY RULE 9019
### AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT
### WITH PENSION BENEFIT GUARANTY CORPORATION

Debtor TPOP, LLC ("TPOP"), debtor and debtor in possession in the above

captioned proceeding, hereby submits this motion (the "Motion") for entry of an order, pursuant

to sections 105 and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing

and approving the *Settlement Agreement* dated as of February 11, 2014 (the "Settlement

Agreement") by and among (i) TPOP, (ii) affiliated debtors Revstone Industries, LLC

("Revstone"), Spara, LLC ("Spara"), Greenwood Forgings, LLC ("Greenwood"), and US Tool &

Engineering LLC ("US Tool" and together with TPOP, Revstone, Spara, and Greenwood, the

"Debtors"),[2] (iii) non-Debtor Fairfield Castings, LLC ("Fairfield"), and (iv) certain of Revstone's

and Spara's non-debtor subsidiaries (together with TPOP, Revstone, Spara, Greenwood, US

---

[1] The Debtor in this chapter 11 case is TPOP, LLC f/k/a Metavation, LLC and the last four digits of the Debtor's federal tax identification numbers is 5884. The location of the Debtor's headquarters is 230 N. Limestone St., Ste. 100, Lexington, KY 40507.

[2] Revstone, Spara, Greenwood, and US Tool have concurrently filed a separate motion to approve the Settlement Agreement in their jointly administered proceeding, Bankr. Case No. 13-11831.

Tool, and Fairfield, the "PBGC Obligors"), and (v) the Pension Benefit Guaranty Corporation

(the "PBGC"). A copy of the Settlement Agreement is attached hereto as **Exhibit 1**. Capitalized

terms not otherwise defined herein shall have the meaning set forth in the Settlement Agreement.

In support of this Motion, TPOP respectfully states as follows:

### Preliminary Statement

TPOP and the other PBGC Obligors, together with the largest creditor of this

estate, the PBGC, have agreed to a settlement that, if approved by this Court, will represent a

critical turning point in these proceedings. After several months of extensive negotiation, TPOP

and the PBGC have reached agreement on a global resolution of the PBGC's substantial claims

(which dwarf the other claims in this estate) that will provide for distributions to creditors

through a confirmable chapter 11 plan to be proposed by TPOP.

As noted, the PBGC is by far the largest creditor with claims in excess of $95

million against TPOP, the same claims that the PBGC asserts against each of the PBGC Obligors

within the TPOP "controlled group" (generally, trades or businesses linked by at least an 80

percent ownership interest, by vote or value). Resolution of the PBGC's claims is the essential

ingredient necessary for creditors to realize value from TPOP's estate. Under the settlement, the

PBGC's claims: (a) will be liquidated as an unsecured claim against TPOP in the amount of $95

million, and (b) will share pro rata in recoveries by unsecured creditors out of the available assets

of TPOP, after administrative and priority claims are paid, in accordance with bankruptcy

priorities pursuant to a chapter 11 plan. Along with addressing the PBGC's claims and related

non-bankruptcy pension litigation, the settlement will resolve pension-related claims asserted by

the U.S. Department of Labor (the "DOL") against TPOP and Fairfield.

The highlights of the settlement (as it relates to TPOP and the other Debtors) are

as follows:

- The PBGC will have an allowed general unsecured, non-priority claim against the Debtors and its domestic affiliates (including TPOP) in the amount of $95 million.

- The PBGC will accept a projected recovery from all of the PBGC Obligors in the aggregate of $82 million on account of the Allowed PBGC Claim, but in no event less than $80 million.

- Distributions will be made to the PBGC, on the one hand, and Revstone and its sister company, Spara, as applicable, on the other hand, or into an escrow, out of the net available proceeds realized from asset sales at various Revstone and Spara subsidiaries in accordance with an agreed funding schedule. Specifically as to TPOP, the PBGC will share in recoveries from TPOP's estate along with other unsecured creditors in accordance with bankruptcy priorities pursuant to a chapter 11 plan. The PBGC will agree to allow payments to be made to the Revstone and Spara estates so that creditors of these estates (other than the PBGC) can receive distributions, including administrative claimants.

- Certain reserves will be created at Revstone and Spara to cover post-confirmation expenses and litigation costs.

- All pending bankruptcy litigation between the parties will be dismissed with prejudice, including the PBGC's joinder in the Trustee Motion (as defined below), and the PBGC will agree to support Revstone's amended chapter 11 plan (as well as plans for the other debtors, including TPOP), which will incorporate the terms of the settlement.

- TPOP and Fairfield will consent to termination of the Pensions Plans (as defined below) and the PBGC's trusteeship of the Pension Plans. Upon termination of the Pension Plans under 29 U.S.C. § 1342, any claims filed by the Pension Plans against the bankruptcy estates of TPOP, Revstone, Spara, Greenwood, and US Tool shall be deemed withdrawn.

- The DOL, TPOP, and Fairfield will seek entry of consent judgments in the DOL Litigation, which shall state the amounts each of TPOP and Fairfield owes to the Pension Plans, concluding the litigation as to those two defendants only,

3

and releasing all DOL claims against those two defendants, except as necessary to give effect to the consent judgments and the settlement.

Approval of this Motion is in the best interests of TPOP's estate because it represents a "win-win" for all parties. The settlement: (a) resolves the claims of the PBGC, the key creditor in this case, (b) settles and avoids further litigation over various pension liabilities, and (c) provides for distributions to unsecured creditors through a chapter 11 plan that will have the support of the PBGC.

For the foregoing reasons, and as set forth below, approval of the Settlement Agreement is in the best interests of TPOP and its estate and should be approved.

## Jurisdiction and Venue

1.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

2.      On December 3, 2012, Revstone and its sister company, Spara, commenced their respective cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 7, 2013, Revstone subsidiaries, Greenwood and US Tool, commenced their respective cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On July 22, 2013, Revstone subsidiary, TPOP, commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4

3.    On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Revstone case. No committee has been appointed in the cases of Spara, Greenwood, US Tool, or TPOP. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

4.    Certain of Revstone's affiliates sponsor defined benefit pension plans. Specifically, TPOP sponsors the Hillsdale Hourly Pension Plan and the Hillsdale Salaried Pension Plan. Fairfield sponsors the Revstone Casting Fairfield GMP Local 359 Pension Plan.[3] The Hillsdale Hourly Pension Plan, the Hillsdale Salaried Pension Plan, and the Revstone Casting Fairfield GMP Local 359 Pension Plan are collectively referred to herein as the "Pension Plans." Issues and disputes with the PBGC involve or are related to (a) termination of the Pension Plans, and (b) the amounts, calculation, and priority of the PBGC's claims against the PBGC Obligors. The PBGC asserts "controlled group" liability against every entity within the Revstone and Spara umbrella of companies, including TPOP. The DOL has also asserted claims against certain of the PBGC Obligors relating to the Pension Plans, as have the Pension Plans themselves.

### The Claims of the PBGC, DOL, and Pension Plans and Related Litigation

5.    As mentioned above, the PBGC asserts, under 29 U.S.C. § 1301(a)(14), that the sponsor of a pension plan and members of its controlled group are financially responsible for the pension plan. The PBGC further asserts that the responsibilities of the plan

---

[3] Another non-Debtor affiliate called Fourslides, Inc. sponsors the Fourslides, Inc. Pension Plan, which is not affected by the Settlement Agreement.

sponsor and controlled-group members to a pension plan include, *inter alia*: (1) paying the statutorily required minimum funding contributions to the pension plan; (2) paying insurance premiums to the PBGC; and (3) paying any unfunded benefit liabilities to the PBGC if the pension plan terminates.  The PBGC asserts that liabilities of the plan sponsor and controlled-group members with regard to the pension plan are joint and several.

    6. On or about June 26, 2013, the PBGC filed 13 proofs of claim against the Debtors as follows: (1) four claims against Revstone related to the due and unpaid minimum funding contributions due to the Pension Plans under 26 U.S.C. §§ 412, 430 and 29 U.S.C. § 1082 in the amounts of $3,364,321 [Claim No. 204], $1,138,674 [Claim No. 207], an unliquidated amount [Claim No. 209], and $559,356 [Claim No. 203], respectively, (2) four claims against Revstone related to premiums due to the PBGC by the Pension Plans under 29 U.S.C. § 1307 in the amounts of $4,342,500 [Claim No. 202], $1,380,000 [Claim No. 208], $172,500 [Claim No. 205], and $1,185,000 [Claim No. 206], respectively, (3) four claims against Revstone related to the unfunded benefit liabilities of the Pension Plans under 29 U.S.C. § 1362 and 1368 in the amounts of $38,600,000 [Claim No. 213], $7,500,000 [Claim No. 211], $87,822 [Claim No. 214], and $8,927,262 [Claim No. 210], respectively, and (4) a claim against Greenwood for unpaid obligations due to the Hillsdale Hourly Pension Plan and the Hillsdale Salaried Pension Plan under certain promissory notes made by Greenwood in an unliquidated amount [Claim No. 212].

    7. On or about August 23, 2013, the PBGC filed a complaint in the United States District Court for the Eastern District of Kentucky against TPOP and Fairfield, styled

*Pension Benefit Guaranty Corporation v. Metavation LLC et al.*, No. 5:13-cv-273 (the "PBGC

Litigation"), seeking termination of the Pension Plans.

   8.  The DOL has filed three proofs of claim on behalf of the Pension Plans

against Revstone totaling $41.49 million for alleged breach of fiduciary duty obligations and

prohibited transactions under ERISA [Claim Nos. 498, 499, 501].  Specifically, the DOL asserts

(i) on behalf of the Hillsdale Hourly Pension Plan, an unsecured claim in the amount of

$5,881,193.48 and a secured claim in the amount of $18,735,289.99 [Claim No. 498]; (ii) on

behalf of the Hillsdale Salaried Pension Plan, an unsecured claim in the amount of $3,647,285.44

and a secured claim in the amount of $8,942,450.00 [Claim No. 499]; and (iii) on behalf of the

Revstone Casting Fairfield GMP Local 359 Pension Plan, an unsecured claim in the amount of

$1,463469.40 and a secured claim in the amount of $2,820,000 [Claim No. 501].

   9.  The DOL also has commenced litigation relating to the Pension Plans.  In

*Perez v. Hofmeister*, U.S.D.C. Case No 12-cv-250 (E.D.Ky.) and the lawsuits consolidated

therewith (Case Nos. 13-cv-156) (the "DOL Litigation"), the DOL asserted claims against

certain of the PBGC Obligors and others, relating to, *inter alia*, the management and

administration of the Pension Plans, the transfer, use, and investment of the Pension Plans'

assets, and the payment and allocation of fees and expenses.

   10.  The Pension Plans have also filed claims for unpaid contributions against

Revstone, including: (i) a priority proof of claim for $1,656,893 [Claim No. 242]; (ii) a priority

proof of claim of $670,904 [Claim No. 247]; (iii) an administrative expense claim for unpaid

minimum contributions in the amount of $1,501,172 [Docket No. 712]; and (iv) an

administrative expense claim for unpaid minimum contributions $329,163 [Docket No. 713].

The Pension Plans have also filed two contingent termination claims against all the Debtors for

underfunding in the event that the Pension Plans are terminated in the aggregate amount of

$46,100,000 [Docket Nos. 712, 713]. The Debtors believe that these claims are duplicative of

the claims asserted by the PBGC, or have been paid during the course of this case through

payments by one or more non-debtor affiliates with respect to the unpaid contribution claims.

11.     Like the PBGC, the Pension Plans' claims are asserted as joint and several

as to all entities within the controlled group. Accordingly, to the extent that the Pension Plans

are terminated, the Pension Plans assert that any resulting liabilities would become fixed and

liquidated in respect of all entities within the controlled group.

12.     By order dated August 30, 2013, this Court entered its order authorizing

the sale of substantially all of TPOP's operating assets [Docket No. 216].

13.     On November 20, 2013, the PBGC filed its *Motion of Pension Benefit*

*Guaranty Corporation for the Entry of an Order Pursuant to 11 U.S.C. § 1112(B) Converting the*

*Bankruptcy Case of TPOP, LLC from Chapter 11 of the Bankruptcy Code to a Case Under*

*Chapter 7 of the Bankruptcy Code* [TPOP Docket No. 307] (the "Conversion Motion"). The

PBGC also joined (the "PBGC Joinder") in the *Motion of the Official Committee of Unsecured*

*Creditors to (I) Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 1104(a)(1) and*

*1104(a)(2) or, Alternatively, (II) Convert Case to Chapter 7 Pursuant to 11 U.S.C. §§ 1112(b)(1)*

*and 1112(b)(4)(A)* [Revstone Docket No. 1167] (the "Trustee Motion"). On February 10, 2014,

8

in light of the pending settlement, the PBGC withdrew the Conversion Motion and the PBGC

Joinder.

## The Proposed Settlement Agreement

14.    As noted above, the proposed Settlement Agreement resolves the universe

of PBGC, DOL, and Pension Plan claims and associated litigation as it relates to TPOP and the

other PBGC Obligors, and provides the framework for payment of allowed administrative and

priority claims and distributions to unsecured creditors under a chapter 11 plan proposed by

TPOP.

15.    The parties to the Settlement Agreement are (a) the Debtors (including

TPOP); (b) Fairfield; (c) certain Revstone and Spara related non-debtor subsidiaries, including

Revstone Transportation, LLC, Revstone Tool & Engineering, LLC, T Cast Holdings, LLC,

Fairfield Castings, LLC, CC Liquidation, LLC f/k/a Contech Castings, LLC, MWTDC, Inc. f/k/a

MW Texas Die Casting, Inc., MPI, LLC, Revstone Wallaceburg Canada Inc., Aarkel Tool & Die

Inc., and Eptec S.A. De C.V.; and (d) the PBGC.  Although not a party to the settlement, a

resolution of disputes with the DOL will be accomplished through the entry of a separate consent

judgment.

16.    The primary terms of the Settlement Agreement (as they relate to TPOP

and the other Debtors) are as follows:[4]

---

[4]  While the summary of the principal terms herein is intended to be accurate, if there is any discrepancy between
this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

a.    The PBGC will have an allowed general unsecured, non-priority, joint and several claim against each of the PBGC Obligors, including TPOP, in the amount of $95,000,000 (the "Allowed PBGC Claim").  The total amount the PBGC is to receive for the Allowed PBGC Claim is to be no less than $80,000,000 (the "PBGC Minimum Recovery"), with a targeted amount of $82,000,000.  Amounts paid by the PBGC Obligors since the Revstone Petition Date to the Pension Plans shall be credited toward the PBGC Minimum Recovery.  To date, the PBGC Obligors have paid $21,693,767 to the Pension Plans.  As a result, the additional amount necessary to reach the PBGC Minimum Recovery is $58,306.233.  The PBGC is also entitled to receive additional funds if Net Proceeds exceed $116,000,000 (the "PBGC Upside Recovery"), which funds shall be distributed equally between the PBGC and the Revstone and Spara estates.  The PBGC Upside Recovery is in addition to the PBGC Minimum Recovery, but the PBGC shall not receive an amount greater than the PBGC Maximum Recovery.  A final reconciliation of the amounts distributed shall occur once the material assets of the PBGC Obligors have been liquidated and the amount of Net Proceeds determined.

b.    The PBGC has agreed for distributions to be made to Revstone's and Spara's bankruptcy estates consistent with the Funding Schedule attached as Exhibit A to the Settlement Agreement, and for Revstone and Spara to utilize such distributions for the payment of allowed creditor claims against their respective estates (other than the Allowed PBGC Claim), to the extent consistent with the PBGC Minimum Recovery and the PBGC Upside Recovery. Specifically as to TPOP, the PBGC will share in recoveries from TPOP's estate along with other unsecured creditors in accordance with bankruptcy priorities in a chapter 11 plan.  Until such

10

time that the PBGC receives the PBGC Minimum Recovery, the estates of Revstone and Spara shall retain 50% of the amount that would otherwise be distributed to those estates' unsecured creditors, but in no event less than $2,072,000 at Revstone and $928,000 at Spara. Additionally, each of the Debtors may use available cash in their respective estates to pay any allowed administrative or priority claims.

   c. The PBGC shall withdraw any and all notices of federal liens with respect to any filed 430(k) Liens and not assert any non-filed or additional 430(k) Liens against each of the PBGC Obligors.

   d. TPOP and Fairfield shall consent to immediate termination of the Pension Plans, and shall execute agreements acceptable to the PBGC effecting plan termination and the PBGC's trusteeship pursuant to 29 U.S.C. § 1342. Upon termination, all claims of the Pension Plans against the Debtors shall be deemed withdrawn.

   e. All pending litigation, including the PBGC Action and DOL Litigation will be resolved. The DOL, TPOP, and Fairfield will seek entry of consent judgments in the DOL Litigation, which shall state the amounts each of TPOP and Fairfield owes to the Pension Plans, concluding the litigation as to those two defendants only, and releasing all DOL claims against those two defendants, except as necessary to give effect to the consent judgments and the settlement. The PBGC has already withdrawn the Conversion Motion in TPOP's case and the PBGC Joinder to the Trustee Motion in Revstone's case, and will withdraw the PBGC's objections to fee requests of the Debtors' professionals.

11

f.      The Parties shall enter into a Plan Support Agreement (attached as Exhibit C to the Settlement Agreement) that reflects the Parties' support of Revstone's previously filed chapter 11 plan, to be amended as necessary consistent with the terms of the Settlement Agreement and/or supplemented by separate plans of Spara or the other Debtors (including TPOP) in conformity with the Settlement Agreement.  The PBGC shall support current management of the Debtors through the effective date of a chapter 11 plan or plans and thereafter through the Debtors' proposed designees or successors.

g.      Upon the effective date of a chapter 11 plan in the Revstone and Spara bankruptcy cases, certain Reserves shall be created for (i) post-effective date administrative expenses, excluding litigation expenses, in the amount of $1,000,000 at Revstone and $750,000 at Spara, and (ii) litigation expenses in the amount of $1,500,000 at Revstone and $500,000 at Spara.  If insufficient funds are available to fund the litigation reserves on the effective date of a chapter 11 plan or plans, then (A) 50% of the applicable litigation reserve amount shall be funded on the date that the applicable Revstone or Spara estate receives 75% of its recoveries contemplated by the Funding Schedule, and (B) the remaining 50% of the applicable reserve amount shall be funded on the date that the applicable Revstone or Spara estate receives 85% of its recoveries contemplated by the Funding Schedule.

h.      On the Applicable Release Date, the PBGC, on behalf of itself and the Pension Plans following the PBGC's trusteeship, agrees to grant general releases to the PBGC Obligors to the extent set forth more fully in the Settlement Agreement.  Such releases

12

expressly exclude George Hofmeister, his relatives, and affiliates or trusts of George Hofmeister or his family.

i.      The Settlement Agreement becomes effective upon execution of the Settlement Agreement by the Parties, the entry of an order approving the Settlement Agreement by the Bankruptcy Court in each of the Debtors' cases, which order has not been stayed, and resolution of disputes with the DOL through a consent order.

## Relief Requested

17.      By this Motion, TPOP requests the entry of an order, pursuant to sections 105, 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, substantially in the form attached hereto as **Exhibit 2**, approving the Settlement Agreement with the PBGC, effective immediately, and granting such other relief as is just and proper.

## Basis for Relief

18.      As noted above, the Settlement Agreement represents the culmination of lengthy, good faith, and arms' length negotiations between TPOP, the other Debtors, and the PBGC, the key creditor in this case.  The settlement will address the PBGC's claims at all debtor and non-debtor subsidiary levels, including TPOP, and allow distributions to be made to creditors of TPOP under a chapter 11 plan.

19.      Approval of the Settlement Agreement constitutes a reasonable exercise of the Debtors' business judgment under Bankruptcy Code section 363(b).  This provision states that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In interpreting this provision,

courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983. Approval of the Motion should be further authorized pursuant to section 105 of the Bankruptcy Code, which authorizes the Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *See* 11 U.S.C. § 105(a).

20.    The proposed Settlement Agreement also should be approved as a compromise or settlement under Bankruptcy Rule 9019, which provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).

21.    Approving a settlement "is within the discretion of the bankruptcy court." *In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). "In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate." *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005).

22.    In determining whether the proposed settlement is fair and equitable, two principles should guide this Court. First, "[c]ompromises are favored in bankruptcy,"

14

10 Lawrence P. King, *Collier on Bankruptcy*, ¶ 9019.01, at 9019-2 (15th ed. rev. 1997) (citing *In re Sassalos*, 160 B.R. 646, 653 (D. Ore. 1993)), and are "a normal part of the reorganization process." *Protective Committee for Independent Stockholder of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14 (1939)); *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake…."); *Michael*, 183 B.R. at 232 (Bankr. D. Mont. 1995) ("[I]t is also well established that the law favors compromise."); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr.S.D.N.Y 1994); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Court recognizes "the general rule that settlements are favored ….").

23.    Second, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.,* 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991). *See generally In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (Court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis*, 165 B.R. at 123; *In re Tech. for Energy Corp.*, 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); *In re Mobile Air Drilling Co.,*

15

*Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985); 10 COLLIER ON BANKRUPTCY ¶ 9019.02, at 9019-4.

24.     The Third Circuit has enumerated four factors to be considered when evaluating a proposed settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393; *accord In re Nutraquest, Inc.*, 434 F.3d 639 644 (3d Cir. 2006).

25.     TPOP contends that the proposed settlement with the PBGC is a more than reasonable compromise that satisfies the applicable standards and should be approved.

<u>**Argument**</u>

A.     **The Settlement Agreement Satisfies Sections 105 and 363(b)**
       **<u>of the Bankruptcy Code and Should Be Approved</u>**

26.     The proposed Settlement Agreement should be approved by the Court as a proper exercise of TPOP's business judgment under sections 105 and 363(b) of the Bankruptcy Code.

27.     The Settlement Agreement is the result of TPOP's and the other PBGC Obligors' extensive, arms' length negotiations with the PBGC.  The benefits of the settlement from the perspective of this estate are numerous and multi-faceted.  The two critical elements are, first, resolution of the PBGC's claims and pension-related non-bankruptcy litigation that dwarf the other claims and litigation in these proceedings and, second, the implementation of a

16

framework for distributions to administrative claimants and unsecured creditors in this case

pursuant to a chapter 11 plan to be proposed by TPOP.

28.     Under the settlement, the PBGC has agreed to participate in distributions

in TPOP's case in accordance with the priorities set forth in the Bankruptcy Code, meaning that

the PBGC's allowed unsecured claim will share in distributions with other unsecured creditors,

after administrative and priority claims are paid.

29.     The Settlement Agreement also definitively resolves the various disputes

between TPOP and the other PBGC Obligors with the PBGC and avoids further litigation with

the PBGC, the Pension Plans, and the DOL over the many complex issues that have been raised

with respect to the Pension Plans.  Consistent with the settlement, the PBGC has already

withdrawn the Conversion Motion in TPOP's case.

30.     Given the cost and delay of litigation and the benefits of the contemplated

settlement, TPOP firmly believes that the Settlement Agreement is in the best interests of their

respective estates, creditors, and all parties in interest.

**B.      The Settlement Agreement Satisfies the *Martin* Factors
        and Should Be Approved Under Bankruptcy Rule 9019**

31.     For the same reasons noted above, TPOP submits that the terms and

conditions of the Settlement Agreement are fair and reasonable and in the best interests of its

estate for purposes of Bankruptcy Rule 9019.

32.     The PBGC is the single largest creditor in this case, and asserts joint and

several claims against the various other PBGC Obligors.  While TPOP has made significant

17

progress in this case through the consummation of a sale of substantially all of TPOP's operating

assets that has generated significant proceeds, the fact remains that no final resolution of this

case can be accomplished without addressing the PBGC's claims against TPOP.

33.     In terms of the *Martin* factors, the probability of success in litigation and

the complexity of disputes at issue both weigh strongly in favor of the proposed Settlement

Agreement.  As discussed above, the Settlement Agreement avoids further litigation over the

PBGC's claims and the actions initiated by the PBGC and the DOL currently pending in non-

bankruptcy courts.  This litigation and the process to determine the amount of the PBGC's claims

through contested proceedings would be a prohibitively long and costly endeavor.  Absent

settlement, litigation with the PBGC and the DOL could take years to resolve.  The difficulty of

collection also weighs heavily in favor of settlement because it is unclear whether and when

TPOP's estate would be able to distribute assets so long as the PBGC's claims hang over the

estate.

34.     With respect to the paramount interest of creditors, TPOP believes that the

terms and conditions of the Settlement Agreement are in the best interests of creditors because

the settlement provides for not only a resolution of the PBGC's claims, but also a mechanism for

making distributions to unsecured creditors under a chapter 11 plan to be proposed by TPOP.

35.     Therefore, in light of the costs, risks, and delay associated with a

protracted dispute with the PBGC, DOL and Pension Plans, TPOP believes that the terms of the

Settlement Agreement are fair and reasonable, satisfy the standard promulgated by the Third

Circuit governing compromises of controversies under Bankruptcy Rule 9019, and should be approved.

### Notice

36.    Notice of this Motion has been provided by first-class mail to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Committee in the Revstone case; (c) the PBGC; and (d) those parties that have requested service under Bankruptcy Rule 2002.

WHEREFORE, TPOP respectfully requests entry of a final order approving the Settlement Agreement and granting such other and further relief as this Court deems just and proper.

Dated: February 14, 2014

PACHULSKI STANG ZIEHL & JONES LLP

/s/Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com
        crobinson@pszjlaw.com

Counsel to TPOP, LLC

19