IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TPOP, LLC f/k/a METAVATION, LLC,[1] | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | **Hearing Date:  March 5, 2015 at 10:00 a.m.** |
| | ) | **prevailing Eastern time** |

## **DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION**

<div style="border:1px solid">

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Debtor TPOP, LLC f/k/a Metavation, LLC

</div>

Dated:  January 20, 2015

---

[1]  The Debtor in this Chapter 11 Case is TPOP, LLC f/k/a Metavation, LLC and the last four digits of the Debtor's federal tax identification numbers is 5884.  The location of the Debtor's headquarters is Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, AND
    GOVERNING LAW ............................................................................................. 3

    A.     Rules of Interpretation, Computation of Time, and Governing Law ..................... 3

    B.     Defined Terms ..................................................................................... 4

III. TREATMENT OF ADMINISTRATIVE EXPENSES, TAX CLAIMS AND DIP
    FINANCING CLAIMS ....................................................................................... 24

    A.     Introduction ......................................................................................... 24

    B.     DIP Financing Claims ........................................................................... 25

    C.     Administrative Expenses ...................................................................... 25

    D.     Tax Claims ........................................................................................... 26

IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS 27

    A.     Summary .............................................................................................. 27

    B.     Classification and Treatment of Claims and Interests ........................... 28

V. ACCEPTANCE OR REJECTION OF PLAN ...................................................... 33

    A.     Identification of Unimpaired Classes ................................................... 33

    B.     Identification of Impaired Classes ....................................................... 33

    C.     Classes Permitted and Not Permitted to Vote ..................................... 33

    D.     Effect of Non-Voting ........................................................................... 34

    E.     Nonconsensual Confirmation ............................................................... 34

    F.     Postpetition Interest ............................................................................. 35

VI. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 35

    A.     PBGC Settlement ................................................................................. 35

    B.     Continued Corporate Existence and Vesting of Assets ........................ 35

    C.     Corporate Action; Winding Up of Affairs ........................................... 37

    D.     Plan Administrator ............................................................................... 38

    E.     Source of Funding ............................................................................... 41

F.     Retained Rights of Action of the Debtor .................................................... 41

G.    Interests in Affiliates and Subsidiaries .................................................... 42

H.    Payment of Plan Expenses ...................................................................... 42

I.     Ultimate Dissolution of Debtor; Final Decree ........................................ 42

J.     Records .................................................................................................... 43

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............. 44

A.    Rejection of Executory Contracts and Unexpired Leases........................ 44

B.    Bar Date for Rejection Damages ............................................................. 45

VIII. DISTRIBUTIONS AND RELATED MATTERS ................................................. 45

A.    Dates of Distribution............................................................................... 45

B.    Cash Distributions................................................................................... 46

C.    Rounding of Payments............................................................................. 46

D.    Disputed Claims...................................................................................... 46

E.    Undeliverable and Unclaimed Distributions........................................... 47

F.     Compliance with Tax Requirements........................................................ 48

G.    Record Date in Respect to Distributions.................................................. 49

H.    Reserves .................................................................................................. 49

IX. LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES ........ 49

A.    Litigation; Objections to Claims; Objection Deadline........................... 49

B.    Temporary or Permanent Resolution of Disputed Claims...................... 51

C.    Setoffs .................................................................................................... 52

D.    Preservation of Retained Rights of Action ............................................. 52

X. RELEASES, INJUNCTIONS, EXCULPATION AND RELATED PROVISIONS ............. 53

A.    Injunctions.............................................................................................. 53

B.    Exculpation ............................................................................................. 54

C.    Debtor's Release of CRO, Independent Managers, and Other Parties ................ 55

D.    Release by Creditors ............................................................................... 56

DOCS_SF:85015.7 73864/002

    E.      Release by Debtor's Non-Debtor Affiliates of the Released Debtor Parties ........ 57

    F.      No Discharge ........................................................................................ 58

XI. NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL.............. 58

XII. EXEMPTION FROM CERTAIN TRANSFER TAXES ....................................... 58

XIII. RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS ................... 59

    A.      Retention of Jurisdiction ................................................................ 59

    B.      Miscellaneous Matters .................................................................... 62

XIV. CONDITIONS TO EFFECTIVENESS ................................................................. 68

XV. EFFECT OF CONFIRMATION............................................................................. 68

    A.      Binding Effect of Confirmation ...................................................... 68

    B.      Good Faith ......................................................................................... 69

    C.      No Limitations on Effect of Confirmation.......................................... 69

XVI. MODIFICATION OR WITHDRAWAL OF PLAN ........................................... 69

    A.      Modification of Plan ........................................................................ 69

    B.      Withdrawal of Plan ........................................................................... 70

XVII. CONFIRMATION REQUEST ....................................................................... 71

DOCS_SF:85015.7 73864/002

Debtor and debtor in possession TPOP, LLC f/k/a Metavation, LLC hereby proposes the following *Debtor's Chapter 11 Plan of Liquidation* pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* Capitalized terms used in this Plan shall have the meanings set forth in Article II hereof.

## I.

## <u>INTRODUCTION</u>

The Plan is a plan of liquidation which, among other things, provides for a Plan Administrator to liquidate or otherwise dispose of the Estate's remaining assets, if and to the extent such assets were not previously monetized to Cash or otherwise transferred by the Debtor prior to the Effective Date, and to distribute all net proceeds to creditors generally in accordance with the priority scheme under the Bankruptcy Code. The Plan incorporates the Court-approved settlement between the Debtor and its affiliates, the PBGC, and certain creditor constituents of the Debtor's ultimate parent, Revstone Industries, LLC.

Under the Plan, all holders of allowed administrative expenses and allowed priority claims against the Debtor will be paid in full on the Effective Date out of cash on hand (unless, as provided in the Plan, the Debtor elects to provide payment over time as to Allowed Tax Claims). Holders of secured claims will either be paid in cash or will receive the benefit of their collateral.

Holders of allowed non-priority general unsecured claims, including intercompany claims and the PBGC Claims, will receive their respective pro rata share of

available net proceeds of the Debtor's assets (after the payment of or reserve for higher priority claims) after the Effective Date.

Holders of Allowed PBGC Claims will receive the treatment provided by and in accordance with the PBGC Settlement Agreement.

All membership interests in the Debtor, and any associated management rights held by interest holders, will be suspended and of no force and effect as of the Effective Date; interest holders will have a contingent interest in any remaining cash (if any) after all allowed claims and administrative expenses have been paid or otherwise satisfied in full (unless otherwise agreed to by the applicable creditor) in accordance with the Plan.

On and after the Effective Date, a Plan Administrator will act for the Liquidating Debtor in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this Plan, subject to the provisions hereof, and shall, among other powers, wind up the affairs of the Liquidating Debtor; use, manage, sell, abandon and/or otherwise dispose of the remaining property of the Estate; prosecute objections to Claims and any litigation on behalf of the Liquidating Debtor; cause distributions to be made to Creditors pursuant to the Plan; and take such other actions required under or consistent with the Plan.  The initial Plan Administrator will be John C. DiDonato, the Debtor's current Chief Restructuring Officer.

The Disclosure Statement, distributed with this Plan, contains a discussion of the Debtor's history, a summary of the Debtor's assets and liabilities, a summary of what Holders of Claims will receive under the Plan, a discussion of certain alternatives to the Plan, and a

summary of the procedures and voting requirements necessary for Confirmation of the Plan. The

Disclosure Statement is intended to provide Holders of Claims with information sufficient to

enable such Holders to vote on the Plan. All Claim Holders entitled to vote on this Plan are

encouraged to carefully read the Disclosure Statement and this Plan before voting to accept or

reject this Plan. No solicitation materials, other than the Disclosure Statement and related

materials transmitted therewith and approved by the Bankruptcy Court, have been authorized for

use in soliciting acceptance or rejection of this Plan.

## II.

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

**A.**    **Rules of Interpretation, Computation of Time, and Governing Law**

For purposes of the Plan: (a) whenever from the context it is appropriate, each

term, whether stated in the singular or the plural, shall include both the singular and the plural,

and pronouns stated in the masculine, feminine or neuter gender shall include the masculine,

feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release,

indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such

terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to

be Filed, shall mean such document or exhibit, as it may have been or may be amended,

modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections

and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and

"hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions

3

and headings to sections are inserted for convenience of reference only and are not intended to be

a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section

102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan

that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules,

shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules, as the case

may be.

   In computing any period of time prescribed or allowed by the Plan, the provisions

of Bankruptcy Rule 9006(a) shall apply.

   Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal

law is applicable, and subject to the provisions of the Plan or any contract, instrument, release,

indenture or other agreement or document entered into in connection with the Plan, the rights and

obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the laws of the State of Delaware, without giving effect to the principles of

conflict of laws thereof.

**B.**  <u>**Defined Terms**</u>

   The following definitions shall apply to capitalized terms used in the Plan:

   1.  "Administrative Expense" means an unpaid administrative expense of the

kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against the Debtor,

including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estate

of the Debtor, including wages, salaries, or commissions for services rendered after the

commencement of the Chapter 11 Case, (ii) compensation and reimbursement of expenses of

<div align="center">4</div>

professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code and Allowed or otherwise payable pursuant to orders of the Court, and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930, including the fees, if any, due to the United States Trustee.

2.      "Administrative Expense Objection Deadline" has the meaning set forth in Article XIII.B.3 of this Plan.

3.      "Allowed" means with respect to any Claim, Administrative Expense or Interest, except as otherwise provided herein:  (a) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated which has not been superseded by a filed proof of claim and which scheduled Claim has not been amended; (b) a Claim or Administrative Expense that has been allowed by a Final Order; (c) a Claim that is allowed by the Liquidating Debtor, as the case may be, on or after the Effective Date and, if and to the extent necessary, approved by the Bankruptcy Court; (d) a Claim or Administrative Expense that has been timely filed by the applicable Bar Date for which no objection has been filed by the applicable Objection Deadline or the Administrative Expense Objection Deadline; or (e) a Claim or Administrative Expense that is allowed pursuant to the terms of this Plan.

4.      "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under chapter 5 of the Bankruptcy Code or applicable federal or state law and the proceeds thereof.

5

5.      "Ballot" means the form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

6.      "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as now in effect or hereafter amended.

7.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Case or any part thereof.

8.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

9.      "Bar Date" means (i) December 17, 2013, for General Unsecured Claims, (ii) December 17, 2013, for those Administrative Expenses covered by the Bar Date Order (*i.e.*, Administrative Expenses arising between the Petition Date and November 30, 2013, Administrative Expenses under section 503(b)(9) of the Bankruptcy Code, and Administrative Expenses as of November 30, 2013 arising under the Worker Adjustment and Retraining Notification Act and/or any similar state law worker notification statutes), (iii) January 20, 2014, for Claims of Governmental Units, or (iv) such other date as the Bankruptcy Court may set by Order for other Administrative Expenses or any other Claims not covered in the Bar Date Order.

6

10.     "Bar Date Order" means the Order of the Bankruptcy Court at docket number 268 in the Chapter 11 Case.

11.     "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

12.     "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

13.     "Chapter 11 Case" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date and pending before the Bankruptcy Court.

14.     "Chrysler" means Chrysler Group, LLC and any successor(s) thereto or assign(s) thereof.

15.     "Claim" means any claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code that is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

16.     "Claims Agent" means Rust Consulting/Omni Bankruptcy in its capacity as claims agent for the Debtor.

17.     "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

18.     "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

19.     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

20.     "Confirmation Hearing" means the hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

21.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor.

22.     "Consummation" means substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

23.     "Creditor" means any Person who is the Holder of a Claim or an Administrative Expense against the Debtor.

24.     "Creditor-Releasor" has the meaning set forth in Article X.E of this Plan.

25.     "Debtor" means TPOP, LLC f/k/a Metavation, LLC, either in its capacity as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Case or otherwise from and after the Effective Date.

26.     "Debtor Retained Professionals" has the meaning set forth in Article X.B of this Plan.

8

27.    "DIP Financing/Cash Collateral Orders" means the Interim DIP Financing/Cash Collateral Order and the Final DIP Financing/Cash Collateral Order.

28.    "DIP Financing Claims" means any Secured Claims and/or Administrative Expenses, including any superpriority claims, of the DIP Lenders against the Debtor under or evidenced by the DIP Financing/Cash Collateral Orders and the DIP Loan Documents, if and to the extent that such Secured Claims and Administrative Expenses have not been paid, forgiven, released or otherwise satisfied prior to the Effective Date.  The Debtor reserves any and all rights to dispute or otherwise challenge the DIP Financing Claims on any available grounds, or to assert affirmative claims against any appropriate parties.

29.    "DIP Lenders" means Wells, Chrysler, GM and any other postpetition lender to the Debtor under the DIP Financing/Cash Collateral Orders and the DIP Loan Documents.

30.    "DIP Loan Documents" means that certain *Ratification and Amendment Agreement* dated as of July 22, 2013 by and among the Debtor, certain non-debtor affiliates as co-borrowers and guarantors, Wells Fargo Capital Finance, N.A., as lender and as agent for each lender party thereto, including, without limitation, the "Existing Junior Participants" and the "DIP Junior Participants" (as these terms are defined in the aforementioned Ratification and Amendment Agreement), together with the Prepetition Credit Agreement and other documents amended by the aforementioned Ratification and Amendment Agreement, as set forth therein, and as further amended, supplemented, restated or otherwise modified from time to time in accordance therewith, and together with the other documents, agreements and instruments

9

delivered pursuant thereto or executed or filed in connection therewith, as the same may be amended, supplemented, restated or otherwise modified from time to time, all of which documents are subject to the DIP Financing/Cash Collateral Orders.

31.    "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that is either a Disputed Claim, or it is determined that the Claim, Interest, Administrative Expense, or portion thereof is not allowed under the Bankruptcy Code by any of a Final Order, the Plan, or a stipulation or settlement with the Debtor.

32.    "Disclosure Statement" means the *Disclosure Statement in Respect of Debtor's Chapter 11 Plan of Liquidation*, as it may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

33.    "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection filed by the Objection Deadline or the Administrative Expense Objection Deadline, as applicable, or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest or Administrative Expense is on appeal; (ii) a Claim, on account of which a proof of Claim was filed or which has been otherwise asserted, (a) for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a lower amount, with a differing classification, or as disputed, contingent, or unliquidated, and (b) which has not been allowed either by a Final Order, the Plan, or under a stipulation or settlement with the Debtor or the

10

Liquidating Debtor; (iii) any contingent or unliquidated Claim; or (iv) a Claim that is not Allowed.

34.    "Distributable Assets" means, except as otherwise noted below, any and all real or personal property of the Debtor of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash (including Cash that may be upstreamed or paid to the Debtor or the Liquidating Debtor by the Debtor's subsidiaries and other corporate affiliates, derived from the sale or other disposition of such entities' assets), deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, books and records, any other general intangibles of the Debtor, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estate within the scope of section 541 of the Bankruptcy Code.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any property that has been abandoned by the Estate pursuant to a Final Order of the Bankruptcy Court.

35.    "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

36.    "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

11

37.     "Equity Security" means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

38.     "Estate" means the estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

39.     "Federal Judgment Rate" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

40.     "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

41.     "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Case or, in the case of a proof of claim, delivered to the Claims Agent.

42.     "Final DIP Financing/Cash Collateral Order" means the *Final Order (A) Authorizing Debtor to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtor to Enter into Agreements with Wells Fargo Capital Finance, LLC, as Agent* [Docket No. 185].

43.     "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified,

supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing

or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari

is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally

decided and no further appeal or petition for review, rehearing or certiorari can be taken or

granted.

44.    "Final Resolution Date" means the date on which all Disputed Claims of

Creditors shall have been resolved by Final Order or otherwise finally determined.

45.    "Final Sale Support Agreement" means the *Final Order Pursuant to*

*Sections 105, 362 & 363 of the Bankruptcy Code and Bankruptcy Rule 9019 (A) Approving*

*Automotive Sale Transactions Support Agreement and (B) Modifying the Automatic Stay* [Docket

No. 184].

46.    "General Unsecured Claim" means a Claim against the Debtor other than

(a) an Administrative Expense, (b) a Tax Claim, (c) a Priority Non-Tax Claim, (d) a DIP

Financing Claim, (e) a Prepetition Credit Agreement Secured Claim, (f) a Miscellaneous Secured

Claim, and (g) a PBGC Claim.  For the avoidance of doubt, a General Unsecured Claim includes

any prepetition intercompany claims asserted against the Debtor by any affiliates of the

Debtor."George Hofmeister Parties" means (i) George Hofmeister, (ii) George Hofmeister's

immediate and extended family members, (iii) The Megan G. Hofmeister Irrevocable Trust, (iv)

The Scott R. Hofmeister Irrevocable Trust, (v) The Jamie S. Hofmeister Irrevocable Trust, (vi)

Ascalon Enterprises, LLC, and (vii) each of the foregoing party's respective trustees, managers,

affiliates, successors, or assigns (other than the Debtor and its direct and indirect subsidiaries).

13

49.     "GM" means General Motors, LLC and any successor(s) thereto or assign(s) thereof.

50.     "GM Capex Loan" means that certain capital expenditure loan made by GM to the Debtor on or about January 11, 2013, which was secured by certain assets of the Debtor pursuant to the applicable loan/security agreements and related documents.

51.     "GM Capex Loan Secured Claim" means any Secured Claim of GM against the Debtor arising under or relating to the GM Capex Loan, subject to the terms of the DIP Financing/Cash Collateral Orders, the DIP Loan Documents, the Postpetition Sale Support Documents and/or the Sale Support Orders, as applicable, to the extent that such Secured Claims have not been paid, forgiven, released or otherwise satisfied prior to the Effective Date.

52.     "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

53.     "Holder" means the beneficial owner of any Claim, Interest, or Administrative Expense.

54.     "Huron" means Huron Consulting Services LLC.

55.     "Huron Parties" means those employees and other personnel of Huron, who have been or may be provided by Huron prior to the Effective Date to provide services and support to the Debtor, including, without limitation, John C. DiDonato in his capacity as Chief Restructuring Officer of the Debtor, Laura A. Marcero in her capacity as Deputy Chief Restructuring Officer, James M. Lukenda as Deputy Chief Restructuring Officer, Brian M.

14

Linscott as Interim Chief Financial Officer, Geoffrey S. Frankel as Vice President, John M.

Owens as Interim Treasurer, and John A. Hemingway as Interim Assistant Treasurer.

56.    "Impaired" has the meaning set forth in section 1124 of the Bankruptcy

Code.

57.    "Independent Managers" has the meaning set forth in Article X.B of this

Plan.

58.    "Interest" means (i) any Equity Security, including all membership

interests, shares or similar securities, whether or not transferable or denominated "stock" and

whether issued, unissued, authorized or outstanding; (ii) any warrant, option, or contractual right

to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising

with respect thereto; and (iii) any similar interest in the Debtor.

59.    "Interim DIP Financing/Cash Collateral Order" means the *Order (A)*

*Authorizing Debtor to Obtain Interim Post-Petition Financing and Grant Security Interests and*

*Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B)*

*Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (C) Authorizing Debtor to Enter into*

*Agreements with Wells Fargo Capital Finance, LLC, as Agent; and (D) Scheduling a Final*

*Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 50], subject to the terms of the Final

DIP Financing/Cash Collateral Order.

60.    "Interim Sale Support Agreement Order" means the *Interim Order*

*Pursuant to Sections 105, 362 & 363 of the Bankruptcy Code and Bankruptcy Rule 9019 (A)*

*Approving Automotive Sale Transactions Support Agreement, (B) Modifying the Automatic Stay, and (C) Scheduling a Final Hearing* [Docket No. 49]."IRS" means the Internal Revenue Service.

63.    "Junior Participation Secured Claims" means any Secured Claims of Prepetition Junior Participants against the Debtor under the Prepetition Loan Documents, subject to the terms of the DIP Financing/Cash Collateral Orders, the DIP Loan Documents, the Postpetition Sale Support Documents and/or the Sale Support Orders, as applicable, to the extent that such Secured Claims have not been paid, forgiven, released or otherwise satisfied prior to the Effective Date.

64.    "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

65.    "Liquidating Debtor" means the Debtor on and after the Effective Date.

66.    "Miscellaneous Secured Claim" means any Secured Claim other than a DIP Financing Claim or a Prepetition Credit Agreement Secured Claim.

67.    "Net Distributable Assets" means the Distributable Assets of the Debtor from and after the Effective Date, once such assets have been reduced to Cash, net of amounts necessary to fund the payment of Allowed Administrative Expenses, Tax Claims, Priority Non-Tax Claims, Miscellaneous Secured Claims, DIP Financing Claims and Prepetition Credit Agreement Secured Claims, and Plan Expenses of the Debtor and/or reserves established for any of the foregoing, and excluding those Distributable Assets of the Debtor that are subject to any Liens until such time that such Liens are satisfied or otherwise addressed in full.

16

68.    "Objection Deadline" means the deadline to object to Claims and/or Interests specified in Article IX.A of the Plan, as may be extended pursuant thereto.

69.    "PBGC" means the Pension Benefit Guaranty Corporation, and any successors thereto or assigns thereof.

70.    "PBGC Claims" means any Claim asserted by PBGC against the Debtor in accordance with the terms of the PBGC Settlement Agreement.  The PBGC Claims consist of a non-priority, unsecured claim in the amount of $95 million against the Debtor.

71.    "PBGC Modification Agreement" means that certain *Modification of PBGC Settlement Agreement and Global Resolution of Disputes* dated as of May 1, 2014, between the Debtor and its affiliates, the PBGC, the Official Committee of Unsecured Creditors of Revstone Industries, LLC, and Boston Finance Group, LLC.

72.    "PBGC Settlement Agreement" means that certain *Settlement Agreement* dated as of February 11, 2014 between the Debtor, certain affiliates of the Debtor, and the PBGC, as modified by the PBGC Modification Agreement, which was approved by the Bankruptcy Court pursuant to the PBGC Settlement Order.

73.    "PBGC Settlement Order" means the order of the Bankruptcy Court dated May 9, 2014 at docket number 485, approving the PBGC Settlement Agreement.

74.    "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

17

75.    "Petition Date" means July 22, 2013, the date on which the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

76.    "Plan" means this *Debtor's Chapter 11 Plan of Liquidation*, as it may be amended or modified from time to time.

77.    "Plan Administrator" means John C. DiDonato, who currently serves as the Debtor's Chief Restructuring Officer, or any duly selected successor.

78.    "Plan Expenses" means the expenses incurred or payable by the Liquidating Debtor following the Effective Date (including the reasonable fees and costs of attorneys and other professionals) relating to implementation of the Plan, for the purpose of (i) prosecuting the Retained Rights of Action, (ii) resolving Claims and effectuating distributions to Creditors under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Case, or (iv) undertaking any other matter relating to the Plan.  Reserves for Plan Expenses may be created in the discretion of the Plan Administrator.

79.    "Plan Supplement" means the supplement to the Plan to be Filed by the Debtor with the Bankruptcy Court, which supplement shall contain forms of certain substantially final documents required for the implementation of the Plan, no later than ten (10) days prior to the Confirmation Hearing.

80.    "Post-Effective Date Service List" means a service list comprised of the Plan Administrator and his or her counsel, the Office of the United States Trustee, and any other party that specifically requests in writing that the Plan Administrator add such party's name to the list.

18

81.    "Postpetition Sale Support Agreement" means that certain *Automotive Sale Transactions Support Agreement* by and among the Debtor, Revstone, certain of Revstone's non-debtor affiliates, GM and Chrysler, together with that certain *Omnibus Access and Security Agreement* by and among the Debtor, certain non-debtor affiliates, GM, and Chrysler, with all such documents subject to the Sale Support Agreement Orders.

82.    "Postpetition Sale Support Claims" means any Administrative Expenses of GM and Chrysler arising under or relating to the Postpetition Sale Support Agreement and the Sale Support Agreement Orders, to the extent that such Claims have not been paid, forgiven, released or otherwise satisfied prior to the Effective Date.  The Debtor reserves any and all rights to dispute or otherwise challenge the Postpetition Sale Support Claims on any available grounds, or to assert affirmative claims against any appropriate parties.

83.    "Prepetition Credit Agreement" means the *Credit Agreement*, dated as of July 23, 2010, by and among the Debtor, certain affiliates as borrowers and/or guarantors, Wells Fargo Capital Finance, N.A., as lender and as agent for each lender party thereto, as amended and otherwise as in effect immediately prior to the Petition Date.

84.    "Prepetition Credit Agreement Secured Claims" means any Secured Claims under the Prepetition Loan Documents, including any Junior Participation Secured Claims and GM Capex Loan Secured Claims, subject to the terms of the DIP Financing/Cash Collateral Orders, the DIP Loan Documents, the Postpetition Sale Support Documents and/or the Sale Support Orders, as applicable, to the extent that such Secured Claims have not been paid, forgiven, released or otherwise satisfied prior to the Effective Date.  The Debtor reserves any and

19

all rights to dispute or otherwise challenge the Prepetition Credit Agreement Secured Claims on any available grounds, or to assert affirmative claims against any appropriate parties.

85.     "Prepetition Junior Participants" means Chrysler, GM, and Ford Motor Company, and their respective successors and assigns.

86.     "Prepetition Junior Participation Agreement" means the *Amended and Restated Junior Participation Agreement*, dated as of April 12, 2013, among Wells and the Prepetition Junior Participants, as amended and otherwise as in effect immediately prior to the Petition Date.

87.     "Prepetition Loan Documents" means the "Loan Documents" as defined in the Prepetition Credit Agreement, including, without limitation, the Prepetition Credit Agreement, the Prepetition Junior Participation Agreement, and the *Security Agreement* dated as of July 23, 2010 by and among by and among the Debtor, certain affiliates as borrowers and/or guarantors, Wells as agent, as in effect immediately prior to the Petition Date.

88.     "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

89.     "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be distributed on account of a particular Claim or particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the same as the ratio of (b) (i) the amount of property to be distributed on account of all Claims or groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims sharing in such distribution.

90.    "Professional Fee Claim" shall mean an Administrative Expense of a Professional Person for compensation for services rendered and reimbursement of costs, expenses or other charges incurred on or after the Petition Date and on or before the Effective Date.

91.    "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code.

92.    "Record Date" means the Effective Date.

93.    "Released Parties" has the meaning set forth in Article X.C of this Plan.

94.    "Releasor Affiliates" has the meaning set forth in Article X.E of this Plan.

95.    "Released Debtor Parties" has the meaning set forth in Article X.D of this Plan.

96.    "Restructuring Committee" means the Restructuring Committee of the Board of Managers of Revstone Transportation, currently comprised of James B. Shein and Richard E. Newsted, who are the two independent managers of the Board of Managers of Revstone Transportation.

97.    "Retained Rights of Action" means all Rights of Action belonging to the Debtor as of the Effective Date, including, without limitation, Avoidance Claims (including those disclosed in the Schedules), but excluding those Rights of Action specifically released under the Plan.  The Retained Rights of Action include, without limitation, any and all rights of the Debtor to pursue any Rights of Action against third parties disclosed or referenced in the Schedules.

98.     "Revstone" means Revstone Industries, LLC, the debtor and debtor in possession in Case No. 12-13262 (BLS) pending before the Bankruptcy Court.

99.     "Revstone Transportation" means Revstone Transportation, LLC, the sole member of the Debtor.

100.    "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action (including, without limitation, Avoidance Claims), suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person, and any proceeds thereof, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or Interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all claims or rights under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553, all fraudulent-conveyance and fraudulent-transfer laws, all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against affiliates, insiders and/or any other third parties.

22

101.    "Sale Support Agreement Orders" means the Interim Sale Support

Agreement Order and the Final Sale Support Agreement Order.

102.    "Schedules" means the schedules of assets and liabilities and statement of

financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule

1007, as they have been or may be amended from time to time.

103.    "Secured Claim" means any Claim of any Person (i) that is secured by a

Lien on property in which the Debtor or its Estate has an interest, which Lien is valid, perfected

and enforceable and not subject to avoidance under applicable law or by reason of a Final Order

but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section

506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate

securing such Claim or (ii) to the extent that such Person has a valid right of setoff under section

553 of the Bankruptcy Code.

104.    "Tax" means any tax, charge, fee, levy, impost or other assessment by any

federal, state, local or foreign taxing authority, including, without limitation, income, excise,

property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

additions attributable to, imposed on or with respect to such assessments.

105.    "Tax Claim" means any Claim for any Tax to the extent that it is entitled

to priority in payment under section 507(a)(8) of the Bankruptcy Code.

106.    "Timely Filed" means, with respect to a Claim, Interest, or Administrative

Expense, that a proof of such Claim or Interest or request for payment of such Administrative

Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such

applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule

3003(c)(3) and a Final Order (including the Bar Date Order), or has otherwise been deemed

timely filed by a Final Order of the Bankruptcy Court.

107.    "Unclaimed Property" means all Cash deemed to be "Unclaimed

Property" pursuant to Article VIII.E of the Plan.

108.    "Unimpaired" means, with respect to a Class of Claims or Interests, a

Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the

Bankruptcy Code.

109.    "Wells" means Wells Fargo Capital Finance, LLC, and any successor(s)

thereto or assign(s) thereof.

## III.
## TREATMENT OF ADMINISTRATIVE EXPENSES, TAX CLAIMS AND DIP FINANCING CLAIMS

**A.    <u>Introduction</u>**

As required by the Bankruptcy Code, Administrative Expenses and Tax Claims,

together with DIP Financing Claims, are not placed into voting Classes.  Instead, they are left

unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment

specified by statute or agreement of the parties.  All postpetition payments by or on behalf of the

Debtor in respect of an Administrative Expense, Tax Claim or DIP Financing Claim shall either

reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of

any Allowed amount thereof; provided that the method of application that is most beneficial to the Debtor's Estate shall be employed.

## B.    DIP Financing Claims

Except to the extent the DIP Lenders agree to less favorable treatment, any and all unpaid DIP Financing Claims (to the extent Allowed) shall be paid in full or otherwise satisfied by the earlier of (i) the Effective Date and (ii) such other maturity date(s) as set forth in the DIP Loan Documents and the DIP Financing/Cash Collateral Orders.  The DIP Financing Claims may be paid out of any Cash in which the DIP Lenders hold a security interest pursuant to the DIP Loan Documents and the DIP Financing/Cash Collateral Orders, including the Segregated Account (as defined in the Disclosure Statement), to the extent GM has Allowed DIP Financing Claims.  The Debtor reserves any and all rights to dispute or otherwise challenge the DIP Financing Claims on any available grounds, or to assert affirmative claims against any appropriate parties.

## C.    Administrative Expenses

Under the Plan, on or as soon as practicable after the Effective Date (to the extent payable on the Effective Date), each Holder of an Allowed Administrative Expense against the Debtor will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash from the Liquidating Debtor equal to the full amount of such Allowed Administrative Expense, unless such Holder and the Debtor have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that, unless otherwise agreed by the Liquidating Debtor, (a) requests for payment of all

Administrative Expenses (including Postpetition Sale Support Claims) must be Filed and served

as described in Article XIII.B.3 of the Plan, and (b) certain different and additional requirements

shall apply to the Administrative Expenses of Professional Persons as set forth in Article

XIII.B.2 and 3 of the Plan; provided further, however, that no interest or penalties of any nature

shall be paid in respect of an Allowed Administrative Expense.

Notwithstanding any of the foregoing, if an Administrative Expense represents an

obligation incurred in the ordinary course of business, such Administrative Expense will be paid

in the ordinary course by the Liquidating Debtor in accordance with the terms of the particular

transaction and/or applicable agreement.

## D.    **Tax Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be

classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as

practicable after the Effective Date, each Holder of an Allowed Tax Claim against the Debtor

will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Tax

Claim, Cash from the Liquidating Debtor equal to the portion of the Allowed Tax Claim due and

payable on or prior to the Effective Date according to applicable non-bankruptcy law; provided,

however, the Liquidating Debtor may in its discretion elect to make, pursuant to section

1129(a)(9)(C), regular quarterly installment payments in Cash of a total value, as of the Effective

Date, equal to the amount of the Allowed Tax Claim over a period ending not later than five

years after the Petition Date together with interest for the period after the Effective Date at the

rate determined under non-bankruptcy law as of the calendar month in which the Plan is

confirmed, subject at the sole option of the Liquidating Debtor to prepay the entire amount of the

Allowed Tax Claim.  Any Allowed Tax Claim (or portion thereof) against the Debtor not yet due

and payable as of the Effective Date will be paid by the Liquidating Debtor no later than when

due and payable under applicable non-bankruptcy law without regard to the commencement of

the Chapter 11 Case; provided that upon request of the Liquidating Debtor, the Bankruptcy Court

shall determine the amount of any Disputed Claim for, or issues pertaining to, a Tax.  Any

Holder of a Tax Claim may agree to accept different treatment as to which the Liquidating

Debtor and such Holder have agreed upon in writing.

<div align="center">

**IV.**

**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

</div>

**A.**    **Summary**

  The categories of Claims and Interests listed below classify Claims and Interests

for all purposes, including voting, confirmation and distribution pursuant to the Plan and

pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is

classified in a particular Class only to the extent that the Claim or Interest qualifies within the

description of that Class and is classified in other Classes only to the extent that any remainder of

the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest

is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed

Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied

prior to the Effective Date.

<div align="center">27</div>

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of Claims and/or Interests as set forth below.  Administrative Expenses and Tax Claims, together with DIP Financing Claims, have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.

**B.      Classification and Treatment of Claims and Interests**

The treatment of each Class of Claims and/or Interests is set forth below.  Unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Debtor shall determine whether a postpetition payment by or on behalf of the Estate in respect of a Claim either (x) shall reduce the Allowed amount thereof or (y) shall reduce the amount to be paid under the Plan in respect of any Allowed amount thereof by considering which method is most advantageous to the Debtor's Estate.

**1.      Class 1 – Priority Non-Tax Claims**

a.      <u>Classification</u>:  Class 1 consists of all Priority Non-Tax Claims against the Debtor.

b.      <u>Treatment</u>:  At the election of the Liquidating Debtor, the Holder of each Priority Non-Tax Claim against the Debtor shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, (a) a Cash payment from the Liquidating Debtor equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtor or Liquidating Debtor.

c.      Impairment/Voting:  Class 1 is Unimpaired.  Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.      **Class 2 – Prepetition Credit Agreement Secured Claims**

a.      Classification:  Class 2 consists of any Prepetition Credit Agreement Secured Claims against the Debtor that are treated as prepetition Claims.

b.      Treatment:  At the election of the Liquidating Debtor, the Holder of each Prepetition Credit Agreement Secured Claim against the Debtor shall receive, in full satisfaction, settlement, release, and extinguishment of such Prepetition Credit Agreement Secured Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, (a) a Cash payment from the Liquidating Debtor equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtor or Liquidating Debtor.  The Debtor reserves any and all rights to dispute or otherwise challenge the Prepetition Credit Agreement Secured Claims on any available grounds, or to assert affirmative claims against any appropriate parties.

c.      Impairment/Voting:  Class 2 is Unimpaired.  Class 2 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.        <u>**Class 3 – Miscellaneous Secured Claims**</u>

a.        <u>Classification</u>:  Class 3 consists of all Miscellaneous Secured Claims (if any such Claims exist) against the Debtor.  Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of the Debtor different from that securing any other Miscellaneous Secured Claim, shall be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.        <u>Treatment</u>:  Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtor, in whole or in part, prior to the Effective Date, on the Effective Date, at the option of the Debtor, (i) each Allowed Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) each Holder of an Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Miscellaneous Secured Claim, (y) surrender of the collateral securing such Claim or (z) such other treatment as may be agreed to by the Holder of such Claim and the Debtor or Liquidating Debtor.  Prior to the Confirmation Hearing, the Debtor shall inform each Holder of a Miscellaneous Secured Claim if such Creditor's Secured Claim shall be treated as Unimpaired under the Plan.

c.      <u>Impairment/Voting</u>:  Class 3 is Unimpaired.  Class 3 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

### 4.      <u>Class 4 – General Unsecured Claims</u>

a.      <u>Classification</u>:  Class 4 consists of all General Unsecured Claims against the Debtor.

b.      <u>Treatment</u>:  On or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, as the sole distribution by the Liquidating Debtor or its Estate under this Plan on account of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of all Allowed General Unsecured Claims and all Allowed PBGC Claims) of the Net Distributable Assets of the Debtor up to the full Allowed amount of such General Unsecured Claim.  Holders of Allowed General Unsecured Claims will not be entitled to the payment of postpetition interest under the Plan, unless excess Net Distributable Assets remain after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.  In such case of excess Net Distributable Assets, then Holders of Allowed General Unsecured Claims shall receive on a Pro Rata basis (calculated as a percentage of all Allowed General Unsecured Claims and all Allowed PBGC Claims) postpetition interest at the Federal Judgment Rate, to the extent that sufficient excess Net Distributable Assets (once all liquidated to Cash) exist and as required under the Bankruptcy Code.

c.    <u>Impairment/Voting</u>:  Class 4 is Impaired.  Holders of Claims in Class 4 are therefore entitled to vote to accept or reject the Plan.

     5.    <u>**Class 5 – PBGC Claims**</u>

a.    <u>Classification</u>:  Class 5 consists of all PBGC Claims against the Debtor.

b.    <u>Treatment</u>:  On or as soon as practicable after the Effective Date, each Holder of an Allowed PBGC Claim shall receive, as the sole distribution by the Liquidating Debtor or its Estate under this Plan on account of such PBGC Claim, the treatment provided by the PBGC Settlement Agreement.  Specifically, subject to the terms of the PBGC settlement Agreement, each Holder of an Allowed PBGC Claim shall share on a Pro Rata basis in the distributions to be made to Holders of Allowed General Unsecured Claims in Class 4.

c.    <u>Impairment/Voting</u>:  Class 5 is Impaired.  Holders of Claims in Class 5 are therefore entitled to vote to accept or reject the Plan.

     6.    <u>**Class 6 – Interests in the Debtor**</u>

a.    <u>Classification</u>:  Class 6 consists of all Interests in the Debtor.

b.    <u>Treatment</u>:  The Holders of Interests shall receive no distributions under the Plan, and on the Effective Date, all Interests shall be deemed suspended.  As of the Effective Date, the Holders of Interests shall receive a contingent interest in the Net Distributable Assets remaining, if any, after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.  For the avoidance of doubt, no distribution of Net Distributable

32

Assets (once all liquidated to Cash) shall be made to Holders of Interests until and unless all Holders of Allowed General Unsecured Claims receive payment in full of such Allowed Claims, plus all accrued postpetition interest at the Federal Judgment Rate.

        c.      <u>Impairment/Voting</u>:  Class 6 is Impaired.  Holders of Claims in Class 6 are deemed to reject the Plan.

<h1 style="text-align:center">V.</h1>

<h2 style="text-align:center"><u>ACCEPTANCE OR REJECTION OF PLAN</u></h2>

**A.**      **<u>Identification of Unimpaired Classes</u>**

The following Classes of Claims are Unimpaired under the Plan:

Class 1 – Priority Non-Tax Claims

Class 2 - Prepetition Credit Agreement Secured Claims

Class 3 – Miscellaneous Secured Claims

**B.**      **<u>Identification of Impaired Classes</u>**

The following Classes of Claims and Interests are Impaired under the Plan:

Class 4 – General Unsecured Claims

Class 5 – PBGC Claims

Class 6 – Interests in the Debtor

**C.**      **<u>Classes Permitted and Not Permitted to Vote</u>**

Classes 1, 2, and 3 are Unimpaired.  Holders of Claims in these Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.  Classes 4 through 6

<div style="text-align:center">33</div>

are Impaired.  Holders of Claims in Classes 4 and 5 are permitted to vote to accept or reject the Plan.  Holders of Interests in Class 6 are deemed to reject the Plan.  The Debtor reserves all of its rights with respect to all Claims classified by the Debtor.

An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**D.      Effect of Non-Voting**

If no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtor may seek to have the Plan deemed **accepted** by the Holders of such Claims in such Class for purposes of section 1129(b) of the Bankruptcy Code.

**E.      Nonconsensual Confirmation**

In the event any Class of Claims or Interests votes to reject the Plan and given the deemed rejection of the Plan by the Holders of Interests, the Debtor requests that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

34

**F.**     **Postpetition Interest**

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the

Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent

that the Holder of a Claim has the benefit of a Lien on assets that exceed the value of such Claim

or the Plan expressly provides for postpetition interest on account of such Claim.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     **PBGC Settlement**

The provisions of the Plan incorporate the terms of the PBGC Settlement

Agreement and the PBGC Settlement Order pursuant to section 1123(b)(3)(A) of the Bankruptcy

Code.  From and after the Effective Date, each and every provision of the PBGC Settlement

Agreement shall be binding on the Liquidating Debtor.

**B.**     **Continued Corporate Existence and Vesting of Assets**

On and after the Effective Date, subject to the requirements of the Plan, the

Liquidating Debtor will continue to exist as a separate limited liability company and shall retain

all of the powers of limited liability companies under applicable non-bankruptcy law, and

without prejudice to any right to amend its operating agreement, dissolve, merge or convert into

another form of business entity, or to alter or terminate its existence.  The existing membership

interests of the Debtor shall be deemed to be held by the Plan Administrator, and the Plan

Administrator shall be deemed to have been admitted as the sole member of the Debtor under

applicable nonbankruptcy law and shall be authorized to exercise all of the rights and powers of

a sole member as provided by the Plan.  Further, the Debtor's operating agreement shall be

deemed to include a provision prohibiting the issuance of nonvoting equity securities and such

other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Except as otherwise provided in the Plan, on and after the Effective Date, all

Distributable Assets and property of the Debtor and its Estate, including any interests in

subsidiaries and affiliates and any Retained Rights of Action of the Debtor, will vest in the

Liquidating Debtor free and clear of all Claims, Liens, charges, other encumbrances and

Interests.  Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any

provision of applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall

be continued as a limited liability company following the Effective Date subject to the terms of

the Plan.

On and after the Effective Date, subject to the requirements of the Plan, the

Liquidating Debtor shall be permitted to conduct its business, reconcile Claims, use and dispose

of assets, prosecute litigation, and otherwise take any and all actions reasonably necessary to

implement the Plan without supervision by the Bankruptcy Court and free of any restrictions

under the Bankruptcy Code or the Bankruptcy Rules.  The Liquidating Debtor shall be

authorized, without limitation, to use and dispose of the Distributable Assets of the Debtor and

its Estate, to investigate and pursue any Retained Rights of Action of the Debtor as the

representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code,

to acquire and dispose of other property, and to otherwise administer its affairs.

C.      **Corporate Action; Winding Up of Affairs**

On the Effective Date, the matters under the Plan involving or requiring limited liability company action of the Debtor, including but not limited to actions requiring a vote or other approval of the board of managers, members or other equity holders of the Debtor or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members or officers of the Debtor.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing member of the Board of Managers and officers of the Debtor will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Plan Administrator shall be deemed the sole manager, officer and representative of the Liquidating Debtor to exercise the rights, power and authority of the Liquidating Debtor under applicable provisions of this Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order shall act as an order modifying the Debtor's operating agreement such that the provisions of this Plan can be effectuated.  The Plan shall be administered by the Plan Administrator, and all actions taken thereunder in the name of the Liquidating Debtor shall be taken through the Plan Administrator. All corporate governance activities of the Liquidating Debtor shall be exercised by the Plan Administrator in his or her discretion, subject to the terms of this Plan.

DOCS_SF:85015.7 73864/002

Following the Confirmation Date, the Debtor shall not engage in any business activities or take any actions, except those necessary to (i) effectuate the Plan and (ii) wind up the affairs of the Debtor as soon as reasonably practicable.  On and after the Effective Date, the Plan Administrator may, in the name of the Liquidating Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay, from the proceeds of Distributable Assets, the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Administrative Expenses.

From and after the Effective Date, (i) the Debtor, for all purposes, shall be deemed to have withdrawn its business operations from any state in which it was previously conducting or is registered or licensed to conduct its business operations, and the Debtor shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtor shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

D.    **Plan Administrator**

On the Effective Date, the Plan Administrator shall begin acting for the Liquidating Debtor in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation implementing such liquidation and wind-down as contemplated under this

38

Plan, subject to the provisions hereof.  The Plan Administrator shall serve in such capacity

through the earlier of the date the Debtor is dissolved in accordance with this Plan and the date

such Plan Administrator resigns, is terminated or otherwise unable to serve; provided, however,

that, any successor Plan Administrator appointed pursuant to the Plan, shall serve in such

capacities after the effective date of such persons appointment as Plan Administrator.

   The qualifications and proposed compensation of and other disclosures regarding

the Plan Administrator shall be set forth in a notice to be Filed with the Court as part of the Plan

Supplement; such compensation may be paid from the Liquidating Debtor's Cash on hand

without further notice or order of the Bankruptcy Court.  Further, the Plan Administrator shall be

entitled to reimbursement, from the Liquidating Debtor's Cash on hand, for his or her actual,

reasonable, and necessary expenses incurred in connection with the performance of his or her

duties, without the need for further notice or Bankruptcy Court approval.  All distributions to be

made to Creditors and, if applicable, Interest Holders under the Plan shall be made by the Plan

Administrator (or his or her designated agent).  The Plan Administrator shall deposit and hold all

Cash in trust for the benefit of Creditors (including Professional Persons) and Holders of

Interests receiving distributions under the Plan.  The duties and powers of the Plan Administrator

shall include, without limitation, the following (without need of further Court approval):

   (i) To exercise all power and authority that may be exercised, to commence

all proceedings (including the power to continue any actions and proceedings that may have been

commenced by the Debtor prior to the Effective Date) that may be commenced, and to take all

actions that may be taken by any officer or manager of the Liquidating Debtor with like effect as

<div align="center">39</div>

if authorized, exercised, and taken by unanimous action of such officers and managers, including consummating the Plan and all transfers thereunder on behalf of the Liquidating Debtor;

(ii)    To wind up the affairs of the Liquidating Debtor and any or all of its subsidiaries and affiliates to the extent necessary as expeditiously as reasonably possible;

(iii)    To maintain all accounts, make distributions, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Liquidating Debtor;

(iv)    To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Distributable Assets, for the purpose of liquidating all remaining property of the Estate, making distributions and fully consummating this Plan Stipulation;

(v)    To take all steps necessary to terminate the corporate existence of the Debtor;

(vi)    To prosecute objections to Claims and Administrative Expenses and compromise or settle any Claims and Administrative Expenses (disputed or otherwise);

(vii)    To prosecute any and all Retained Rights of Action and compromise or settle any Retained Rights of Action;

(viii)    To prepare and file tax returns to the extent required by law;

(ix)    To employ and compensate any and all such professionals and agents as the Plan Administrator, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan without further order of the Bankruptcy Court; and

40

(x)    To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Case.

The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation, removal, death, or incapacity of the Plan Administrator, the Bankruptcy Court shall appoint another Person to become Plan Administrator, with notice thereof provided to the Post-Effective Date Service List.  The successor Plan Administrator without any further act shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

## E.    Source of Funding

The source of all distributions and payments under this Plan will be the Distributable Assets and the proceeds thereof, including, without limitation, the Debtor's Cash on hand and proceeds from the sale or other disposition of the remaining property of the Debtor and prosecution of Retained Rights of Action.

## F.    Retained Rights of Action of the Debtor

Unless a Right of Action of the Debtor (including the right to object to any Claim asserted against the Estate) is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights of the Estate from and after the Effective Date with respect to the Retained Rights of Action are expressly preserved for the benefit of, assigned to, and fully vested in, the Liquidating Debtor.

41

The Liquidating Debtor shall have standing as the representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Debtor.  The Liquidating Debtor, acting through the Plan Administrator, may settle, release, sell, assign, otherwise transfer, or compromise, Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**G.**      **Interests in Affiliates and Subsidiaries**

As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidating Debtor shall retain any stock or interests that it may hold in its non-Debtor affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, the Liquidating Debtor may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**H.**      **Payment of Plan Expenses**

The Liquidating Debtor may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.

**I.**      **Ultimate Dissolution of Debtor; Final Decree**

Once the Plan Administrator determines that the Final Resolution Date has occurred, the Liquidating Debtor shall be dissolved for all purposes by the Plan Administrator without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtor or payments to be made in connection therewith; provided, however, without

42

the need of any further approval, the Plan Administrator in his or her discretion may execute and file documents and take all other actions as he or she deems appropriate relating to the dissolution of the Liquidating Debtor under the laws of Delaware and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Liquidating Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.

At any time following the Effective Date, the Plan Administrator, on behalf of the Liquidating Debtor, shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code.

## J.    Records

The Liquidating Debtor and Plan Administrator shall maintain reasonably good and sufficient books and records of accounting relating to the Distributable Assets, the Liquidating Debtor's Cash, the management thereof, all transactions undertaken by such parties, all expenses incurred by or on behalf of the Debtor and Plan Administrator, and all distributions contemplated or effectuated under this Plan.  Upon the entry of a final decree closing the Chapter 11 Case, unless otherwise ordered by the Court, the Liquidating Debtor and Plan Administrator may destroy or otherwise dispose of all records maintained by the Liquidating Debtor and/or Plan Administrator.  Notwithstanding anything to the contrary, the Plan Administrator may, upon notice to the Post-Effective Date Service List and without Bankruptcy Court approval, destroy

43

any documents that he or she believes are no longer required to effectuate the terms and conditions of this Plan.

## VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

Except for any executory contracts or unexpired leases:  (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) that are listed for assumption by the Debtor as of the Effective Date in a Plan Supplement to be filed and served on affected non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtor or the Estate; or (v) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Without limiting the foregoing, the indemnification obligations in favor of the Debtor's independent managers and applicable Huron Parties shall be assumed as of the Effective Date, and all other pre-Effective Date indemnification obligations of the Debtor shall be deemed rejected as of the Effective Date to the extent that such obligations are contained in executory contracts within the meaning of section 365 of the Bankruptcy Code, but only to the extent not inconsistent with any existing insurance obligations.  The Confirmation Order shall

44

constitute an order of the Bankruptcy Court approving such assumptions or rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

**B.      Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate unless a proof of Claim is Filed and served on the Debtor and its counsel within thirty (30) days after the earlier of (a) Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

**VIII.**

**DISTRIBUTIONS AND RELATED MATTERS**

**A.      Dates of Distribution**

The sections of the Plan on treatment of Administrative Expenses, Claims, and Interests specify the times for distributions.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, by the Liquidating Debtor (or its agent) on the immediately following Business Day.  Distributions due on the Effective Date will be paid on such date or as soon as practicable thereafter, provided that if other provisions of the Plan require the surrender of securities or establish other conditions precedent to receiving a distribution, the distribution may be delayed until such surrender occurs or conditions are satisfied.

DOCS_SF:85015.7 73864/002

If, under the terms of the Plan, the resolution of a particular Disputed Claim (*e.g.*, it is Disallowed) entitles other Holders of Claims to a further distribution, either (a) the Liquidating Debtor may make such further distribution as soon as practicable after the resolution of the Disputed Claim or (b) if the further distribution is determined in good faith by the Liquidating Debtor to be less than $100 for any Creditor, then, in order to afford an opportunity to minimize costs and aggregate such distributions, the Liquidating Debtor may make such further distribution any time prior to sixty (60) days after the Final Resolution Date or with the next distribution, in the discretion of the Liquidating Debtor.

**B.**   **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Liquidating Debtor, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**C.**   **Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**D.**   **Disputed Claims**

Notwithstanding all references in the Plan to Claims that are Allowed, solely for the purpose of calculating the amount or number of distributions to be made on account of

46

Allowed Claims or Allowed Administrative Expenses under the Plan, such calculations shall be

made as if each Disputed Claim were an Allowed Claim or Allowed Administrative Expense,

except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be

Allowed or authorized or otherwise determines the amount or number which would constitute a

sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by

the Liquidating Debtor), such amount or number as determined by the Bankruptcy Court shall be

used for calculations as to such Disputed Claim.

All distributions due in respect of a Disputed Claim shall be held and not made

pending resolution of the Disputed Claim.

If an objection to a Disputed Claim is withdrawn, resolved by agreement, or

determined by Final Order, the distributions due on account of any resulting Allowed Claim or

Allowed Administrative Expense shall be made by the Liquidating Debtor.  Such distribution

shall be made within forty-five (45) days of the date that the Disputed Claim becomes an

Allowed Claim or Allowed Administrative Expense or as soon thereafter as reasonably

practicable.  No interest shall be due to a Holder of a Disputed Claim based on the delay

attendant to determining the allowance of such Claim, Interest or Administrative Expense.

## E.    Undeliverable and Unclaimed Distributions

If any distribution under the Plan is returned to the Liquidating Debtor as

undeliverable or the check or other similar instrument or distribution by the Liquidating Debtor

remains uncashed or unclaimed, as applicable, for ninety (90) days, such Cash shall be deemed

47

to be Unclaimed Property.  Upon property becoming Unclaimed Property, it immediately shall

be revested in the Liquidating Debtor.

Once there becomes Unclaimed Property for a Holder, no subsequent

distributions for such Holder which may otherwise be due under the Plan will accrue or be held

for such Holder, provided that, if the applicable agent is notified in writing of such Holder's

then-current address and status as a Holder under the Plan, thereafter, the Holder will become

entitled to its share of distributions, if any, which first become due after such notification.

**F.**        **Compliance with Tax Requirements**

The Liquidating Debtor shall comply with all withholding and reporting

requirements imposed by federal, state or local taxing authorities in connection with making

distributions pursuant to the Plan.

In connection with each distribution with respect to which the filing of an

information return (such as an IRS Form 1099 or 1042) or withholding is required, the

Liquidating Debtor shall file such information return with the IRS and provide any required

statements in connection therewith to the recipients of such distribution, or effect any such

withholding and deposit all moneys so withheld to the extent required by law.  With respect to

any Person from whom a tax identification number, certified tax identification number or other

tax information required by law to avoid withholding has not been received, the Liquidating

Debtor may, in its sole option, withhold the amount required and distribute the balance to such

Person or decline to make such distribution until the information is received; provided, however,

that Liquidating Debtor shall not be obligated to liquidate any securities to perform such withholding.

**G.      Record Date in Respect to Distributions**

Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the same as the Record Date.

**H.      Reserves**

In making any distributions in respect of Claims under this Plan, the Liquidating Debtor shall reserve an appropriate and adequate amount of Cash on account of any unresolved Disputed Claims.  The Liquidating Debtor shall make a corrective distribution following the successful resolution of any Disputed Claim on the next regularly scheduled distribution date.

## IX.

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

**A.      Litigation; Objections to Claims; Objection Deadline**

Except as may be expressly provided otherwise in the Plan, the Liquidating Debtor, through the Plan Administrator, shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of Tax issues and liabilities.

As of the Effective Date, the Liquidating Debtor shall have exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims;

49

provided, however, parties in interest may file objections to Claims to the extent permitted by

Bankruptcy Code section 502(a).  Unless another date is established by the Bankruptcy Court

*sua sponte* (which may so act without notice or hearing) or is established by other provisions of

the Plan, any objection to a Claim or Interest shall be filed with the Bankruptcy Court and served

on the Person holding such Claim or Interest within one hundred eighty (180) days after the

Effective Date (as may be extended pursuant to this section, the "Objection Deadline"), provided

that the Liquidating Debtor may seek extension(s) thereof subject to Bankruptcy Court approval

and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule

2002.

            In addition to any other available remedies or procedures with respect to Tax

issues or liabilities or rights to Tax refunds, the Liquidating Debtor, at any time, may utilize (and

receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any Tax issue or

liability or right to a Tax refund relating to an act or event occurring prior to the Effective Date;

or (2) any Tax liability or right to a Tax refund arising prior to the Effective Date.  If the

Liquidating Debtor utilizes section 505(b) of the Bankruptcy Code: (1) the Bankruptcy Court

shall determine the amount of the subject Tax liability or right to a Tax refund in the event that

the appropriate governmental entity timely determines a Tax to be due in excess of the amount

indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of

Tax liability in accordance with section 505(b) of the Bankruptcy Code, the Liquidating Debtor

shall be entitled to such discharge which shall apply to any and all Taxes relating to the period

covered by such return.

<div align="center">50</div>

**B.**      <u>**Temporary or Permanent Resolution of Disputed Claims**</u>

The Debtor and the Liquidating Debtor may request, at any time prior to the

Effective Date (in the case of the Debtor) or on and after the Effective Date (in the case of the

Liquidating Debtor), that the Bankruptcy Court estimate any contingent or unliquidated Disputed

Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any party has

previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction to

estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning

any objection to the Disputed Claim.  If the Bankruptcy Court estimates any contingent or

unliquidated Disputed Claim, that estimated amount would constitute either the Allowed amount

of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the

Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed

Claim, the Liquidating Debtor may elect from and after the Effective Date to pursue any

supplemental proceedings to object to any ultimate payment on account of such Disputed Claim.

In addition, the Liquidating Debtor may resolve or adjudicate any Disputed Claim from and after

the Effective Date in the manner in which the amount of such Claim, Interest or Administrative

Expense and the rights of the Holder of such Claim, Interest or Administrative Expense would

have been resolved or adjudicated if the Chapter 11 Case had not been commenced.  All of the

aforementioned objection, estimation and resolution procedures are cumulative and not

necessarily exclusive of one another.

C.      **Setoffs**

The Liquidating Debtor may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Debtor of any such claim that the Liquidating Debtor may have against such Holder, unless otherwise agreed to in writing by such Holder and the Liquidating Debtor.

D.      **Preservation of Retained Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtor and its successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Retained Rights of Action and the Confirmation Order shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Rights of Action.  Absent such express waiver or release, the Liquidating Debtor, acting through the Plan Administrator, or its successors or assigns shall have standing as the representative(s) of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue Retained Rights of Action, as appropriate, in accordance with the best interests of the Liquidating Debtor (or its successors or future assigns).  The Retained Rights of Action may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

Absent an express waiver or release set forth in the Plan, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Liquidating Debtor from utilizing,

52

pursuing, prosecuting or otherwise acting upon all or any of their Retained Rights of Action and,

therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*,

collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise)

or laches shall apply to such Retained Rights of Action upon or after Confirmation or

Consummation.

<div align="center">

**X.**

**<u>RELEASES, INJUNCTIONS, EXCULPATION AND RELATED PROVISIONS</u>**

</div>

**A.**     **<u>Injunctions</u>**

   **1.**     **<u>Generally</u>**

    Unless otherwise provided in the Plan or the Confirmation Order, all injunctions

and stays provided for in the Chapter 11 Case pursuant to sections 105 and 362 of the

Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and

effect until the Effective Date.  From and after the Effective Date, all Persons are permanently

enjoined from, and restrained against, commencing or continuing in any court any suit, action or

other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Liquidating

Debtor or its Estate, or (ii) the property of the Debtor or its Estate, liable for any Claim,

obligation, right, interest, debt or liability that has been released pursuant to the Plan.

   **2.**     **<u>Injunction Related to Rights of Action and Claims,</u>**
      **<u>Administrative Expenses and Interests</u>**

    *Except as provided in the Plan or in the Confirmation Order, as of the*

*Confirmation Date, all Entities that have held, currently hold or may hold a Claim,*

*Administrative Expense, Interest or other debt or liability against or in the Debtor  are*

<div align="center">53</div>

*permanently enjoined from taking any of the following actions against property of the Debtor or*

*its Estate or the Liquidating Debtor on account of all or such portion of any such Claims,*

*Administrative Expenses, Interests, debts or liabilities:  (a) commencing or continuing, in any*

*manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or*

*recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or*

*enforcing any lien or encumbrance; and (d) commencing or continuing, in any manner or in any*

*place, any action that does not comply with or is inconsistent with the provisions of the Plan.*

**B.**    <u>**Exculpation**</u>

As of and subject to the occurrence of the Effective Date, for good and valuable

consideration, including the consideration provided under the Plan, (i) the Debtor, (ii) the

independent managers of Revstone Transportation, Messrs. James B. Shein and Richard E.

Newsted (including in their respective role as members of the Restructuring Committee) (the

"<u>Independent Managers</u>") , (iii) the Debtor's attorneys and other professionals (solely in their

respective capacity as professionals of the Debtor) (the "<u>Debtor Retained Professionals</u>"), (iv)

the attorneys and professionals retained by the Restructuring Committee (solely in their capacity

as such), (v) the Huron Parties (solely with respect to services rendered for the Debtor, including

as officers, representatives, professionals for, and/or agent of the Debtor), and (vi) the respective

successors or assigns of the foregoing parties, shall neither have nor incur any liability to any

Person or Entity for any act taken or omitted to be taken, on or after the Petition Date, in

connection with, or related to, the formulation, preparation, dissemination, implementation,

administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver,

release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Case up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud.  For the avoidance of doubt, the scope of the exculpation provided under this Article X.B does not cover any of the George Hofmeister Parties or the former and current officers, managers and representatives of the Debtor (other than the Independent Managers, the Debtor Retained Professionals, the attorneys and professionals retained by the Restructuring Committee, and the Huron Parties expressly exculpated above).

Notwithstanding anything in the Plan to the contrary, no Person serving as Plan Administrator shall have or incur any personal liability as the manager, member or officer of the Debtor or Liquidating Debtor for any act taken or omission made in connection with the wind-up or dissolution of the Liquidating Debtor or any nondebtor subsidiary or affiliate; provided, however, that the foregoing shall have no effect on the liability of the Plan Administrator that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud.

## C.    <u>Debtor's Release of CRO, Independent Managers, and Other Parties</u>

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtor, for itself and the Estate, hereby irrevocably, unconditionally and generally releases (i) the Independent Managers, (ii) the Debtor Retained Professionals, (iii) the

<div align="center">55</div>

attorneys and professionals retained by the Restructuring Committee (solely in their capacity as

such), (iv) the Huron Parties (solely with respect to services rendered for the Debtor, including as

officers, representatives, professionals for, and/or agent of the Debtor), and (v) the respective

successors or assigns of the foregoing parties (collectively, the "Released Parties"), from any and

all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or

unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or

unmatured, in law or equity or otherwise, which the Debtor or its Estate ever had, now have or

hereafter can, shall or may have against any of the Released Parties from the beginning of time to

the Effective Date that in any way relates to the Debtor, the Estate or the Chapter 11 Case.  For

the avoidance of doubt, the scope of the release provided under this Article X.C does not cover

any of the George Hofmeister Parties or the former and current officers, managers and

representatives of the Debtor (other than the Independent Managers, the Debtor Retained

Professionals, the attorneys and professionals retained by the Restructuring Committee, and the

Huron Parties expressly released above).

## D.      **Release by Creditors**

**As of and subject to the occurrence of the Effective Date, for good and**

**valuable consideration, each holder of a Claim that votes to accept the Plan (the "Creditor-**

**Releasors"), for itself and its respective present or former officers, directors, managers,**

**shareholders, trustees, partners and partnerships, members, agents, employees,**

**representatives, attorneys, accountants, professionals, and successors or assigns, in each**

**case solely in their capacity as such, shall be deemed to have completely, conclusively,**

56

unconditionally and irrevocably released (i) the Debtor, (ii) the Estate, (iii) the Independent

Managers, (iv) the Debtor Retained Professionals, (v) the attorneys and professionals

retained by the Restructuring Committee (solely in their capacity as such), (vi) the Huron

Parties (solely with respect to services rendered for the Debtor, including as officers,

representatives, professionals for, and/or agent of the Debtor), and (vii) the respective

successors or assigns of the foregoing parties (the "<u>Released Debtor Parties</u>"), from any

and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether

known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or

contingent, matured or unmatured, in law or equity or otherwise, which the Debtor or its

Estate ever had, now have or hereafter can, shall or may have against any of the Released

Parties from the beginning of time to the Effective Date that in any way relates to the

Debtor, the Estate or the Chapter 11 Case.  For the avoidance of doubt, the Released

Debtor Parties do not include any of the George Hofmeister Parties or the former and

current officers, managers or representatives of the Debtor, other than the Independent

Managers, the Debtor Retained Professionals, the attorneys and professionals retained by

the Restructuring Committee, and the Huron Parties expressly released above.

E.    <u>Release by Debtor's Non-Debtor Affiliates of the Released Debtor Parties</u>

Except as otherwise specifically provided in the Plan, for good and valuable

consideration, as of the Effective Date, all of the non-debtor, direct or indirect corporate

subsidiaries of the Debtor (the "<u>Releasor Affiliates</u>") shall conclusively, absolutely,

unconditionally, irrevocably and forever release and discharge the Released Debtor Parties

from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities whatsoever, which the Releasor Affiliates ever had, now have or hereafter can, shall or may have against any of the Released Debtor Parties from the beginning of time to the Effective Date that in any way relates to the Debtor, the Estate or the Chapter 11 Case. For the avoidance of doubt, the Releasor Affiliates do not include Debtors Revstone Industries, LLC, Spara, LLC, Greenwood Forgings, LLC, and US Tool & Engineering, LLC.

**F.**     **No Discharge**

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtor under Bankruptcy Code section 1141(d)(3).

## XI.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtor does not charge any rates for purposes of section 1129(a)(6) that are regulated by any governmental regulatory commission with jurisdiction under applicable non-bankruptcy law.

## XII.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtor pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar Tax or governmental assessment.

# XIII.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

### A.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and any of the proceedings related to the Chapter 11 Case pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)    establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(2)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)    resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(4)    ensure that distributions to Holders of Allowed Claims, Administrative Expenses or Interests are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(5)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason reversed, stayed, revoked, modified, supplemented or amended;

(7)    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(8)    subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order,

(10)    consider and act on the compromise and settlement of any Claim against, or Retained Right of Action of the Liquidating Debtor;

(11)    decide or resolve any Retained Rights of Action under the Bankruptcy Code;

(12)    enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Liquidating Debtor wherever located;

(13)    hear and decide any objections to Claims brought by the Liquidating Debtor;

(14)    hear and decide any litigation, including any Avoidance Claims, brought by the Liquidating Debtor;

(15)    hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Case, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtor;

(16)    determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(17)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings issued or entered in connection with the Chapter 11 Case or the Plan;

(18)    remand to state court any claim, cause of action, or proceeding involving either of the Debtor that was removed to federal court, in whole or in part in reliance upon 28 U.S.C. § 1334;

(19)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(20)    determine any other matter not inconsistent with the Bankruptcy Code; and

(21)    enter an order or final decree concluding the Chapter 11 Case.

61

**B.**    **Miscellaneous Matters**

    **1.**    **Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

    **2.**    **Services by and Fees for Professionals and Certain Parties**

Notwithstanding any other provision herein, Professional Fee Claims shall be paid in accordance with the terms of the order(s) authorizing such payments as promptly as possible on the Effective Date for any outstanding amounts due as of the Effective Date, and as soon as practicable thereafter as such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional.

From and after the Effective Date, the Liquidating Debtor shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Liquidating Debtor.

    **3.**    **Bar Date for Administrative Expenses**

Requests for payment of all Administrative Expenses, other than for those for which a Bar Date was previously set (including the Bar Date set by the Bar Date Order) or for which a request and/or proof of Claim has previously been filed, must be Filed and served on the Liquidating Debtor and the United States Trustee by no later than thirty (30) days after the Effective Date.  The Liquidating Debtor shall have until ninety (90) days after the Effective Date to bring an objection to a Timely Filed request for payment of an Administrative Expense (as

62

may be extended pursuant to this section, the "<u>Administrative Expense Objection Deadline</u>"),

provided that the Liquidating Debtor may seek extension(s) thereof subject to Bankruptcy Court

approval and with notice only to parties that have requested such notice pursuant to Bankruptcy

Rule 2002.  Nothing in the Plan shall prohibit the Liquidating Debtor from paying

Administrative Expenses in the ordinary course in accordance with applicable law during or after

the Chapter 11 Case, but after the Effective Date, the Liquidating Debtor's obligation to pay an

Administrative Expense will depend upon the claimant's compliance with this section and such

Administrative Expense being Allowed under the provisions of the Plan.

Notwithstanding the foregoing provisions of this Article XIII.B.3, but except as

may be expressly provided in other sections of the Plan, Professional Persons requesting

compensation or reimbursement of expenses incurred after the Petition Date and prior to the

Effective Date must file and serve, on all parties entitled to notice thereof, a Fee Application for

final allowance of compensation and reimbursement of expenses in accordance with the various

orders of the Bankruptcy Court establishing procedures for submission and review of such

applications; provided that, if no last date is set in such procedures for filing such applications,

they must be filed no later than sixty (60) days after the Effective Date and any objections to

such applications must be made in accordance with applicable rules of the Bankruptcy Court.

### 4.    <u>Non-Voting Equity Securities</u>

If and to the extent applicable, the Debtor shall comply with the provisions of

section 1123(a)(6) of the Bankruptcy Code.

63

**5.**    **Subordination Agreements**

Pursuant to section 510(a) of the Bankruptcy Code, to the extent there is any

subordination agreement in place between creditors that is enforceable under nonbankruptcy law,

the Debtor shall honor such subordination agreement and turn over any distributions required to

be turned over pursuant to the terms of such agreements and the Bankruptcy Code.

**6.**    **Notices**

All notices and requests in connection with the Plan shall be in writing and shall

be hand delivered or sent by mail or facsimile addressed to:

> Plan Administrator:
>
> John C. DiDonato
> Huron Consulting Group
> 599 Lexington Ave., 25th Floor
> New York, NY 10022
> Telephone:  212-785-1900
> Facsimile:  212-785-1313
>
> Debtor's Counsel:
>
> PACHULSKI STANG ZIEHL & JONES LLP
> Attn:   Laura Davis Jones, Esq.
>            David M. Bertenthal, Esq.
>            Maxim B. Litvak, Esq.
> 919 North Market Street, 17th Floor
> Wilmington, DE 19899
> Telephone:  (302) 652-4100
> Facsimile: (302) 652-4400

All notices and requests to any Person of record holding any Claim,

Administrative Expense or Interest shall be sent to such Person at the Person's last known

address or to the last known address of the Person's attorney of record.  Any such Person may

designate in writing any other address for purposes of this section of the Plan, which designation will be effective on receipt.

### 7. <u>Successors and Assigns</u>

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

### 8. <u>Severability of Plan Provisions</u>

If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

### 9. <u>No Waiver</u>

Neither the failure of the Debtor to list a Claim in the Debtor's Schedules, the failure of the Debtor to object to any Claim or Interest for purposes of voting, the failure of the

65

Debtor to object to a Claim, Administrative Expense or Interest prior to Confirmation or the

Effective Date, the failure of the Debtor to assert a Retained Right of Action prior to

Confirmation or the Effective Date, the absence of a proof of Claim having been filed with

respect to a Claim, nor any action or inaction of the Debtor or any other party with respect to a

Claim, Administrative Expense, Interest or Retained Right of Action other than a legally

effective express waiver or release shall be deemed a waiver or release of the right of the

Liquidating Debtor or its successors, before or after solicitation of votes on the Plan or before or

after Confirmation or the Effective Date to (a) object to or examine such Claim, Administrative

Expense or Interest, in whole or in part or (b) retain and either assign or exclusively assert,

pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

### 10.    Inconsistencies

In the event the terms or provisions of the Plan are inconsistent with the terms and

provisions of the exhibits to the Plan or documents executed in connection with the Plan, the

terms of the Plan shall control.

### 11.    U.S. Trustee Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title

28 of the United States Code shall be paid by the Debtor on or before the Effective Date.  From

and after the Effective Date, the Liquidating Debtor shall pay the fees assessed against its Estate

until such time as the particular Chapter 11 Case is closed, dismissed or converted.  In addition,

the Liquidating Debtor shall file post-confirmation quarterly reports in conformity with the U.S.

Trustee guidelines until entry of an order closing or converting the Chapter 11 Case.

66

12.     **Plan Supplement**

No later than ten (10) days prior to the Confirmation Hearing, the Debtor shall File with the Bankruptcy Court the Plan Supplement, which shall contain such substantially final agreements, other documents and information as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Claims Agent.

13.     **Preservation of Insurance**

The Debtor's release from and payment of Claims as provided in the Plan shall not diminish or impair the enforceability of any insurance policy that may cover any Claims, including, without limitation, any Claims on account of the Debtor's officers or managers.

14.     **Waiver of Stay**

The Debtor requests as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

15.     **Choice of Law**

Except to the extent a rule of law or procedures is supplied by federal law (including but not limited to the Bankruptcy Code and the Bankruptcy Rules), this Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that State.

# XIV.

## CONDITIONS TO EFFECTIVENESS

The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is in a form acceptable to the Debtor; (B) all documents to be provided in the Plan Supplement are in form and substance acceptable to the Debtor; (C) the Confirmation Order shall be a Final Order; (D) the Debtor determines in its reasonable business judgment that it has sufficient Cash to pay all Allowed Administrative Expenses, Allowed Tax Claims and Allowed Priority Non-Tax Claims, as of the Effective Date, to the extent the holders thereof are entitled to payment as of such date under the Plan and unless otherwise agreed by such holders, and (E) the Debtor determines in its reasonable business judgment that the Debtor has sufficient Cash to pay all asserted, accrued and estimated Administrative Expenses that have not yet been Allowed or are otherwise not yet payable as of the Effective Date but which such Administrative Expenses are anticipated to be later Allowed or otherwise payable and the holders of any such Administrative Expenses have not agreed to alternative treatment.  Any of the foregoing conditions, other than conditions (D) and (E), may be waived by the Debtor and such waiver shall not require any notice, Bankruptcy Court order, or any further action.

# XV.

## EFFECT OF CONFIRMATION

### A.    Binding Effect of Confirmation

Confirmation will bind the Debtor, all Holders of Claims, Administrative Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the

Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the Plan.

**B.      Good Faith**

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**C.      No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

**XVI.**

**MODIFICATION OR WITHDRAWAL OF PLAN**

**A.      Modification of Plan**

The Debtor may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Debtor reserves the right to amend the terms of the Plan or waive any conditions to its

69

Confirmation, effectiveness or consummation, if the Debtor determines that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

After Confirmation of the Plan, but prior to the Effective Date, the Debtor may, pursuant to section 1127 of the Bankruptcy Code, seek to modify the Plan.  After the Effective Date, the Liquidating Debtor may apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

**B.**    **Withdrawal of Plan**

The Debtor reserves the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.  If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (if any), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests or Claims by the Debtor against any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

*[Remainder of Page Intentionally Left Blank]*

DOCS_SF:85015.7 73864/002

## XVII.

### CONFIRMATION REQUEST

The Debtor requests that the Bankruptcy Court confirm the Plan and that it do so,

if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection

of the Plan by any Impaired Class.

January 20, 2015

John C. DiDonato
Chief Restructuring Officer of Debtor TPOP, LLC f/k/a
Metavation, LLC

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:       ljones@pszjlaw.com
                   dbertenthal@pszjlaw.com
                   mlitvak@pszjlaw.com

Counsel to TPOP, LLC f/k/a Metavation, LLC,
Debtor and Debtor in Possession